



Roger Gifford
15226 Hornbrook Rd.
Hornbrook, CA 96044
gunsnhorses@yahoo.com; (530) 340-1395

APR 19 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

Roger J. Gifford,                          )
                                           )   Case No: 2:16-cv-0596-JAM-DMC
                Plaintiff,                 )
                                           )   **FIRST AMENDED COMPLAINT**
        vs.                                )
                                           )   **(JURY TRIAL REQUESTED)**
                                           )   ACTION AT LAW FOR CIVIL RIGHTS
Hornbrook Fire Protection District; Adria  )   VIOLATIONS; PENDENT STATE CLAIMS
Buckley; Sharon Morin; Lee Buckley; Joseph )
Hott; and John Does 1- 20,                 )   REQUEST FOR PRELIMINARY AND
                Defendants,                )   PERMANENT INJUNCTIONS;
                                           )   DECLARATORY RELIEF

                                               USC 42 §§1983, 1985, 1986, and 1988.

---

## I.  GENERAL OVERVIEW AND ALLEGATIONS

1.  This is a Federal question, civil rights, and state common law, statutory, and tort-claims action arising from unconstitutional, unlawful, and/or wrongful actions taken by the named Defendants in their individual, and official capacities, in violation of Plaintiff Roger J. Gifford's First, Fourth, and Fourteenth Amendment, and numerous State statutory, rights in both his individual capacity, and his official capacity[1] as a public officer and the Administrator and/or Executive Officer of the Hornbrook Fire Protection District ("HFPD" or "District" herein[2]).

2.  The primary thrust of this action is that the defendants, in attempting to dominate and control the tiny Hornbrook Fire Protection District, acted to stifle, interfere with, intimidate, coerce, retaliate against, and oppress Plaintiff Gifford, in his individual[3] and official capacities[4],

---

[1] Plaintiff is referred to herein as "Plaintiff Gifford", "Plaintiff", and/or "Gifford", interchangeably.
[2] The HFPD is an independent, "fire district" organized and operated pursuant to California Health and Safety Code §13800 et seq.  As such, it is a political subdivision of the State of California, and its Board members, and employees, are public officers.
[3] Plaintiff maintains a Native American spiritual center in Hornbrook, California, which the Defendants are aware of, and generally hold in low, mocking regard.

for his exercise (and attempted exercise) of State and Federal statutory and Constitutional rights - particularly speech and petitioning (and attempted petitioning) activity, while also suffering retaliation in his employment with the HFPD, while being denied various notices, procedures, review, and other due process afforded him by the HFPD Bylaws, and his contract with the District. Additionally, each and all of the Defendants violated various provisions of the HFPD Bylaws, which provides an individual remedy for violations, and declares such to be a nuisance per se. Plaintiff was actually harmed directly, and/or indirectly, by every wrongful action[5] undertaken by each Defendant as set forth herein. Defendants Sharon Morin ("Morin"), and Adria Kirk-Buckley ("Buckley"[6]), are all on the Board of Directors of the HFPD, and will hereafter be referred to collectively as "the Board Defendants". Each of the Defendants undertook the herein described wrongful conduct while acting under color of law, and of their official positions as Directors, or, in the case of Lee Buckley, as purported "Acting Chief" and/or "Firefighter"[7]; and, in the case of Defendant Joseph Hott, as "Firefighter", of the HFPD.

Each Defendant herein is sued in his or her official, and individual, capacities to the extent provided by law, and subject to punitive damages as provided by law.

## II.  Jurisdiction of the Court Relevant to Plaintiff's Standing.

3.  Jurisdiction over this action arises pursuant to Sections 1331, and 1343 of Title 28 of the United States Code, as an action arising under the Constitution and laws of the United States, specifically Amendments 1, 4, and 14 of the United States Constitution, the Fair Labor Standards Act, Title 18 sections 1513(e) and 1846 of the United States Code, and sections 1983, 1985[8], 1986, and 1988 of Title 42 the United States Code, as an action seeking redress of grievances for violations of rights and privileges secured to Plaintiff by the Constitution and Laws of the United

---

[4] At all times material, Plaintiff Roger Gifford was also the Administrator, General Manager, chief executive officer, and thus a public officer, employee, and official of the HFPD.
[5] Plaintiff was also harmed by the coordinated action and conspiracies of the Defendants as set forth herein, and the wrongful acts and goals of the Defendants (even if ultimately unrealized in full) were the proximate case of each harm to Plaintiff as set forth, implied in fact, and/or described in this complaint.
[6] As a result, Buckley's husband and "Acting Chief", Defendant Lee Buckley, will be identified by his first and last name throughout.
[7] "Firefighter" denotes active engagement as an employed agent of the HFPD, and grants certain authority, legal protections and provisions, and other benefits as provided in various California statutes.
[8] Specifically, it is alleged that Lee Buckley, and John Does specifically conspired with each other, and/or "the board Defendants" (who are public officers) to violate Plaintiff's Constitutional rights, and to deny Plaintiff's right to vote as an elector of the District.

States[9], and for retaliation against Plaintiff by the Board Defendants and the HFPD, in conspiracy with Defendants Lee Buckley and John Does, for Plaintiff's actions, and complaints concerning, local, state, and federal law violations by these Defendants to various governmental agencies[10]. Supplemental jurisdiction (Section 1367) is asserted over Plaintiff's pendent state law claims for relief, which are brought in Plaintiff's individual, and official capacities[11] each (or both) as the law permits.

4. Regarding Plaintiff's pendent claims in his individual capacity (as a citizen of the State of California, property owner, elector, and taxpayer-citizen, within the boundaries of the HFPD), this action is also brought in the name of all persons similarly situated to Plaintiff, and as a Private Attorney General where permitted by law, as provided by: California Code of Civil Procedure, Sections 526a and 1021.5; the Brown Act; and, the HFPD Amendments to Bylaws enacted by Resolutions 15-004, 15-008, and 15-012.[12]

5. Although reference is made in this First Amended Complaint to acts, events, and circumstances (including speech, and expressive and/or petitioning conduct) occurring at purportedly public meetings of the Hornbrook Fire Protection District ("HFPD"), it is not Plaintiff's intention to base any state law, or common-law tort, cause of action, or request for relief, upon any statement, or other expression of First Amendment rights, occurring by any person or entity at such a meeting. Plaintiff does, however, assert that some such statements and/or expressive conduct (including purportedly official writings, etc), although perhaps not actionable themselves, may be evidence of other bases for causes of action. Further, the events and statements made at any particular meeting may in fact be actionable if it is determined at any point that said meeting was in fact not a lawful public meeting of the HFPD. This disclaimer does not apply to Plaintiff's Constitutional and other Federal claims which are not subject to California's "SLAPP" statutes (Code of Civil Procedure section 425.16, etc).

---

[9] Plaintiff also seeks relief as to the HFPD, Board Defendants, and other state-actor defendants pursuant to *Monell v. Dept. of Social Services*,436 US 658 (1978).

[10] Including the HFPD itself, and the Siskiyou County Sheriff's Department.

[11] During those times described herein when Plaintiff acted as a public employee of the HFPD as the Administrator and/or General Manager and executive officer thereof. Plaintiff was also at those times thus a "public official" and "public employee" as defined in Section 810.2, 810.4, 811.4, and 82048 of the California Government Code, in addition to actions he took as an individual.

[12] A true copy of the relevant sections of the HFPD Bylaws as adopted and ratified are attached to this Complaint and are incorporated herein as if fully set forth to the extend necessary to make out and understand the claims being made against the Defendants.

6. All the events and circumstances described in this Complaint which give rise to liability against any Defendant occurred between the dates of December 4, 2015, through the current date, and ongoingly as may be specified.

7. Concerning Plaintiff's pendent state claims herein, Plaintiff certifies that he timely and properly provided written notice of Brown Act violations, and tort claims to the HFPD in full compliance with all requirements of the California Government Code, sections 905[13], 910, 915, and 54960.1.

## III. GENERAL OVERVIEW AND BACKGROUND

8. Plaintiff brings this action on the basis of his interactions with the various defendants which began within the past two years of the original filing date of this action, when he was a Board Member and firefighter of the HFPD, and which have culminated in the tortious conduct, statutory violations, and Constitutional infringements charged herein, . The HFPD itself is a woefully under-funded, undermanned, under-equipped remnant of bygone days, serving a tiny community of some 400 people next to the Oregon boarder in Northern California. Most of the actual firefighting and other service calls are responded to by the Cal Fire station that sits across the freeway (I-5) from the unincorporated town of Hornbrook.

9. During Plaintiff's tenure as Director, he and the other Directors attempted to impose new policies and procedures to account for equipment, use of vehicles, inventory, discipline, and the unauthorized use of the HFPD for personal gain. Plaintiff and other members of the Board also sought to acquire new land (via the BLM grant program) and facilities (via various loan and grant programs relating to public safety), since the HFPD does not own the land (or the ramshackle, unsafe, red-tagged "firehouse"[14]) it currently occupies, which lies next to the railroad tracks in Hornbrook (which also means no expansion is practical, and is a disqualifying factor for grants, etc).

11. As part of the clean-up, Plaintiff and the other directors investigated numerous incidents of vehicle and equipment, diversion, theft, misappropriation, and misuse - as well as falsification of records by Adria Kirk-Buckley (then "firefighter"), Lee Buckley (then "acting Chief"), and others. Plaintiff submitted, and assisted others in submitting, reports to the Board of

---

[13] The date of mailing of Plaintiff's initial written Brown Act notice was January 28, 2016, and his tort claims notice to the HFPD was mailed February 20, 2016. Plaintiff anticipates that such conduct by the Defendants will continue, and require further and ongoing notices.

[14] The "firehouse" has been condemned as unsafe by a licensed Engineer, has dirt floors, and no running water (not even a fire hydrant).

Complaint - 4

the HFPD concerning potentially improper, unethical, and in some instances illegal, acts of the Buckleys, and Defendant Joseph Hott ("Hott").  As part of this investigation, Plaintiff made detailed reports of the alleged improper/illegal conduct as to these three Defendants to the Siskiyou County Sheriff's Department as well, the result of which was that Adria Kirk-Buckley, and Lee Buckley, surrendered a filing cabinet, public records, radios, and other HFPD equipment to the Siskiyou County Sheriff.  That property was retrieved from the Sheriff by the Plaintiff on behalf of the HFPD.

12.  After noticed hearings, the Buckleys were found responsible for some of the charges, and dismissed by action of the Board of the HFPD.  Although not resulting in any formal action as to Hott, the Board also made multiple findings and determinations concerning improper conduct concerning all three Defendants, and the circumstances and lack of procedures and policies that allowed these events to occur.  In the wake of these findings and determinations, several modifications of the HFPD Bylaws were enacted over the course of the next year or so which provided rigid accountability and tracking requirements for all equipment and vehicles, as well as well as providing that HFPD equipment could not be used for any personal gain whatever.

13.  While the changes to the Bylaws, and updated procedures and policies were being planned by the HFPD, Plaintiff resigned as Director of the Board in order to undertake more direct administrative duties regarding the District, and to later accept the position of Administrator/General Manager, which was created in an effort to streamline procedures and processes, and to enable routine action and expenses without the necessity for dealing with all business of the HFPD via the cumbersome mechanism of monthly Board meetings.  Duties, authority, and restrictions on the exercise of authority of this position were adopted by Amendment to the HFPD Bylaws, along with findings.

14.  On December 4, 2015 the current Board Defendants, along with Kelly Bear (who is not named herein, as she did not participate in any of the improper conduct alleged in this complaint) took office as the Board of the HFPD, and as their first order of business, but outside any noticed meeting or formal procedure, named Lee Buckley as "Acting Chief", began handing out radios and other HFPD equipment to assorted persons and friends of Adria Kirk-Buckley, and of Lee Buckley, without requiring signatures, logs, other accountability mechanisms[15], nor

---

[15] Including by failing to take and maintain proper inventories and records of District equipment and funds.

Complaint - 5

compliance with the relevant portions of the HFPD Bylaws, improperly, and wrongfully, permitted and encouraged the driving of various uncertified, unlicensed, and uninsured HFPD vehicles (by Lee Buckley) illegally upon the streets and highways of Hornbrook, and Siskiyou County. Plaintiff, in his capacity as the Administrator/General Manager, and also as a property owner and citizen within the District, promptly issued warning letters to Lee Buckley, and to the Board concerning this conduct, and received complaint letters from other property owners and citizens of the District, which he forwarded to the Board as well.

15. Shortly thereafter, the Board Defendants took action to quash to application to the BLM for a new firehouse site, and took a series of (ongoing) various actions in violation of the HFPD Bylaws, the Brown Act, and other applicable laws, and also retaliated against Plaintiff by use of threats, and by purporting to terminate Plaintiff's as the Administrator/General Manager, but without any of the notice, or due process and other consideration mandated by the Amendment to the Bylaws creating his position, or as adopted between the parties via his contract in accepting the position (which specifically provided the position was to be treated in all ways a "civil service" position under State law, among other things - see Bylaws Resolution 15-012).

16. The most egregious violation of the Bylaws, due process, and right to petition of Plaintiff, and those similarly situated, however, has been the repeated attempts by the Board Defendants to revoke the authority granted to the electors of the District to control by direct vote, certain portions of the Bylaws, and the anti-corruption provisions found therein[16]. Some of these attempts were held at meetings which were not even in the District, and in fact were on private, gated and posted property of the "R-Ranch", located near, but not within, Hornbrook. This Complaint is an attempt to address the described illegal and improper conduct, and as part of its prayer for relief, seeks injunction and mandate..

## IV. Illegal Meetings and Actions of Board Defendants.

17. The Board Defendants purported to hold public meetings of the HFPD on December 4, 2015; December 21, 2015; January 22, 2016; February 16, 2016; and, February 29, 2016, and also committed other purportedly official acts (both individually, and as a group, and/or in conspiracy with each other) occurring outside of any properly (or even improperly, or sometimes at all) agendized and/or noticed meetings, complained of herein and arising therefrom[17]. Each of

---

[16] Those sections were adopted by Resolutions 15-004, and 15-008.

[17] Many of the acts of the Board Defendants went unrecorded, and proper minutes were not made of

Complaint - 6

these meetings, purported official actions, and other acts were taken in violation of the Brown Act (by deficiency of notice, deficiency of description of items to be considered and/or acted upon, for being held outside the boundaries of the District), the California Public Records Act ("CPRA") due to refusal to provide Plaintiff copies of and access to HFPD documents and records in his official capacity or otherwise), the California Government Code, the HFPD Bylaws, and the California Constitution, and were thus planned, and held, in a manner calculated to, and that interfered with and violated, Plaintiff's First Amendment rights to access and participation in the governmental workings of the HFPD, to be fully informed concerning the operations thereof as provided by law, and to participate therein as a taxpayer, elector, and public officer[18], as well as Plaintiff's 14th Amendment Rights to the equal protection and application of the laws. Furthermore, the Defendants participating in these improper and/or illegal meetings, while employing the specific methodology of holding the meeting on posted and gated private property, did so in part to conceal improper transfers and use of District property and funds, as well as to specifically intimidate, oppress, and coerce Plaintiff into abandoning his statutory and constitutional rights, and actions relating to the exercise thereof.

18. Beginning at the improper, and illegal meetings held on January 22, 2016, February 16, 2016, and at several meetings thereafter, the Board Defendants (and thus the HFPD) attempted to disenfranchise, and interfere with, the right to vote of Plaintiff, and each elector within the HFPD boundaries by modifying, or revoking, without voter approval, certain provisions of the HFPD Bylaws which specify that they may not be revoked or altered without approval by the voters of the District.[19]

19. As a result of the improprieties by the Board Defendants concerning meetings and actions, notices, and other Brown Act violations, Plaintiff assisted others in submitting, and submitted himself, multiple timely "cure and correct", and "cease and desist" letters to the HFPD concerning the Brown Act, and HFPD Bylaw violations committed by the Board Defendants and

---

several meetings and/or other acts by the Board Defendants either acting individually, or in concert. See Government Code sections 61045.

[18] Insofar as Plaintiff was the Administrator/General Manager of the HFPD at that time, with specific duties and rights as provided in the Bylaws, which the duties and rights the Defendants specifically sought to interfere with.

[19] See the last portion of each section of the Bylaws adopted by Resolutions 15-004 and 15-008.

Defendant Lee Buckley[20].  As the Brown Act, HFPD Bylaws, and, later, Political Reform Act violations continued, Plaintiff assisted in submitting, and/or submitted, additional "cure and correct" notices and/or tort claims.

20.  Additionally, the illegal and improper meetings and actions of the Board Defendants are notable for what they failed to do, as well as for what improprieties were committed at those meetings.  Notably, Plaintiff, in both his personal and official capacities as Administrator, submitted a number of requests for other matters to be placed on the Agenda concerning Bylaw violations, yet the Defendants refused to do so, and thereby acting, also permitted the waste of District resources, increased liability, and risk to the public, and to Plaintiff specifically from the dangerous condition of driving uncertified, faulty, unregistered, and uninsured vehicles upon the streets and highways, among other issues.

## V.  Civil Conspiracy(s) of the Defendants.

21.  From the period of December 4, 2015, through and including March 20, 2016, and ongoingly, the Board Defendants, along with the other named Defendants, each and together conspired, planned, and acted, both individually, and as a group, in their individual and official capacities, in violation of the provisions of Federal and State law, and the HFPD Bylaws, to violate Plaintiff's[21] statutory and Constitutional rights by: failing and refusing to follow the mandates of their own Bylaws and by attempting to wrongfully, improperly, and illegally revoke portions of the Bylaws without voter approval[22]; by interfering with the function and duties of the Administrator/General Manager[23] as mandated by State law and the HFPD Bylaws; by individually rescinding Plaintiff's instructions, acts, and policies in his official capacities; by wrongfully acting against Plaintiff as a public officer of the HFPD by deliberately excluding him

---

[20] One of the means of Brown Act violations alleged is that Lee Buckley, as "Acting Chief" and "Chief", acted as a "spoke" through which multiple Board Members communicated, and arrived at consensus concerning various plans and actions.

[21] And also to violate the rights of the electors, property owners, and the public in the District, insofar as the acts concerning attempts to improperly change, ignore, violate, and/or countermand that Bylaws, and/or the statutes relating to operation of vehicles on the public streets and highways.

[22] This action also was a deliberate attempt to disenfranchise Plaintiff and the electors of the District by eliminating the right to vote, and by acting on issues without first obtaining voter approval as required in the Bylaws.

[23] The HFPD Bylaw scheme and State law make the Administrator/General Manager of the District the lynchpin of its operations (also see CA Govt Code section 61051).  Plaintiff was severely crippled in his ability to act, and be effective in his duties because of the Board Defendant's actions in this regard, which placed a great deal of stress and anxiety upon Plaintiff as a result.  Defendants Buckley, Mattingly, and Morin later acted (ultra vires) to purportedly remove the Acting General Manager, no such action was ever taken in conformance with HFPD Bylaws Amendment 15-012, requiring a 4/5 vote of the entire Board.

Complaint - 8

from meetings and other rights and duties of his office on the basis of his complaints, political statements, and religious practices; by acting wrongfully against Plaintiff's status as the Administrative and Executive Officer of the HFPD by attempting to terminate him without proper, due notice and/or cause; by preventing Plaintiff as a public officer of the HFPD from freely accessing public records and documents of the District by attempting to exercise the duties of Plaintiff themselves in violation of the HFPD Bylaws; by handing out District equipment and other property without any records being made thereof[24]; by attempting to disenfranchise Plaintiff, and every other elector and property owner in the District by attempting to change the Bylaws without voter approval as is required thereby; by willfully and knowingly having Board meetings on gated and posted private property to prevent the public and Plaintiff from attending said meetings; by willfully and knowingly placing Plaintiff and the public at risk by ratifying, encouraging, and/or participating in the driving of uncertified, faulty, unregistered, and uninsured vehicles upon the streets and highways; by recruiting and permitting uncertified and unqualified persons to perform services upon the vehicles, buildings, and/or other property of the HFPD such that the vehicles, buildings, and/or other property is unsafe; by improperly and wrongfully diverting District funds, equipment, and/or other resources to their own benefit; by failing to take and maintain proper inventories and records of District equipment and funds; and, by willfully concealing from Plaintiff and the Public in violation of the Brown Act, California Constitution, and other provisions of law, and by means of false, and/or legally insufficient notices and agendas, various plans and actions taken in violation of Plaintiff's rights, and the rights of the Public.

22. Plaintiff is informed and believes and on that basis alleges that at all times material, the Board Defendants acted to keep Plaintiff from all meetings they called, and conspired to impair and impede Plaintiff's execution of his duties and authority as Administrator/General Manager; to improperly and illegally manipulate, impede, and improperly control the Administrator/General Manager position and duties; to attempt to prevent Plaintiff from learning of their improper, wrongful acts (and those of their co-Defendants); to keep Plaintiff from taking any corrective action within his authority; and, to thwart his ability to report wrongful action to

---

[24] Plaintiff specifically observed Defendants Lee Buckley and Joseph Hott loading equipment from Defendant Hott's vehicle into Lee Buckley's garage shortly after December 4, 2015. Plaintiff has also observed the illegal operation of fire engines by Defendant Lee Buckley on several occasions, and observed fire engines parked at Lee Buckley's residence on multiple occasions since that time - all in violation of the Bylaws, and outside of written inventories. Plaintiff dutifully issued warnings and reports of Bylaws violations of such conduct, in part leading to the retaliatory conduct by Defendants herein.

law enforcement and/or other governmental agencies in order to petition for redress; to retaliate against Plaintiff for his religious practices, political positions[25], and attempts to exercise his authority and duties; and, to retaliate for Plaintiff's assistance others in making complaints to government agencies, and for making such complaints himself, concerning the Defendants and/or the HFPD.

## VI. General Allegations Applicable to All Counts.

23. By failing to comply with the provisions of United States and California law, and the Bylaws of the HFPD as set forth herein and above, each and any of the Defendants exceeded their authority and jurisdiction, acted against public policy, and any acts taken in relation thereto are therefore null and void, without legal force or effect, in addition to any other damages caused. The Defendants have specifically failed to abide by the provisions of the California health and Safety Code at §§13855, 13856, 13877, 13878, 13903, and 13905.

24. Plaintiff contends the acts of each and any of the Defendants as set forth herein are arbitrary and capricious and imposed without full and complete disclosure and notice to: the citizens, taxpayers, members of the public, and property owners of the Hornbrook Fire Protection District; and, to Plaintiff - in both his official and individual capacities as applicable.

25. Plaintiff alleges that each act complained of herein by the HFPD, the Board Defendants, and/or each and any of the other individual Defendants (as applicable) was undertaken by them in furtherance of, and/or pursuant to, a policy, decision, custom, or practice either officially, or unofficially, promulgated, adopted, and/or ratified by the Board Defendants (and thus the HFPD), and was executed using the authority granted to the Board Defendants under State Law. Further, each of the Defendants received (often multiple) notices from Plaintiff, Kimberly Olson, Peter Harrell, and other members of the public, that their conduct as set forth herein was illegal and violated statutory and Constitutional rights, and yet they all continued to act wrongfully, illegally and/or in violation of Plaintiff's, and the public's, statutory and Constitutional rights as set forth herein, thus demonstrating willfulness, reckless disregard for any harm that might have befallen others - including Plaintiff -, willful interference with statutory and Constitutional rights, oppression, and actual malice. Plaintiff was actually harmed directly, and/or indirectly, by each and every wrongful action undertaken by each Defendant as set forth herein.

---

[25] Both as an individual, and in Plaintiff's official capacity.

## VII.  Additional General Allegations.

26.  Each of the Defendants, in acting to violate federal and/or state law, and/or the HFPD Bylaws as set forth herein, in addition to any other statutory basis for their violations, and for relief as to Plaintiff, have created and maintained a public and private nuisance *per se,* as defined by the HFPD Bylaws, adopted by Resolution 15-004, Section A-1(a).  Defendants and their actions in regards to such violations are also therefore in violation of California <u>Civil Code</u> Section 3479 and 3480, and subject to injunction by this Court in addition to any other remedies.

27.  The acts of the Board Defendants, and as purporting to act as the HFPD, as set forth herein, are null and void due to being *ultra vires*, due to criminality[26], due to being a nuisance *per se*[27], due to Brown Act violations[28], due to being in violation of the mandated procedures and policies of the HFPD as expressed in the Bylaws and related Resolutions 15-004, 15-008, and/or 15-012, and/or due to having been undertaken in violation of the Political Reform Act while a conflict of interest existed regarding the issue or action undertaken.[29]

28.  The Board Defendants, in acting as set forth herein, and thereby also the HFPD as an entity insofar as they claim to be acting on its behalf, have violated the provisions of California <u>Government Code</u> Sections 1090, 61000, et seq, and 87100; and, the California Public Records Act.

29.  By failing to comply with the provisions of the United States Constitution and laws, California law, and the Bylaws of the HFPD as set forth herein and above, each of the Defendants exceeded their lawful authority and jurisdiction, acted against public policy, and all of the acts undertaken by these Defendants herein have caused a significant amount of waste, are

---

[26] See Govt. Code Sections 54959, 61064(a), 1090, 91003(b); Civil Code Section 3369.
[27] Both due to being violations of the HFPD Bylaws, and/or federal. and/or State law.  See also Civil Code Section 3479-80, 3491; *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988-89.  In *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, a case involving injuries alleged to have been suffered by the plaintiffs by virtue of the defendant's operation of an airport near the plaintiffs' properties, the California Supreme Court stated that section 3479 of the Civil Code provided a viable statutory basis for governmental liability, avoided a defense of sovereign immunity, and concluded that "section 815 of the Government Code does not bar nuisance actions against public entities to the extent such actions are founded on section 3479 of the Civil Code or other statutory provision that may be applicable." (*Id*, at p. 937; see also Code of Civil Procedure section 731.)  California law defines a nuisance, in part, as "[a]nything which is injurious to health ... or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property...." Cal. Civ.Code § 3479.  The HFPD Bylaws provide at by Resolution 15-004, at Section A-1(a) that any violations thereof are a nuisance per se, and authorizes suit for injunctive or other relief for violations.
[28] See Govt Code Sections 54953(a) and (c); 54960.1(d).
[29]  See Govt Code Section 87100; 91003(b).

illegal as specifically set forth as to each Defendant, and/or have caused injury to, the funds and property of the HFPD, and so relief is requested (in addition to any other available relief) to enjoin and nullify the acts of the HFPD; Board Defendants; and Lee Buckley, so far as is practical, pursuant to the provisions of California Code of Civil Procedure, Section 526a.  See *Blair v. Pitchess* (1971) 5 Cal.3d 258, 268:

> "Moreover, we have not limited suits under section 526a to challenges of policies or ordinances adopted by the county, city or town. If county, town or city officials implement a state statute or even the provisions of the state Constitution, an injunction under section 526a will issue to restrain such enforcement if the provision is unconstitutional. (*Lundberg v. County of Alameda* (1956) 46 Cal. 2d 644, app. dism. (1956) 352 U.S. 921; *Vogel v. County of Los Angeles, supra*, 68 Cal. 2d 18.) Indeed, it has been held that taxpayers may sue state officials to enjoin such officials from illegally expending state funds. (*Ahlgren v. Carr* (1962) 209 Cal. App. 2d 248, 252-254; *California State Employees' Assn. v. Williams* (1970) 7 Cal. App. 3d 390, 395) We have even permitted taxpayers to sue on behalf of a city or county to recover funds illegally expended. (*Osburn v. Stone* (1915) 170 Cal. 480, 482.

30.  Plaintiff contends the acts of the HFPD, and the Board Defendants as set forth herein are arbitrary and capricious and imposed without full and complete disclosure and notice to Plaintiff in both his official and individual capacities, and/or to the citizens, ratepayers, members of the public, and property owners of the Hornbrook Fire Protection District.

31.  Plaintiff alleges that each act complained of herein and taken by the District and/or Board Defendants was undertaken by them in furtherance of, and/or pursuant to, a policy, decision, custom, or practice either officially, or unofficially, promulgated and adopted by them (and thus the HFPD), and executed using the authority granted to them under State Law.

Further, the HFPD, Board Defendants, and Lee Buckley, received multiple notices from Plaintiff and others that their conduct as set forth herein was illegal and violated statutory, and Constitutional rights, and yet they all continued to act wrongfully, illegally, and in violation of rights as set forth herein, thus demonstrating willfulness, reckless disregard for any harm that might have befallen others - including Plaintiff, and with actual malice.

32.  An actual controversy has arisen and now exists between Plaintiff and Defendants relative to their respective rights and duties in that Plaintiffs contend that the acts of the Defendants in violation of the Constitution and laws of the United States, the statutes of the State of California, and the Bylaws of the HFPD, and, are invalid and unenforceable, both on their face, as applied to Plaintiff, and as construed by Defendants.  Defendants dispute Plaintiffs' contentions and contend that their acts, and their application to the District, District residents and taxpayers, District employees and volunteers, and to Plaintiff, are valid.

33. Plaintiff desires a declaration of the rights of the parties, and also as to the validity of the acts of these Defendants, past and future - and all proceedings relating thereto[30], both on their face and as applied to the District, Plaintiff, and all electors, taxpayers, and citizens of the HFPD. A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain his rights and duties in execution of his office as Administrator/General Manager of the HFPD as applied to the events and circumstances herein, as an elector, and taxpayer within the District, and as provided by California law.

34. A timely declaration by this court is urgent for the following reasons:

**A.** Defendants had a clear, present, fiduciary, and ministerial duty to refrain from acting in the manner set forth herein, and to act in compliance with laws imposing a mandatory duty upon any, each, and/or all of them;

**B.** Plaintiff has a clear, present, and beneficial right to be free of such interference, retaliation, harassment, unlawful acts, Constitutional deprivations, common torts, and public shaming;

**C.** Plaintiff has a clear, present, and beneficial right to have these Defendants operate within the laws of the United States, the State of California, and within the provisions of the Bylaws of the HFPD, which have the force of law. As the Supreme Court stated in *United States v. Classic*, 313 U.S. 299, 326 (1941), "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken `under color of' state law." Plaintiff specifically alleges that the acts complained of herein were customs, policies, and practices which were implemented by the Board Defendants (with the assistance, encouragement, aid and ratification of Defendants Lee Buckley, Joseph Hott, and John Does) acting in their official capacities as decision-makers for the HFPD, and that the other Defendants used the official *imprinteur* of the Board Defendants as justification to act in violation of Federal, State, and the Bylaws as set forth herein.

## FIRST CLAIM FOR RELIEF

### Count - I

### VIOLATIONS OF PLAINTIFF'S RIGHT TO FREEDOM OF SPEECH AND PETITION

35. Plaintiff alleges that because the Board Defendants (and thus the HFPD), and Lee Buckley, in acting as set forth herein in manners adverse to Plaintiff have done so willfully, with

---

[30] Including all purported public meetings, agendas, resolutions, acts taken, official and/or informal policies and practices, etc.

the intent to interfere with and coerce Plaintiff into abandoning his exercise of statutory and constitutional rights; and have done so due to Plaintiff's exercise of his right to petition the government[31] for redress of grievances; and to impede, hinder, and act in retaliation for, Plaintiff's exercise of his right to speak, to speak freely, and to petition at the public meetings of the Board of the HFPD, and/or to the individual Board Defendants as elected officials; in retaliation for Plaintiff's exercise of his right to petition various Government agencies (or to assist other members of the public in doing so) concerning illegal and improper acts of these Defendants, and unfair and unreasonable administrative and employment practices as set forth in this Complaint. These Defendants have thus violated Plaintiff's rights under the First Amendment to the United States Constitution to speak freely, and to petition for redress of grievances in both his individual, and official capacities.

36. Plaintiff asserts that each discreet illegal meeting held by the Board Defendants as aforesaid was itself was also a violation of his First Amendment Rights, as was each discreet improper act taken at each illegal meeting (and at any other times) when such acts were intended to, or actually did, violate and/or interfere with Plaintiff's constitutional rights, and ability to contact, and to petition, his local government for redress of grievances, and/or to protest improper actions and notices. Liability for these acts also attaches to their aiders, abettors, and conspirators as previously described. Even private persons, jointly engaged with state officials in the challenged action, are acting `under color' of law for purposes of S 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). Plaintiff specifically alleges that Defendants Lee Buckley and Joseph Hott planned, aided, and abetted the Board Defendants' acts, actions, and ultimate goals as set forth in this Complaint, while also acting under color of law and other own positions within the Hornbrook Fire Department, such that they became "State Actors" for liability under 42 USC section 1983.

37. The Supreme Court has held that the right of petition protects the freedom to seek redress from all three of the coordinate branches of government, and has specifically ruled that the right of petition encompasses attempts to obtain redress through the institution of administrative and judicial proceedings, as well as through political means. The court declared: "Certainly the right to petition extends to all departments of the Government. The right of access

---

[31] This includes the HFPD Board itself, and complaints Plaintiff made to the various Federal and State agencies (and assisted others to complain to), about the Defendants.

to the courts is but one aspect of the right of petition." (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 510.

38. In order to commit the afore-described acts against Plaintiff, and to interfere with, and/or deprive Plaintiff of his rights under the United States Constitution as aforesaid, Defendants interacted, conspired with one another, and acted in concert, to harass, retaliate against, and discriminate against Plaintiff for his political views and notice of violations of State and local laws.

39. Plaintiff alleges that as a result of the actions and acts of the Board Defendants, and Defendant Lee Buckley, he has been made to suffer actual interference with, and suppression of his right to free speech and petition in both his individual and official capacities[32], humiliation, upset, embarrassment, worry, oppression, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $50,000.00

40. Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to his under the Constitution of the United States, and so he is entitled to punitive damages against these Defendants, and each of them in the amount of $50,000.00.

## COUNT - II

## VIOLATIONS OF PLAINTIFF'S RIGHT TO TO DUE PROCESS, AND TO EQUAL PROTECTION OF THE LAWS; UNLAWFUL SEIZURE

41. Plaintiff alleges that in conspiring and acting as aforesaid to violate State law and the HFPD Bylaws[33], to censure Plaintiff's protected speech, and to retaliate against him for making it (inclusive of acting to *de facto* nullify Plaintiff's appointment to, and occupation of, the position of Administrator/General Manger of the HFPD - as well as all privileges and duties attendant thereto), the Board Defendants, along with Defendant Lee Buckley, violated California and Federal laws relating to proper notice and due process at administrative hearings for Plaintiff, including a *Skelly* hearing, and as provided by the HFPD Bylaws as amended by

---

[32] As a public official and a public employee, Plaintiff has a duty to interact and express his views in service to the HFPD constituents, and the public good. Plaintiff is also protected by the State of California's statutory scheme in Government Code Section 12940(h); and, Labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, 6310, and 6399.7.

[33] E.g. those Sections implemented by Resolutions 15-004, 15-008, and 15-012.

Resolution 15-012, and thus also the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the US Constitution.

42. The Board Defendants further failed to give Plaintiff any personal notice of circumstances, events, documents, communications, and/or the meetings he was entitled to participate in and/or attend to as a Public Officer of the HFPD, or of the multiple adverse actions they took against him (both at purportive public meetings, privately amongst themselves, and/or at other sorts of unofficial meetings of the Board Defendants), and also failed to: permit Plaintiff to inspect any HFPD documents in their possession relating to any of the alleged actions proposed and/or taken - meanwhile granting such access and copies thereof to themselves, their co-conspirators, and other "approved persons"; permit Plaintiff to be heard concerning any charges, and/or adverse actions taken against him; and, failed to hold employment-, and litigation-related hearings and actions concerning Plaintiff in closed session; thus violating Plaintiff's First Amendment rights to speak and petition at these meetings (in both his individual and official capacities)unreasonably exposing Plaintiff to liability, and violating Plaintiff's privacy, due process, and confidentiality rights.

43. These deprivations resulted in substantial prejudice to Plaintiff, unlawful, unreasonable, and hostile impedance and interference with his job duties as Administrator/General Manager of the HFPD, and otherwise substantially violated the due and proper application of Federal, State, and local laws to, and the protected rights of, Plaintiff Gifford, as specifically provided by the First and Fourteenth Amendments to the United States Constitution.

44. More fundamentally, Plaintiff was thus denied his Federal constitutional rights to due process and equal protection of the laws relating to adverse administrative hearings and actions against him by a government agency and actor(s), including those private persons acting as agents of the Board Defendants, and/or pursuant to the Board Defendants' authority as state actors.

45. The Fourteenth Amendment of the United States Constitution also protects individuals from deprivation (or adverse impact) of property interests by the government without procedural due process. Due process is violated where there exists: (1) a constitutionally protected property interest; (2) the government's deprivation of said interest; and (3) a lack of process. See *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Plaintiff additionally asserts that his employment with the HFPD as Administrator/General Manager (and as a public officer generally), and his interest in the lawful, safe operation of the HFPD, the

resultant safety and marketability of his interest in real property, and personal property (including livestock) lying within the HFPD boundaries are such property interests. The Defendants, in acting without legal notice, and in violation of the laws of the State of California and the United States as aforesaid, created risk that Plaintiff will not receive benefit and enjoyment of his personal and real property, and that Plaintiff's property interests will be harmed or destroyed. Further, the conspiracy against him by these Defendants acted as an unreasonable and unlawful seizure of Plaintiff's authority as a public officer of the HFPD, and a de facto removal of him from that position - all of which constitute a violation of the Fourth Amendment to the US Constitution.

46. Plaintiff alleges that due process was further denied him by the actions of the defendants herein set forth, insofar as the acts complained of are specific violation by these Defendants of California Government Code Section 12940(h), and Labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, 6310, and 6399.7.

47. Plaintiff asserts that each discreet illegal meeting held by the Board Defendants[34] and/or any of their agents as aforesaid was itself a violation of his First Amendment rights to speak freely as a public officer of the HFPD, and individual; to freely associate with the constituents of the District at purported meetings of the HFPD Board; to petition and be heard by the properly-convened HFPD Board; and, as to Plaintiff's Fourteenth Amendment Rights to due process and equal protection of the laws, as was each discreet improper meeting, and each discreet improper act taken at each illegal meeting (and at any other times) were intended, and/or actually did, violate and/or interfere with Plaintiff's constitutional rights. Liability for these acts also attaches to their aiders, abettors, and conspirators as previously described.

48. Plaintiff alleges that as a result of the actions and acts of the Board Defendants and Lee Buckley as aforesaid (and each agent thereof who participated in any way as to any such meetings), he has been made to suffer humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $50,000.00

49. Moreover, the acts of the Board Defendants and Lee Buckley as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to

---

[34] Along with any of their co-conspirators who may have participated in any particular meeting, including "spoke and wheel", "daisy chain", and/or any other sort of meeting.

Plaintiff's rights as granted to him under the Constitution of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

## Count – III

### DEPRIVATIONS OF RIGHT TO FREE SPEECH AND PETITION - RIGHT TO VOTE

50.  Plaintiff alleges that the Board Defendants (and thus the HFPD), at the meetings held on January 22, 2016, the February 16, 2016, and on other dates, acted wrongfully, and illegally to modify, and/or revoke and rescind certain portions of the HFPD Bylaws as set forth herein without voter approval; have done so willfully, with the intent to interfere with and coerce Plaintiff and the electors of the District into abandoning the exercise of statutory and constitutional rights; and to deprive Plaintiff and the electors of the District of the right to vote as to those sections of the Bylaws, and the issues raised therein.   These Defendants have thus violated Plaintiff's rights under the First Amendment to the United States Constitution to speak freely, and to petition for redress of grievances in capacities as a citizen and taxpayer, and elector, of the HFPD.

51.  Plaintiff asserts that <u>each</u> discreet illegal meeting, and action taken by the Board Defendants (and the HFPD) relating to the attempt to disenfranchise Plaintiff and the other electors of the District held by the Board Defendants as aforesaid was itself was also a violation of his First Amendment Rights.  Liability for these acts also attaches to their aiders, abettors, and conspirators as previously described.  Even private persons, jointly engaged with state officials in the challenged action, are acting `under color' of law for purposes of S 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).  Plaintiff specifically alleges that Defendants Lee Buckley and Joseph Hott planned, aided, and abetted the Board Defendants' acts, actions, and ultimate goals as set forth in this Complaint, such that they became "State Actors" for liability under 42 USC section 1983.

52.  In order to commit the afore-described acts against Plaintiff, and to interfere with, and/or deprive Plaintiff of his rights under the United States Constitution as aforesaid, Defendants interacted, conspired with one another, and acted in concert, to harass, retaliate against, and discriminate against Plaintiff for his political views and notice of violations of State and local laws.

53. Plaintiff alleges that as a result of the actions and acts of the Board Defendants, and Defendant Lee Buckley, he has been made to suffer actual interference with, and suppression of his right to free speech and petition in both his individual and official capacities[35], humiliation, upset, embarrassment, worry, oppression, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $50,000.00

54. Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to his under the Constitution of the United States, and so he is entitled to punitive damages against these Defendants, and each of them in the amount of $50,000.00.

## Count – III

## DEPRIVATIONS OF RIGHT TO DUE PROCESS - RIGHT TO VOTE

55. Plaintiff alleges that the Board Defendants (and thus the HFPD), at the meetings held on January 22, 2016, the February 16, 2016, and on other dates, acted wrongfully, and illegally to modify, and/or revoke and rescind certain portions of the HFPD Bylaws as set forth herein without voter approval, and have done so without the due process afforded by law to Plaintiff and the other electors of the District. Further, the Board Defendants and the HFPD have done so willfully, with the intent to interfere with the right to vote, and coerce Plaintiff and the electors of the District into abandoning the exercise of statutory and constitutional rights; and to deprive Plaintiff and the electors of the District of the right to vote as to those sections of the Bylaws, and the issues raised therein. These Defendants have thus violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

56. Plaintiff asserts that each discreet illegal meeting, and action taken by the Board Defendants (and the HFPD) relating to the attempt to disenfranchise Plaintiff and the other electors of the District held by the Board Defendants as aforesaid was itself was also a violation of his Fourteenth Amendment Rights. Liability for these acts also attaches to their aiders, abettors, and conspirators as previously described.

57. Even private persons, jointly engaged with state officials in the challenged action, are acting `under color' of law for purposes of S 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28

---

[35] As an official holding public office and a public employee, Plaintiff has a duty to interact and express his views in service to his constituents, and the public good. Plaintiff is also protected by the State of California's statutory scheme in Government Code Section 12940(h); and, Labor Code Sections 96, 98.6-.7, 1101, 1102, 1102.5, 6310, and 6399.7.

(1980).  Plaintiff specifically alleges that Defendants Lee Buckley and Joseph Hott planned, aided, and abetted the Board Defendants' acts, actions, and ultimate goals as set forth in this Count, such that they became "State Actors" for liability under 42 USC section 1983.

58.  In order to commit the afore-described acts against Plaintiff, and to interfere with, and/or deprive Plaintiff of his rights under the United States Constitution as aforesaid, Defendants interacted, conspired with one another, and acted in concert, to harass, retaliate against, and discriminate against Plaintiff for his political views and notice of violations of State and local laws, while each discreet, improper act taken at each illegal meeting (and at any other times) were intended, and/or actually did, violate and/or interfere with Plaintiff's constitutional rights.

59.  Plaintiff alleges that as a result of the actions and acts of the Board Defendants and Lee Buckley as aforesaid (and each agent thereof who participated in, or ratified any way as to any such deprivations of due process), he has been made to suffer humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $50,000.00

60.  Moreover, the acts of the Board Defendants and Lee Buckley as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

### Count – IV

### DEPRIVATIONS OF RIGHT TO VOTE - CONSPIRACY FOR DEPRIVATIONS OF RIGHTS - 42 USC 1985

61.  Plaintiff alleges that the acts alleged in this Complaint as to the Board Defendants, the HFPD, and Defendants Lee Buckley, and Joseph Hott concerning the attempts to disenfranchise Plaintiff and the electors of the District by denying them the right to vote, and attempting to cancel out their right to vote as provided by the Bylaws, were willful, the result of planning, cooperation, mutual aid and assistance between all of them, and that the Defendants had as a common goal the deprivations as to Plaintiff of rights and privileges as set forth throughout this complaint, and the specific intent to deprive Plaintiff of his Constitutional rights as set forth in the First Claim for Relief herein.  Such conspiracy, aiding, abetting, agreements,

and ratification to deprive Plaintiff of his civil rights constitutes a violation of 42 USC section 1985.

62.  Plaintiff alleges that as a result of the actions and acts of the Board Defendants and Defendants Lee Buckley and Joseph Hott as aforesaid (and each agent thereof who participated in, or ratified any way as to any such deprivations of due process), he has been made to suffer humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $50,000.00

63.  Moreover, the acts of the Board Defendants and Lee Buckley as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

### Count - V

### Violation of Rights to Due Process, Equal Protection, Free Speech and Petition, and Liberty Interests as to HFPD, Board Defendants.

64.  Plaintiff alleges that in performing the acts as complained of herein, and particularly by acting to deny Plaintiff proper, timely, (or, more often, any) notice or opportunity to be heard concerning HFPD meetings and business, as well as any and all allegations, charges, and/or complaints regarding his position and employment[36], and concerning the exercise by Plaintiff of his rights and Duties under State law and the HFPD Bylaws as a public officer, each and all of the Board Defendants, and thus also the HFPD itself, with the aid, ratification, encouragement, and assistance of Defendants Lee Buckley, and Hott, willfully acted in a manner calculated to: thwart, impede, interfere with, intimidate, coerce, and retaliate against Plaintiff in his employment as a public officer and Administrator/General Manager of the HFPD and his exercise of the rights and duties attendant to that office, because of his reports to the HFPD Board, and law enforcement various agencies concerning violations of State laws, and the HFPD Bylaws, by the HFPD, the Board Defendants, Lee Buckley, Joseph Hott, and other employees, agents, and contractors, thereof; and/or his assistance to others relating to such reports; to create

---

[36] This includes the opportunity for a Skelly notice and hearing (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194) regarding any adverse action relating to Plaintiff's position as Administrator/General Manager, inclusive of all rights and privileges arising therefrom.  See also California Government Code 19574.

a hostile work environment for Plaintiff, and otherwise interfere with the performance of Plaintiff's duties - including by refusing Plaintiff access to HFPD facilities and records, and the supervision of the District's property, records, vehicles, buildings, and the conduct of its employees; and, to punish and oppress Plaintiff for engaging in Constitutionally and/or statutorily protected activities.

65.  Because the majority of the adverse actions taken against Plaintiff by the Board Defendants, HFPD, and Lee Buckley, occurred or were initiated within a short time of Plaintiff's protected reports and other activities, the adverse actions taken by these Defendants against Plaintiff are *presumed* retaliatory adverse actions that establish a *prima facie* case for retaliatory adverse employment action in violation of public policy and the Constitutional Rights of Free Speech, and to Petition, as provided by both the United States' and the California Constitutions. (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 164 *Passantino v. Johnson & Johnson Consumer Products, Inc.* (9th Cir. 2000) 21 F.3d 493, 507; *Pickering v. Board of Education* (1968) 391 U.S. 563; *Board of County Commissioners v. Umbher* (1996) 518 U.S. 668 also see generally whistleblower protections as public policy in Labor Code sections 98.6, 1019(b)(1)(C), 1019(c), and 1102.5; Health and Safety Code 6310, 6400.)

66.  Plaintiff further alleges that as a result of the actions of these Defendants, he has been made to suffer impairment and degradation of the value of his property interests within the District due to that property being less safe; the use and enjoyment of his property; interference with his statutory and constitutional rights, humiliation, upset, oppression, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the wrongful actions of the Board Defendants, HFPD, and Lee Buckley, all of which has caused him general and special damages in the amount of $50,000.00

67.  Moreover, the acts of these Defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

## Count VI

## Violation of Title VII of the Civil Rights Act - Unlawful Retaliation.

68.  The acts of the HFPD and Board Defendants, in having illegal meetings concerning Plaintiff (and without notice and/or opportunity to be heard at those meetings); in taking improper and/or wrongful adverse employment action at meetings concerning Plaintiff; in purportedly *de facto* removing and wrongfully and oppressively impeding and interfering with

powers and authority as a public officer and Plaintiff's exercise of the duties and rights attendant to employment as Administrator/General Manager of the HFPD; and, by encouraging and assisting Defendants Lee Buckley and Joseph Hott in defying Plaintiff's authority, duty, and privileges of office as Administrator/General Manager of the HFPD (all done with the wrongful motive to harass, impede, and retaliate against Plaintiff because of his complaints to the Board of the HFPD, various State agencies (including the Sheriff of Siskiyou County), and to the Courts), violated the provisions of Title VII of the Civil Rights Act of 1964, and the public policy of the United States. See *Burlington, N. & S. F. R. Co. v. White* 548 U.S. 53 (2006); and, *Robinson v. Shell Oil Company*, 519 U.S. 337 (1997). Further, the acts and actions of the HFPD and Board Defendants towards Plaintiff were arbitrary, irrational, and capricious.

69. Plaintiff alleges that as a result of the actions and acts of the HFPD, Board Defendants, Lee Buckley, and Hott as aforesaid, he has been made to suffer interference with, and denial of, his constitutional and statutory rights, impairment and degradation of the value of his property interests within the District, and the use and enjoyment of his residence due to harassment by Defendants and their associates within the community of Hornbrook; humiliation, upset, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $50,000.00

70. Moreover, the acts of defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

## Count VII

### Retaliation in Employment by HFPD, Board Defendants; 42 USC §300j-9(i)

71. Plaintiff's complaints to the Board of the HFPD, and to State agencies concerning the violations of State law, and the HFPD Bylaws by the HFPD, the Board Defendants, and Defendants Lee Buckley and Hott, entitle him to protection from retaliation in employment pursuant to 42 USC § 300j-9(i). The Board Defendants, Lee Buckley, and Hott, by participating, conspiring, ratifying, and taking part in coordinated actions calculated to retaliate against Plaintiff for his reports and complaints (by impeding and/or *de facto* eliminating his ability to exercise his statutory authority and duties as Administrator/General Manager of the HFPD, refusing to place his complaints and other claims on any agendas, creating and ratifying at illegal meetings various resolutions and motions directed against Plaintiff, and refusing to permit

Plaintiff access to District facilities, and records as required by the California Public Records Act, among other affronts), thus violated that law, to Plaintiff's general and special damage.

72. Plaintiff alleges that as a result of the actions and acts of these Defendants as aforesaid, he has been made to suffer humiliation, upset, intimidation, denial of and interference with his statutory and constitutional rights, coercion, oppression, embarrassment, worry, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the defendants, all of which has caused him general and special damages in the amount of $50,000.00

73. Moreover, the acts of these Defendants were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

## Count VIII

### Retaliation by HFPD and Board Defendants; 18 USC, section 1513(e)

74. Plaintiff's complaints, and assistance to others in making complaints, to the Board of the HFPD, and to State law enforcement agencies concerning the violations of law, discrimination and/or retaliation in employment, by the HFPD and the Board Defendants (in conspiracy and collusion with, and aided and abetted by, Defendants Lee Buckley and Hott), entitle him to protection from retaliation in any manner, including employment and his position as a public officer and Administrator/General Manager of the HFPD, pursuant to 18 USC §1513(e).

75. The HPFD, via and in conspiracy with, the Board Defendants, Lee Buckley, and Hott, by participating in the actions as described in this complaint, also undertook such acts in a manner calculated to retaliate against Plaintiff for his political speech, reports and complaints, by agreeing, assisting, and encouraging having the Board Defendants use their official positions to eliminate Plaintiff's effective authority as a public officer and Administrator/General Manager; and to render him unable to exercise his rights and duties of his office, all to Plaintiff's detriment and injury.

76. Plaintiff alleges that as a result of the actions and acts of theses defendants as aforesaid, he has been made to suffer humiliation, coercion, oppression, intimidation, upset, embarrassment, worry, loss of employment, loss of income, and ongoing severe psychological pain and distress, while also having to expend time and effort in addressing the actions of the

defendants, all of which has caused him general and special damages in the amount of $50,000.00

77. Moreover, the acts of these defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

## Count - IX

### Violation of 42 USC §1985 as to HFPD, Board Defendants.

78. Plaintiff alleges that in conspiring to, and performing, the acts relating to denying Plaintiff proper, timely, (or, more often, any) notice or opportunity to be heard concerning HFPD meetings and business, as well as any and all allegations, charges, and/or complaints regarding his position and employment[37], and concerning the exercise by Plaintiff of his rights and Duties under State law and the HFPD Bylaws as a public officer and the Administrator/General Manager, each and all of the Board Defendants, and thus also the HFPD itself, with the aid, ratification, encouragement, and assistance of Defendants Lee Buckley and Hott, willfully acted in a manner calculated to: thwart, interfere with, intimidate, coerce, and retaliate against Plaintiff in his employment as Administrator/General Manager of the HFPD because of his reports to the HFPD Board, and to the Siskiyou County Sheriff's Department, concerning violations of State laws, and the HFPD Bylaws, by the HFPD, the Board Defendants, Lee Buckley, Hott, and other employees, agents, and contractors, thereof ; and/or his assistance to others relating to such reports; to create a hostile work environment for Plaintiff, and otherwise interfere with the performance of Plaintiff's duties - including by refusing Plaintiff access to HFPD facilities and records, and the supervision of HFPD employees; and, to punish and oppress Plaintiff for engaging in Constitutionally and/or statutorily protected activities.

79. Because the majority of the adverse actions taken against Plaintiff by the Board Defendants, HFPD, Lee Buckley, and Hott, were a united effort with some of the ultimate goals thereof being to: interfere with; intimidate into abandoning; impede; and, attempt to prevent Plaintiff from exercising, his rights, duties, and authority as a public officer, these Defendants violated the provisions of 42 USC §1985.

---

[37] This includes the opportunity for a Skelly notice and hearing (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194), and a public hearing at a duly called meeting of the HCSD regarding any adverse action relating to Plaintiff's position as Administrator/General Manager, inclusive of all rights, duties, and privileges arising therefrom.  See also California Government Code 19574.

80. Plaintiff further alleges that as a result of the actions of these Defendants, he has been made to suffer actual impairment and interference with his statutory and constitutional rights and duties as a citizen, and as a public officer; humiliation, upset, oppression, embarrassment, worry, and ongoing severe psychological pain and distress; while also having to expend time and effort in addressing the wrongful actions of these Defendants, all of which has caused him general and special damages in the amount of $50,000.00

81. Moreover, the acts of these Defendants as aforesaid were willful, wanton, and undertaken with reckless disregard for, and/or willful indifference to Plaintiff's rights as granted to him under the Constitution and laws of the United States, and so he is entitled to punitive damages against these defendants, and each of them, in the amount of $50,000.00

## SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS

82. Plaintiff asserts that at all times material, each of the Board Defendants, and other Defendants had a duty to perform certain acts under the laws of the State of California, and the Bylaws of the HFPD as aforesaid, and breached those duties while engaging in the conduct set forth in this Complaint.[38] Further, in the event Plaintiff states a cause of action that only permits injunctive or other relief, but has inadvertently asserted a claim for damages, Plaintiff reserves his right to non-monetary relief as otherwise provided by law, and/or by Government Code section 814.

## Count – I, Violations of HFPD Bylaws

83. Plaintiff, as provided by Resolutions 15-004, and 15-008, and those denominated sections of the HFPD Bylaws, does hereby allege that the Board Defendants, Lee Buckley, Hott, and John Does, did improperly and illegally conspire to, and actually did, violate, and refuse to follow the mandate of, multiple provisions of the HFPD Bylaws, and did so without voter approval as to any of those actions as is required. The Board Defendants also interfered with the duties of the Administrator/General Manager to the detriment of the operation and function of the District; failed to take and maintain proper inventories and records of District equipment and funds while wrongfully and improperly disbursing funds and equipment to themselves and their associates; used District property and equipment to work fires in other locations while

---

[38] As to the HFPD, Board Defendants, and "state agent" Defendants, see also California Government Code section 815.6; CACI #423 "Public Entity Liability for Failure to Perform Mandatory Duty"; Sources and Authority.

"pocketing" that money for themselves; and, acted generally to the detriment of the District all in violation of their duty of loyalty and good faith.

84. The Board Defendants, as well Lee Buckley, and Joseph Hott, during the period of on or about December 4, 2015, through the current date, and ongoingly, have failed to act as mandated by the HFPD Bylaws, as set forth in Resolutions 15-004, and 15-008. The Board Defendants are therefore personally liable for damages to the HFPD, as well as to Plaintiff, both individually, and/or in his official capacity, as well as for all attorney fees and costs incurred herein by Plaintiff. The Board Defendants and the HFPD are also subject to a writ of mandate by the Court that they abide by all Federal, State, and local laws.

85. Additionally, and as a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer devaluation of his home and interest in real property within the District, loss of use of property, loss of enjoyment of property, threats to and loss of livestock, personal damages, and to suffer, and has actually suffered; lasting fear, coercion, harassment, intimidation, oppression, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress to his general and special damage of $100,000.00.

86. The conduct of Defendants as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, the State of California, and the HFPD, while being calculated to cause oppression, coercion, intimidation and emotional distress to Plaintiff, and to dissuade Plaintiff from asserting his statutory and constitutional rights, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $150,000.00.

## Count II Willful Negligence; Negligence

87. Plaintiff alleges that in performing the acts as complained of herein, each and all of the Defendants acted negligently, recklessly, wantonly, and/or willfully to: violate the relevant laws as attributed to each Defendant in the foregoing sections; to harass, oppress, intimidate, and annoy Plaintiff, and to subject him to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress; acted with wanton indifference and reckless disregard for their duty to abide by State, Federal, and/or local laws; and, to disregard any possible harm that may have befallen Plaintiff and/or the public as a result of their acts as complained of herein. (See also, generally, California Civil Code, section 1714.)

88.  The acts by the Board Defendants, as well as Lee Buckley and Joseph Hott, were also part of a systematic and ongoing pattern of events that were calculated by the Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to impinge on Plaintiff's character and morals, to render Plaintiff impotent as a public officer of the HFPD, and/or to interfere with Plaintiff's financial well-being, and the acts by those Defendants did indeed produce those harmful effects.

89.  As a consequence of Defendants' negligent, and/or willfully negligent acts as aforesaid, Plaintiff has been caused to suffer general and special damages, has suffered extreme and lasting fear, anger, upset, anxiety, public humiliation, oppression, coercion, intimidation, embarrassment, outrage, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $100,000.00.

90.  The conduct of Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, and of the State of California, while being calculated to cause intimidation, oppression, coercion, and lasting, emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $150,000.00.

**Count III - Violations of Government Code Section 1090 and 87100 - Self Dealing**

91.  Plaintiff alleges that each and all of the Board Defendants, in acting at meetings held in violation of the HFPD Bylaws, the Brown Act (and otherwise) to purportedly vote to: "revoke and rescind" the HFPD Bylaws in a manner inconsistent with the Bylaws provisions; act upon their own "reimbusements"; divert District funds to create improper and illegal contracts, and/or or diversion of District property and resources; failed to take and maintain proper inventories and records of District equipment and funds while wrongfully and improperly disbursing funds and equipment to themselves and their associates; used District property and equipment to work fires in other locations while "pocketing" that money for themselves; and so voting on such matters while having a conflict of interest in the subject of the contract(s) and related matters under consideration by the Board of the HFPD, and so acted in conflict with the provisions of California Government Code at sections 1090, and 87100 on each such occasion, both of which prohibit self-dealing.

92. These acts violated the Board Defendants' duties as public employees, and also, particularly, their fiduciary duty to the District[39].

93. Also, because the Board Defendants' contracts, insofar as they were created by the Board Defendants purportedly on behalf of the District, and/or to divert District funds, are in violation of sections 1090 and 87100, this Court should declare them void   Because the contracts were void, Plaintiff seeks disgorgement of all fees paid to any such contractor by the District, in that those fees should be returned to the District's treasury.  The actual amount of such fees will have to await further discovery, and/or trial to be determined.

94. The Board defendants are also liable for all costs incurred by the District as a result of their actions, and should be made to pay those costs.  Plaintiff has standing to bring this cause of action, and to act to have the damages paid to the District by such contractors and these Board Defendants, pursuant to the provisions of the California Government Code, the Private Attorney General Doctrine, and the HFPD Bylaws.  Additionally, Defendants are liable to Plaintiff personally for all costs of any sort associated with bringing this action, and are also liable for any attorney fees Plaintiff may ultimately incur - proof of which shall be established at trial.

### Count IV - Retaliation in Employment and Termination in Violation of public Policy

95. Plaintiff alleges that in performing the acts as complained of herein, and particularly by acting to deny Plaintiff any notice or opportunity to be heard concerning allegations, charges, and/or any complaints regarding his position and employment[40], the HFPD, Board Defendants, along with Defendant Lee Buckley, also conspired to, helped plan, and ratified, the actions of the Board Defendants acts under color of law, and willfully acted themselves, in a manner calculated to impede, hinder, oppress, and retaliate against Plaintiff in his employment as Administrator/General Manager of the HFPD because of Plaintiff's own, and assistance to others in making out reports to the HFPD Board and other enforcement agencies of safety violations of: HFPD buildings, vehicles, and equipment; and, of violations of law and the HFPD Bylaws by the HFPD and its employees Directors and managers.  These same Defendants also conspired, and acted to (via the authority and office of the Board Defendants) to deny Plaintiff notice, and opportunity to be heard concerning any *de facto* and/or *per se* termination of his office as

---

[39] By engaging in conduct for their personal gain, and taking unlawful advantage of their offices as Directors of the HFPD as alleged herein.
[40] This includes the opportunity for a Skelly notice and hearing (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194) regarding any adverse action relating to Plaintiff's position as Director of the Board.  See also California Government Code 19574.

Administrator/General Manager of the HFPD, or otherwise.  These acts by these Defendants violated the statutes and public policy of the State of California that employees not be terminated from employment in retaliation for undertaking lawful and protected petitioning activities.

96.  These same Defendants also acted to create a hostile work environment for Plaintiff, and otherwise conspired and acted to impede and interfere with the performance of Plaintiff's duties as Administrator/General Manager of the HFPD; and, to punish, intimidate and oppress Plaintiff for engaging in protected activities as aforesaid.  Because the majority of the adverse actions taken against Plaintiff by these Defendants occurred or were initiated almost immediately following Plaintiff's protected reports and other activities (and ongoingly), the adverse actions taken by the Defendants against Plaintiff are *presumed* retaliatory adverse actions that establish a *prima facie* case for retaliatory adverse employment action in violation of public policy and the Constitutional Rights of Free Speech, and to Petition, as provided by both the United States' and the California Constitutions.  (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 164 *Passantino v. Johnson & Johnson Consumer Products, Inc.* (9th Cir. 2000) 21 F.3d 493, 507; *Pickering v. Board of Education* (1968) 391 U.S. 563; *Board of County Commissioners v. Umbher* (1996) 518 U.S. 668 also see generally whistleblower protections as public policy in Labor Code sections 98.6, 1019, and 1102.5; Health and Safety Code 6310, 6400).

97.  As a consequence of Defendants' acts as set forth herein, Plaintiff has been caused to suffer violation of his privacy; undue and unfair conditions of employment without any opportunity to be heard[41], threats during performance of his duties, impediment and interference with the performance of his duties, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and other compensation, and extreme ongoing emotional and psychological pain and distress, to his general, personal, and special damage of $100,000.00.

98.  The conduct of Defendants as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to

---

[41] As a public employee working for a political subdivision of the State of California, Plaintiff asserts that, in addition to other administrative due process, he is entitled to a Skelly Hearing and that process set forth in the HFPD Bylaws (that section adopted pursuant to Resolution 15-012) concerning any allegations against him related to his job and/or job functions.

Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $150,000.00.

### Count V - Violation of Article 1, section 2, of the California Constitution

99. *Laguna Publishing Co. v. Golden Rain Foundation* (1982) 131 Cal.App.3d 816, allows a tort action for damages for violation of the free expression clause of Article I, Section 2, of the California Constitution. Unlike the United States Constitution, which couches the right to free speech as a limit on congressional power (see U.S. Const., 1st Amend.), the California Constitution gives "[e]very person" an affirmative right to free speech (Cal. Const., art. I, § 2, subd. (a)). Accordingly, California's free speech clause is "more definitive and inclusive than the First Amendment. . . ." (*Wilson v. Superior Court* (1975) 13 Cal.3d 652, 658, 119 Cal.Rptr. 468, 532 P.2d 116.)

100. Plaintiff alleges additionally that in acting as aforesaid to violate State law and the HFPD Bylaws, and to commit personal wrongs against Plaintiff, the HFPD, Board Defendants, Lee Buckley, and Joseph Hott acted to violate his right to free expression under the California Constitution.

101. As a consequence of the acts of Lee Buckley, Hott, the HFPD, and the Board Defendants as set forth herein, Plaintiff has been caused to suffer violation of his privacy; undue and unfair termination of rights, duties, and benefits of his employment as a Director of the HFPD without any opportunity to be heard, threats during performance of his duties, impairment and interference with the performance of his duties, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general, personal, and special damage of $100,000.00. Plaintiff also seeks mandamus relief prohibiting such unlawful conduct by these Defendants, both as to past conduct, and any similar conduct occurring in the future.

102. The conduct of Defendants as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, the HFPD Bylaws, and the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages, in the sum of $150,000.00.

### Count VI- Negligence as to the Board Defendants

103. Plaintiff alleges that the HFPD, Board Defendants, Lee Buckley, and Joseph Hott, owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, the

State of California, and the HFPD Bylaws, but in performing the acts as complained of herein, and ongoingly as specified, and against Plaintiff under the assumed mantle of employees and/or agents of the HFPD, breached that duty in violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HFPD Bylaws as set forth herein, and did also thus create a nuisance and harm to Plaintiff, which nuisance and harm was a reasonably foreseeable consequence of those actions. As a result of their acts, Plaintiff was forced to expend an unreasonable amount of time and effort responding to, and dealing with their improper acts in the community of Hornbrook, courts of law and otherwise; while also expending money to buy paper, toner, printers, computer equipment, postage, gasoline, and other expenses.

104. Plaintiff has incurred damages from the foregoing negligent acts of the HFPD, Lee Buckley, Joseph Hott, and the Board Defendants as set forth herein, has been caused to suffer violation of his privacy, as well as retaliation, intimidation, and oppression by the Defendants, and has suffered: economic loss; loss of enjoyment of property, devaluation of his property interests, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage; extreme ongoing emotional and psychological pain and distress, all to his general, personal, and special damage of $100,000.00.

105. The conduct of the Board Defendants as aforesaid was also willful, wanton, reckless, malicious, and undertaken by them with reckless disregard and/or wanton indifference to the rights and privileges secured to Plaintiff by the Constitution and laws of the United States, and the State of California, while being calculated to cause intimidation, oppression, and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of the Board Defendants exemplary and punitive damages, in the sum of $150,000.00.

## Count VII - Civil Conspiracy

106. Plaintiff alleges that each and all of the Board Defendants, Lee Buckley, and Joseph Hott, acted as complained of herein in concert, and by agreement amongst themselves, to: recklessly, wantonly, and/or willfully violate the HFPD Bylaws and Federal and State laws as aforesaid; harass, oppress, coerce, intimidate, annoy Plaintiff, and to impair, impede, and violate his constitutional and statutory rights as set forth herein; to retaliate against him for exercise of his rights; and, acted thus to subject Plaintiff to lasting nuisance, fear, anger, upset, anxiety, public humiliation, intimidation, oppression, embarrassment, loss of income, loss of rights and protection of the laws, outrage, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton and willful indifference, and reckless disregard for any possible harm that may have befallen Plaintiff as a result.

107.  These acts were part of a planned, systematic, and ongoing pattern of events agreed to by the Defendants, inclusive of their official positions and authority, that were calculated to cause Plaintiff to be: effectively removed from his position as Administrator/General Manager of the HFPD; to be shunned, subject to ridicule, despised, harassed, threatened, intimidated, and mocked while attempting to perform his duties as a public officer of the HFPD; to unfairly, unjustly, and falsely impinge on Plaintiff's character and morals both in and outside of regular meetings, and outside of any due process; to refuse and fail to properly indemnify Plaintiff for services rendered on behalf of the HFPD; and/or, to interfere with Plaintiff's financial well-being as well as the well-being of the District which boundaries of his personal and real property interests lie within.

108.  As a consequence of Defendants' acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy, has suffered extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, loss of enjoyment of property, loss of statutory and Constitutional rights, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $100,000.00.

109.  The conduct of Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, the HFPD Bylaws, and of the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $150,000.00.

## Count VIII – Intentional Infliction of Emotional Distress

110.  Plaintiff alleges that the HFPD, Board Defendants, Lee Buckley, and Joseph Hott, in performing the acts complained of herein as to any particular one of them, or identified group of them, did so while acting negligently, recklessly, wantonly, and/or willfully to vex, harass, oppress, and annoy Plaintiff, and/or to subject him to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, financial loss, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for any possible harm that may have befallen Plaintiff as a result.

111.  These acts were part of a systematic and ongoing pattern of events that were calculated by these Defendants to cause Plaintiff to be shunned, subject to ridicule, despised, to impinge on Plaintiff's character and morals, to interfere with Plaintiff's enjoyment and use of his Office as Administrator/General Manager, to deprive him of the rights and duties for which he

was otherwise qualified as a public officer, resident and elector of the HFPD, and otherwise (in violation of the HFPD Bylaws, public policy, and State law), his enjoyment and use of his property, and/or to interfere with Plaintiff's personal and financial well-being.

112.   As a consequence of these Defendants' willfully negligent, and/or negligent acts as aforesaid, Plaintiff has been caused to suffer violation of his privacy, has suffered extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $100,000.

113.   The conduct of these Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, the HFPD Bylaws, and of the State of California, while being calculated to cause intimidation and emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of Defendants, and each of them, exemplary and punitive damages in the sum of $150,000.00

### Count IX Nuisance

114.   Plaintiff, does hereby allege that each and all of the Board Defendants, the HFPD, as well as Defendants Lee Buckley and Joseph Hott, acted negligently, recklessly, wantonly, and/or willfully to: violate the laws of the State of California relating to operation of motor vehicles upon the streets and highways without registration, inspections and certification, and insurance; and the HFPD Bylaws, in their administration and operation of the HFPD, and thereby created, assisted in creating, and/or ratified the acts of each other in creating, annoying and/or unsafe conditions relating to the proper and lawful operation of the HFPD facilities and equipment.   These Defendants also failed to follow state and local laws relating to the proper administration and operation of the HFPD and its equipment, all of which acts were thus a nuisance and/or nuisance *per se* to the Public, and to Plaintiff, all to his general and special damage of $50,000.00

### Count X Violation(s) of the Covenant of Good Faith and Fair Dealing

115.   Plaintiff alleges that in engaging in the conduct set forth in this complaint, the Board Defendants, and thus the HFPD, acted dishonestly, and in bad faith in their dealings with Plaintiff, including in regards to his employment as a public officer, and Administrator/General Manager of the HFPD.

116.   As a consequence of the acts of HFPD, and the Board Defendants' as aforesaid, Plaintiff has been caused to suffer violation of his privacy, has suffered interference and

impediment of his statutory and constitutional rights, oppression, coercion, extreme and lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, economic loss, and extreme ongoing emotional and psychological pain and distress, to his general and special damage of $100,000.

117. The conduct of these Defendants as aforesaid was willful, malicious, wanton, and undertaken by them with reckless disregard and/or wanton indifference to the rights secured to Plaintiff by the Constitution and laws of the United States, of the State of California, and of the HFPD Bylaws, while being calculated to cause oppression, intimidation, and unreasonable emotional distress to Plaintiff, and Plaintiff is thereby entitled to recover of these Defendants, and each of them, exemplary and punitive damages in the sum of $150,000.

## Count XI Purported Official Acts of the Board Defendants Are Void

118. The acts of the Board Defendants, and as purporting to act as the HFPD, as set forth herein, occurring at each and every of the improper and/or unlawful meetings previously described (and/or at other illegal places and/or times unannounced to the public or otherwise), are null and void due to being *ultra vires*, due to criminality[42]; due to being taken in violation of the constitutional and statutory rights of the Public and Plaintiff; due to being a nuisance *per se*[43]; due to Brown Act violations[44]; due to being in violation of the mandated procedures and policies of the HFPD as expressed in the Bylaws and related Resolutions (including by failing to take and maintain proper inventories and records of District equipment and funds while wrongfully and improperly disbursing funds and equipment to themselves and their associates, and/or using District property and equipment to work fires in other locations while "pocketing" that money for themselves); and/or due to having been undertaken in violation of the Political Reform Act while a conflict of interest existed regarding the issue or action undertaken.[45]

---

[42] See Govt. Code Sections 54959, 61064(a), 91003(b); Civil Code Section 3369.

[43] Both due to being violations of the HFPD Bylaws, and/or federal. and/or State law. See also Civil Code Section 3479-80, 3491; *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988-89. In *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, a case involving injuries alleged to have been suffered by the plaintiffs by virtue of the defendant's operation of an airport near the plaintiffs' properties, the California Supreme Court stated that section 3479 of the Civil Code provided a viable statutory basis for governmental liability, avoided a defense of sovereign immunity, and concluded that "section 815 of the Government Code does not bar nuisance actions against public entities to the extent such actions are founded on section 3479 of the Civil Code or other statutory provision that may be applicable." (*Id*, at p. 937; see also Code of Civil Procedure section 731.) The HFPD Bylaws provide that any violations thereof are a nuisance per se, and authorizes suit for injunctive or other relief for violations.

[44] See Govt Code Sections 54953(a) and (c); 54960.1(d).

[45] See Govt Code Section 87100; 91003(b).

## Count XII Exemplary Damages (Punitive Damages)

119. Plaintiff does hereby allege that the conduct of each Defendant, by doing the acts set forth in this complaint as to each Defendant, or specified group of Defendants, acted willfully, and maliciously, in that they intended to: vex, annoy, oppress, coerce, and cause harm to Plaintiff; to interfere with and/or impede the exercise of statutory and/or constitutional rights by Plaintiff in his individual and/or official capacities; to violate his Constitutional and statutory rights; and/or acted recklessly, with willful or wanton indifference to the harm that may have befallen to Plaintiff. Plaintiff further alleges that while committing each discreet act of which Plaintiff complains herein as to each named Defendant, those defendants understood the consequences and risks of harm of their actions to Plaintiff, but consciously disregarded those risks.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff now prays for judgment against the Defendants for his damages as specified hereinabove, for his reasonable attorney fees (if and when such fees are actually incurred), and for his reasonable costs and disbursements herein.

1. Declaration of the respective rights and duties of the parties under the acts of these Defendants in question, and as may arise subsequent to the filing of this Complaint, but which are a part of or of similar nature to the events and circumstances relating thereto or arising therefrom; and, that each and all of the purported acts by the Board Defendants at the purported meetings held since December 4, 2015 and ongoingly, and other purportedly official acts occurring outside of any meetings, complained of herein and arising therefrom (save the payment of regular, recurring, customary expenses), are invalid and void on their face or as applied to Plaintiff and/or the public, for being repugnant to the Constitution and Laws of the United States, and/or the State of California, including, but not limited to: the HFPD Bylaws, the Health and Safety Code, the Brown Act; Government Code section 526a, 1090, and/or the Political Reform Act (and the regulations arising therefrom promulgated by the California Fair Political Practices Commission);

2. For general, special, economic, and exemplary damages as set forth, and as determined at trial;

3. Disgorgement by Defendants of any and all fees and/or reimbursements collected supposedly for work done on behalf of, or the direction of, the HFPD or any of its employees or agents, in violation of any other law of the United States and/or the State of California;

4. Disgorgement of all gifts of public funds by the HFPD and/or the Board Defendants (or any of their agents) to any person, and/or any other entity, independent contractor, agency, or individual receiving such, as well as disgorgement of all funds "earned" by any Defendant using District equipment to fight fires in any other location besides Hornbrook;

5. For attorney fees to the extent such are actually incurred by the Plaintiff, and as which may be permitted by any provision of Federal and/or State laws, and/or the HFPD Bylaws;

6. An Order commanding the HFPD and the Board Defendants to immediately (within 15 days) hire properly certified, licensed, and insured persons for inspection, repair, and/or certification of any HFPD vehicles, buildings, and/or personal property, and to henceforth maintain only properly certified, licensed, and insured personnel for such tasks;

7. An Order commanding the HFPD, and the Board Defendants to henceforth comply with all provisions of the Brown Act and California Public Records Act;

8. A declaration that the operation of the unsafe, non-code facilities; and, the unlicensed, unrepaired/uncertified, uncertified, and uninsured vehicles of the HFPD, is a nuisance *per se*, both as to this Plaintiff, and to the public generally, and so ordering that operation of any such HFPD facility and vehicles immediately cease, and be enjoined for so long as the vehicles and buildings fail to comply with all laws and regulations issued by the State of California, and/or the County of Siskiyou;

9. For a preliminary injunction and a permanent injunction, each enjoining the HFPD, Board Defendants, and/or Defendants Lee Buckley and Joseph Hott, as well as any later-named John Doe defendants, along with his/their agents, servants, and employees, and all persons acting under, in concert with, or for him/them, from operating any of the HFPD's equipment or facilities in any manner contrary to any Federal, State, or local law;

10. An Order commanding the Board Defendants (or their successors) to refrain from undertaking any administrative duty of the Administrator/General Manager, and/or Treasurer of the HFPD;

11. An Order commanding the HFPD and Board Defendants to abide by each and every provision of the HFPD Bylaws as adopted by Resolutions 15-004, 15-008, and 15-012;

12. An Order declaring each act of the Board Defendants taken in violation of the Brown Act, the HFPD Bylaws, and/or any other law as set forth herein to be *ultra vires,* and/or void otherwise;

13. An Order declaring that all "restated bylaws", and any other document created and purportedly ratified by the Board Defendants which purportedly alters, rescinds, and/or replaces

any portion of the HFPD Bylaws as adopted by Resolutions 15-004, 15-008, and 15-012 by any means other than voter approval, to be null and void;

14. An Order commanding the HFPD, and the Board Defendants to immediately undertake a full inventory of all HFPD property and equipment with a disinterested third party overseer or professional services person agreed to by the parties; to immediately collect all outstanding District property in the possession of any individual or entity and to only issue such property in the future in full conformance with the Bylaws; to conduct inventories of property and equipment at least each month henceforth, and to comply with all HFPD Bylaws provisions concerning checkout, accountability, and verification of property use henceforth;

15. For costs of suit herein incurred; and,

16. For such other and further relief as the court may deem proper.

Respectfully submitted this __15th__ day of April, 2019

Roger J. Gifford, Plaintiff Pro Se
15226 Hornbrook Rd, Hornbrook, CA
gunsnhorses@yahoo.com,      530-340-1395

HORNBROOK FIRE PROTECTION DISTRICT

Amendment to Bylaws #01 - 2014

Section A-1

(a)  All persons or entities who are residents of the District, or who own property within the District boundaries, or who is an elector of the District, shall have a right of private action, concurrent with the rights of the District in all respects, to enforce any provision of the District bylaws, by writ petition and/or civil action, against any violator, including any Director, and/or the District itself, pursuant to the Private Attorney General Doctrine, and specifically incorporating the provisions and remedies of California Code of Civil Procedure section 1021.5.  For purposes of this part, any enforcement of the District Bylaws by any person shall be deemed to constitute a "significant public benefit", while any violation of the Bylaws shall be deemed to constitute a "nuisance per se" for purposes of this section and the rights of action granted hereby.

(b)  All persons or entities who are residents of the District, or who own property within the District boundaries, shall have a right of private action, concurrent with the rights of the District in all respects, to bring action against any person or entity that causes any injury or loss to the District.  In the event that the District is unwilling, or unable to bring a legal action against an entity or individual causing loss or injury to the District, or any District property, any private citizen, Director, employee of the District, or other person, may assume the right to bring such an action in the public good, and on behalf of the District pursuant to the Private Attorney General Doctrine, and specifically incorporating the provisions and remedies of California Code of Civil Procedure section 1021.5.  The District does hereby assign all right and interest in bringing legal action for damages or losses incurred by the District, or to any of its property, to any concerned individual meeting the above criteria, and provided that the procedures in subsection "c" below are followed.  In return for this assignment of rights, any person or entity assuming the rights of the District to bring legal action as set forth herein, or acting as set forth herein to bring legal a action to the benefit of the District, shall disburse to the District treasure any award obtained via such legal action(s) (except in the case of personal injury), although such person or entity shall be entitled to retain any attorney fees and/or costs awarded as part of any judgment.

(c)  In order to assert the right to assume the assignment of rights granted by this Section, a qualified person or entity  must first petition the Board of Directors of the HFPD by letter stating the nature of the harm or loss identified, and asking if the District intends to act in the proposed action on its own behalf.  The District shall hold a meeting as soon as is practical to consider the letter, as well as any possibility of pending legal action, and shall affirm or deny its intention to pursue legal action within 14 days of the receipt of the letter.  Notification to the submitter of the letter shall issue in writing from the Board concerning the decision.  If the District fails to respond to the submitted letter within 21 days, that failure shall constitute a statement that the District does not intend to, or is unable to, take any legal action in regards to the issues raised in the letter, and the person or entity submitting the letter shall be granted full authority to pursue legal action on behalf of, and/or in the stead of the District (as an assignment of all rights).  Once the assignment of rights to the letter submitter has been made, either by declaring that no legal action will be taken by the District, or by a failure to respond, the Board may not thereafter attempt to withdraw the assignment of rights under this section, nor may it contest the assignment under this section once completed.

Once adopted, the provisions of this section may not be revoked or restricted by the District Board of Directors, and may only be restricted or repealed by the voters of the District at a regularly-held election on the question.  The Board may, however, expand the rights and privileges granted herein.

## *Hornbrook Fire Protection District*
## *RESOLUTION* #15-004

WHEREAS, the HORNBROOK FIRE PROTECTION DISTRICT (HFPD) has since approved to accept the **Amendment to Bylaws #01-2014.**

WHEREAS, a copy of the **Amendments to the Bylaws #01-2014** is attached hereto as Exhibit A.

RESOLVED, that the Board of Directors accepts the **Amendment to Bylaws #01-2014.**

RESOLVED further, that the Directors of HFPD are, and each acting alone is, hereby authorized and directed to take such further action as may be necessary, appropriate or advisable to implement this resolution and amendment and any such prior actions are hereby ratified; and

We, the undersigned, hereby certify that HFPD is comprised of 5 members, of whom 3, constituting a quorum, were present at a meeting duly and regularly called, noticed, convened and held this 18th day of **May, 2015,** and that the foregoing Resolution was duly adopted at said meeting by the affirmative vote of ____ members, and opposed by ____ members, and that said Resolution has been duly recorded in the Minute Book and is in full force and effect.

Ratified by resolution passes _____5/18_____, 2015 with
___4___ Ayes, and ___0___ Nays

Certified: _____     5/18/2015
                     President of the Board, HFPD            Date

Signatures of individual Board member(s):

Roger Gifford

Thomas Snider

William Snider

Gary Gysel

Pat Gifford

AMENDMENT TO BYLAWS
RESOLUTION 15-008

HFPD Bylaws, Article VIII District Property

a) No Individual, person or entity, including any member or officer of the Fire Department, and the Board of Directors, shall take personal possession of any property of the District without signing a receipt therefore in a form approved by the Board. The receipt shall bind the person taking possession and/or custody of the property to full legal liability for the safekeeping and upkeep of the property, and the duty to maintain all care in its preservation. The receipt shall, at a minimum, show: the full printed name and address of the person or entity taking possession or custody of any District property; the physical and mailing address of the entity or person taking possession or custody of any District property; the date of assumption of possession and custody as well as the estimated date the property will be returned; the location at which the property will be stored and/or used; the purpose for which the property is being taken; and if any earnings are expected to be realized by the use of the property, and, if so, how much earnings are anticipated. The receipt shall also contain contractual language indicating that if the District equipment or property is used in any way to earn any wages, or other funds of any sort, those funds shall become the property of the District. Any person taking possession or custody of any District property without the proper authorizations, and/or without signing a receipt as above, shall be liable to the District, or any interested party, for the full value of the property at issue.

b) No vehicles belonging to the District shall be parked, kept, or maintained at any private residence, or lot, and shall not be used for any personal or private endeavors whatsoever. No District property shall be utilized by any member of the Fire Department, or by any Board member, until that property has received all necessary certifications of its safety, and suitability for any proposed use. Damaged or unfit property and/or vehicles shall be disposed of or repaired as ordered by the Board, and/or as provided in the Bylaws, but shall under no circumstances be gifted to any individual or entity.

c) In the event any earnings are anticipated by the use of any District property or equipment, such use may only be authorized by a vote of the Board of Directors as to each instance thereof, and such grant of approval may not be made ongoing, but shall be for a definite time and place, not to exceed one (1) week between authorizations. All monies earned by any individual or entity while using District property or equipment shall be the property of the District, and surrendered thereto immediately upon receipt.

d) For purposes of this Section, the term "taking possession or custody" of any District property or equipment shall not include property and/or equipment used by firefighters during normal firefighting efforts, emergency service responses, or Board-approved training exercises.

e) All Individual persons, entitites, who are customers or residents of the District, or who own property within the District boundaries, are considered "interested parties" for purposes of this Section, and as otherwise provided by law relating to standing, and shall have a right of private action, concurrent with the rights of the District in all respects, to enforce the provisions of this section, including one based upon any person or entity's unauthorized removal of any property or

property or equipment, or in the case of a suit or other action against the District to enforce this provision, failing to require a receipt for the possession and/or use of District property and/or equipment, or for failing to act to collect any monies earned by any Fire Department or Third Party personnel who earn any funds while using any District property or equipment, by writ petition and/or civil action, against any violator, including any Director, and/or the District itself, pursuant to the Private Attorney General Doctrine. This Section specifically incorporates the provisions and remedies of California Code of Civil Procedure section 1021.5. For purposes of this part, any enforcement of this Section, and/or the District Bylaws by any person shall be deemed to constitute a "significant public benefit", while any violation of this Section, and/or of the Bylaws shall be deemed to constitute a "nuisance per se". Once adopted, the provisions of this section may not be revoked or modified by the District Board of Directors, and may only be modified or repealed by an affirmative vote of 55% the voters of the District voting at a regularly-held election on the question.

*Hornbrook Fire Protection District*
*RESOLUTION 15-008*

WHEREAS, the HORNBROOK FIRE PROTECTION DISTRICT (HFPD) has since approved to accept the Amendment to Bylaws Resolution 15-008.

WHEREAS, a copy of the **Amendment to the Bylaws #15-008** is attached hereto as **HFPD Bylaws, Article VIII District Property.**

RESOLVED, that the Board of Directors accepts the **Amendment to Bylaws 15-008.**

RESOLVED further, that the Directors of HFPD are, and each acting alone is, hereby authorized and direct to take such further action as may be necessary, appropriate or advisable to implement this resolution and amendment and any such prior actions are hereby ratified; and

We, the undersigned, hereby certify that HFPD is comprised of 5 members, of whom 3, constituting a quorum, were present at a meeting duly and regularly called, noticed, convened and held this 21th day of **September, 2015,** and that the foregoing Resolution was duly adopted at said meeting by the affirmative vote of _____ members, and opposed by _____ members, and that said Resolution has been duly recorded in the Minute Book and is in full force and effect.

Ratified by resolution passes _September 21_, 20 _15_ with

_4_ Ayes

_0_ Noes

Certified _____
President of the Board

Signatures of Individual Board member(s):

Thomas Snider
William Snider
Gary Gysel
Pat Gifford

# Hornbrook Fire Protection District
## Administrator Position



The Administrator will coordinate with the Board of Directors to provide information that will allow the governing board to make decisions that will safeguard the area's residents and to protect the Fire District's property and resources located in the unincorporated community of Hornbrook, California.

The Hornbrook Fire Protection District's Administrator will have no voting authority whatsoever. The position of Administrator established by the Hornbrook Fire Protection District's Board of Directors would be limited to completion of specific tasks voted on by the Board of Directors.

- **Support** by recommending and organizing resources within and outside of the District.

- **Inspection and Maintenance** recommendations for equipment, vehicles, and structures controlled and/or owned by District.

- **Review and Recommendations** of policies and procedures with the Fire Chief.

- **Gather Information and Formulate Proposals** on specific projects.

- **Report** potential legal and operational problems that require action by the Board of Directors.

- **Develop Strategic Planning Proposals** based on in-depth reviews of service capabilities and delivery as viewed by Board of Directors.

The Administrator will report to the board in accordance with the rules and regulations as it adopts

Whereas the above descriptions are contained in applicable government codes and HFPD has not determined any additions at this

Amendment (Resolution 15-012) to the Bylaws

Section A-1

GENERAL MANAGER/ADMINISTRATOR POSITION.
The Hornbrook Fire Protection District (HFPD or District) shall have a position known and designated as that of the General Manager. The position of General Manager shall also include and subsume the position of "Administrator" of the HFPD, and shall be filled by appointment by the Board and the General Manager shall serve at the pleasure of the Board subject to the provisions of the Bylaws, and a written agreement between the Board and the General Manager establishing the salary, benefits, status, tenure and other employment terms. In the event the General Manager is an unpaid volunteer, he shall be considered an employee of the District for purposes of Worker's Compensation, and other insurance coverage. Further, the General Manager position, and the person occupying that position as appointed by the Board, shall be considered a "permanent employee" position, and have all protections and rights in that position afforded by law to "State service" and "state civil service" employees, as those terms are used in California jurisprudence; specifically including, but not limited to Government Code sections: 3512, et seq; 19140, et seq; 19570, et seq, as well as the State Civil Service Act; Article VII of the California Constitution; and, those rights and recourse as discussed and applied in Skelly v. State Personnel Bd. (1975) 15 Cal.3d 194. The General Manager is thus only subject to adverse employment action, dismissal or demotion upon a finding of good cause, after a minimum of 15 days written notice (which must be personally served), a full and fair hearing (including a detailed statement of the reasons therefor, the right to examine all materials relied upon to support the charges, the opportunity to respond either orally or in writing or both [with affidavits] and to examine any witnesses against him before the Board, and/or a representative of the Board with authority to make or recommend a final decision, and written notice of the agency's decision on or before the effective date of the action), and opportunity to be heard before an impartial tribunal and the Board, with any adverse action subject to appeal to the State Personnel Board, and/or to the courts). The General Manager shall continue to operate as described herein, and shall have all of his appointed authority and duties, until such time as all appeal rights have been exhausted as to any adverse employment actions against him. Finally, all disciplinary and/or adverse employment actions taken against the General Manager, must be approved by a 4/5ths vote of the full Board in order to take effect.


The general manager shall be responsible for all of the following:

(a) The implementation of the policies established by the board of directors for the operation of the district, and the investigation of, and reporting to the Board and/or other authorities as necessary of, any violations.

(b) The appointment, supervision, discipline, and dismissal of each and all of the District's employees, consistent with the employee relations system established by the board of directors.

(c) The supervision of the district s facilities and services.

(d) The supervision of the district s finances.

Section A-2

DUTIES, RESPONSIBILITIES, LIMITATIONS AND AUTHORITY.
The General Manager shall be the chief administrative officer of the HFPD and shall report directly to and be directed by the HFPD Board of Directors. He or she shall be responsible to the Board for the efficient administration of all the affairs of the HFPD. Without limiting this general grant of responsibility and authority, the General Manager shall have the following responsibilities, duties and authority and limitations:

(a) Unless excused by the HFPD Board or its Chairperson, attend all regular and special meetings (including closed sessions) of the HFPD Board, other than closed sessions where the General Manager is the subject of discussion of that specific closed session, to advise and assist the Board, and to take part in its discussions, but not to vote;

(b) Direct and supervise the administration of all departments (including the Bookkeeper, and/or banking and funding repositories), offices, agents, contractors, and agents of the HFPD, except the General Manager shall not have any authority over the Chief, and/or line firefighters, at any emergency rescue or fire call, nor shall he or she be permitted to withdraw or expend District funds except as allowed as the PURCHASING AGENT, and/or as directed by the Board;

(c) Conduct continuous research in administrative policies and procedures and organizational arrangements with special reference to the efficient and economic use of personnel, equipment and facilities and require employees to adopt policies and procedures that will promote the orderly, efficient and economic conduct of the HFPD business;

(d) Make such reports as the HFPD Board may require from time to time concerning the operations of the HFPD, the provision of capital improvements, the financial condition of the HFPD, and the future needs of the HFPD;

(e) Prepare and update Administrative Policies and Procedures setting forth the administrative policies and procedures of the HFPD, which, when approved by the Board, shall constitute the officially approved Administrative Policies and Procedures of the HFPD, and it shall be the duty of the General Manager to compel compliance therewith by all officers and employees of the HFPD;

(f) Recommend to the HFPD Board such measures and ordinances as the General Manager deems necessary or expedient;

(g) Be responsible for the faithful execution and implementation of all ordinances, resolutions, agreements, orders, policies, directives and regulations of the Board, and acts of the HFPD Board and those policies, directives, regulations and laws of the Federal Government, State of California or the County Board of Supervisors applicable to the HFPD which are subject to

enforcement by the General Manager or by officers or employees under the General Manager's direction;

(h) Have the authority to take ministerial actions including, but not limited to, such things as:

(1) Issuance of will serve letters;

(2) Acceptance of services and improvements, infrastructure, easements and rights-of-way;

(3) Agreements and acts to implement tentative maps, subdivision conditions including subdivision improvement and deferred improvement agreements;

(4) Issuance of encroachment permits; and

(5) Approval of traffic control devices and markings except stop signs and traffic signals as necessary;

(i) Make recommendations to the Board relating to personnel policies, including the creation or abolition of positions and the establishment of salaries and wages;

(j) Appoint and hire all employees of the HFPD, including any and all volunteers; and when he or she deems it necessary for the good of the service, the General Manager may promote, or may suspend without pay, demote, discharge, remove or discipline any HFPD officer or employee who is appointed by the General Manager, provided, however, that the General Manager shall not appoint to any position any person related to him or her or to any member of the HFPD Board by blood or marriage within the third degree;

(k) Prepare and submit an annual recommendation and report for the budget to the HFPD Board;

(l) Recommend a long-term financial plan for the implementation of a Capital Improvement Program that is consistent with the community approvals, including any reimbursement agreements;

(m) Implement the budget, exercising continuous budgetary control to operate within the revenue available to the HFPD, assigning expenditures to appropriate funds and accounts and transferring revenue and expenditure authorization between accounts and funds as necessary within the the authority granted herein, and/or as lawfully directed by the Board;

(n) Be the HFPD Purchasing Agent and make and execute contracts and authorize expenditures up to one thousand dollars ($1,000.00) or such limit as may be approved by the HFPD Board;

(o) Represent the HFPD in its intergovernmental relations; and

(p) Perform such other duties and exercise such other powers as may be authorized from time to time by the HFPD Board

Section A-3

PURCHASING AGENT OFFICE ESTABLISHED.
The office of Purchasing Agent of the Hornbrook Fire Protection District (HFPD) is hereby established. The General Manager or the General Manager's designee shall be the Purchasing Agent of the District.

Section A-4

GENERAL DUTIES.
The Purchasing Agent shall have the duties and powers set forth in this chapter, and any additional resolutions of the Board. He or she shall furnish the Board with the reports and information that the Board may from time to time require and shall establish methods, procedures and requirements necessary for the fulfillment of his or her duties and the proper functioning of the purchasing operation in an efficient and economical manner.

(a) Personal Property. The Purchasing Agent shall purchase for the HFPD all materials, supplies, furnishings, equipment, livestock and other personal property of whatever kind and nature. No purchase of personal property by any person other than the Purchasing Agent shall be binding upon the HFPD or constitute a lawful charge against any HFPD funds except those items listed as exceptions in this chapter or as otherwise provided by law.

(b) Rent. It shall be the duty of the Purchasing Agent to rent for the HFPD all personal property.

(c) Lease-Purchase and Service Contracts. It shall be the duty of the Purchasing Agent to negotiate and execute in the name of the HFPD all equipment service contracts and lease-purchase agreements of personal property.

(d) Independent Contractor Services. It shall be the duty of the Purchasing Agent to engage independent contractors to perform services for the HFPD with or without the furnishing of material where the aggregate cost for each independent contractor on a fiscal year basis does not exceed three thousand dollars ($3,000.00) within each Type of Fund (General, Special Revenue, Capital, Proprietary, Fiduciary) or as set forth in the budget.

(e) Construction and Repair. It shall be the duty of the Purchasing Agent to employ independent contractors to construct or repair any of the buildings or structures and purchase furnishings, materials and supplies for use in such construction or repair where the estimated aggregate cost of all furnishings, materials, labor and supplies for use in such construction or repair does not exceed the amount established as set forth in Section 20685 of the Public Contract Code.

(f) Highway Construction. It shall be the duty of the Purchasing Agent to employ independent contractors to perform work on HFPD, lots, easements, rights of way, roads and highways as provided by this chapter or the State statutes, whenever the expenses of the work do not exceed the amount set forth therein.

(g) Sale or Disposal of Personal Property. The Purchasing Agent may by direct sale or otherwise sell or dispose of any personal property belonging to the HFPD not required for public use, in accordance with this chapter, and the other provisions of the Bylaws.

(h) Transfer of Personal Property. The Purchasing Agent is hereby authorized to transfer from one (1) HFPD personnel to another HFPD personnel any item of personal property.

(i) Forms. The Purchasing Agent shall develop, with the approval of the Counsel for the HFPD as to legal sufficiency, standard forms and conditions of invitations to bid and purchase orders and contracts, and shall also develop and prescribe other forms required in carrying out the provisions of this chapter, and he or she may amend and eliminate any such form.

(j)Authority to make purchases, sign contracts and adopt policies and procedures.

A. Authorization. The general manager of the district, or his or her designee, is authorized to make, sign, and execute contracts for any legal purpose necessary for the operation, improvement, or benefit of the district, subject to any applicable state law or regulation, and any written policies, procedures, or conditions established by the general manager which shall be available for public distribution. The general manager may also transfer supplies and equipment between district operations as needed.

B. Budgeted Items – Board Approval. Contracts for capital items, services and public works in excess of $3,000 shall be authorized by the board and shall not exceed the amount set forth in either the district annual budget or a separate board action establishing the budgeted items. The board may require different or additional bidding requirements for any particular contract. Contracts in any amount must be authorized pursuant to the district annual budget or by separate board action.

C. General Conditions. All contracts shall be accomplished in the manner providing maximum benefits and minimum cost to the taxpayers and users of the district.

D. Public Works Contracts Subject to Competitive Bidding. The following competitive bidding procedures shall be used for any public works contract which is subject to the competitive bidding requirements under Section 20640 et seq. of the Public Contract Code.

1. Notice Inviting Bids. A notice inviting bids shall be published at least once in a newspaper of general circulation, which is distributed in the district, or in a location where the contract will be performed. The first publication shall be no later than seven days before sealed bids are opened. Such notice shall state: (a) the nature of the contract, (b) where the details of any special requirements may be obtained, (c) the date, time, and place for opening bids, and if required, (d) the amount of security. In addition, and insofar as it is practicable, bids shall be solicited from all reasonable contractors or suppliers who have requested in writing that they be notified.

2. Sealed and Written Bids. All bids shall be in writing and shall be presented under sealed cover to the district.

3. Security. All bidders shall be required to post security, which may be provided in one of the following forms: (a) cash, (b) cashier's check made payable to the district, or (c) bidder's bond in the amount of 10 percent of the total amount of the bid executed by an admitted surety insurer, made payable to the district. Any required security shall be submitted to the district simultaneous

with submission of the bid. Upon award of the contract, the security of an unsuccessful bidder shall be returned within a reasonable period of time, not to exceed 60 days from the time the award is made, unless authorized by the bidder.

4. Opening of Bids. Bids shall be opened in public at the date, time, and place stated in the notice inviting bids. The general manager, or his or her designee, shall direct tabulation of all bids received, and shall allow public inspection of such tabulations during regular business hours.

5. Award to the Lowest Responsible Bidder. After all bids are opened, the general manager, or his or her designee, shall award the contract to the lowest responsible bidder. On refusal or failure of the successful bidder to execute the contract, the contract may be awarded to the next lowest responsible bidder. If two or more bids are of the same amount, and all are lower than any other bids received, award may be made to either or any one of the tie bids.

6. Rejection of Bids – Report to Board. If no bids are received from responsible bidders, if all bids received are either too high or nonresponsive, or if an insufficient number of bids are received, the general manager, or his or her designee, may reject all bids and authorize the contemplated work to be performed by the district by force account, or new bids may be solicited in conformance with this section. Any action taken pursuant to this subsection shall be reported to the board at its next regular meeting.

7. Emergency – Exception. Pursuant to Sections 20645 and 22050 of the Public Contract Code, the board hereby delegates to the general manager its authority to not comply with the bidding procedures for public works contracts in this section if the general manager determines that an emergency exists, the emergency will not permit a delay resulting from a competitive solicitation for bids, and the action is necessary to respond to the emergency. If the general manager makes such a determination, the district may repair or replace a public facility, take any directly related and immediate action required by the emergency, and procure the necessary equipment, services, and supplies for those purposes, without complying with this section. If the district performs an emergency action under this section, the general manager shall report to the board the rationale for the emergency determination and action at a meeting of the board conducted within seven days after the action, or at the board's next regularly scheduled meeting if that meeting will occur not later than 14 days after the action. At such meeting, and at every regularly scheduled meeting thereafter until the emergency action is terminated, the board shall determine, by a four-fifths vote, that there is a need to continue the emergency action. The board shall terminate the emergency action at the earliest possible date the conditions warrant so, and the remainder of the action may be completed in compliance with the procedures in this section.

Section A-5
ASSISTANT GENERAL MANAGER/ADMINISTRATOR.
Whatever authority and powers have been delegated to the general manager by the board of directors, as provided in any ordinance, resolution, or minute order of the board, such authority and power may also be delegated to the assistant general manager/chief operations officer. Such authority and power shall be exercised by the assistant general manager/chief operations officer in the event it is determined by the board or the general manager, as applicable, that the general manager is unable to perform the duties of the office due to the absence or incapacity of the

general manager, or due to a vacancy in the position of general manager. For purposes of this resolution, the term "assistant general manager/chief operations officer" also means the "district operations manager," "deputy general manager," "manager of engineering and operations," or "assistant general manager – engineering and operations" wherever such terms are used in the ordinances, resolutions, minute orders, and documents of the HFPD.

The general manager may, in his or her discretion, delegate administrative authorities and other duties to employees and assistants. The general manager shall determine the scope of such delegation including, without limitation: (A) the time period during which the delegation will be in effect; (B) the parameters or extent of such power and authority; and (C) the specific circumstances under which the power and authority may be exercised.

Section A-6

**AUTHORITY TO SETTLE OR DENY LIABILITY CLAIMS.**
The general manager, or his/her designee, is hereby authorized to settle or deny any liability claim against HFPD which meets the small claims settlement criteria and is for $5,000 or less; and that any such claim which is for more than $5,000 shall be considered for settlement or denial by the board of directors of the HFPD.

Section A-7

**JUSTIFICATION OF EXPENDITURES.**
The Purchasing Agent, after reviewing any requisition for purchasing, may require from an employee a justification of the quantity or quality or the necessity of the items requested. He or she may also require that an employee furnish three (3) acceptable brand names, where a brand name is used as specification for an article.

Section A-8

**CENTRALIZED PURCHASING EXCEPTIONS.**
No purchases or rentals as described in this chapter shall be made by any HFPD officer, Board member, or employee without a purchase order or other written authority first obtained from the Purchasing Agent, except the following:

(a) Expert or professional services;

(b) Advertising;

(c) Election supplies and services;

(d) Legal brief printing, transcripts and the like;

(e) Road construction equipment rental;
(f) Insurance;

(g) Public utility services and supplies;

(h) Ordinary travel expense items;

(i) Items exempt by law or by specific order or resolution of the Board;

(j) Emergency purchases may be made by any person or official authorized by the Purchasing Agent to sign requisitions when the Purchasing Agent or designee is not immediately available and the item or items so purchased are immediately necessary for the continued operation of the office, department or function involved, or are immediately necessary for the preservation of life or property Emergency purchases may be subsequently approved and confirmed by the Purchasing Agent, or if he or she refuses confirmation, the Board may subsequently approve and confirm the purchase by a majority vote of the members present at any of its regular meetings. Unless these purchases are so approved and confirmed by either the Purchasing Agent or the Board, the costs thereof shall not constitute a legal charge against the HFPD, except as the purchases may be otherwise authorized by law or resolution of the Board.

Section A-9

BIDDING PROCEDURES.
Except as required by law, the Purchasing Agent may make any purchase of personal property or perform any other act hereunder without notice, advertisement or securing competitive bids. If he or she shall purchase any single item of personal property for more than five thousand dollars ($3,000.00) without quotations, a competitive bid, or receiving competitive proposals, he or she shall do so only after making a finding that the purchase is to be made as a result of an emergency or the purchase is from a sole source vendor and he or she shall report that action and the finding to the HFPD Board. He or she shall report to the Board, with his or her reasons, the purchases of any item costing over five hundred dollars ($500.00) from other than the lowest bidder, quotation or proposal. These dollar limits shall be increased each July 1 in an amount equal to the percentage increase in the Consumer Price Index, for the twelve-month period ending the preceding February. In the performance of his or her functions hereunder, the Purchasing Agent shall comply with all applicable statutes, ordinances and regulations. In making purchases he or she shall use methods and procedures that in his or her judgment will secure the lowest price consistent with the quality desirable for the use intended and the needs of the requisitioning employee.

Section A-10

SURPLUS PROPERTY.
Any item of personal property may be declared surplus to the needs of the HFPD by the Purchasing Agent. The Purchasing Agent may maintain a pool of surplus equipment deemed usable and shall make it available to any HFPD department or operation having a need. In disposing of surplus property, the Purchasing Agent shall use such methods and procedures as in his or her judgment will return the greatest value to the HFPD. The Purchasing Agent shall deposit all funds received from the sale of surplus property in the HFPD fund from which the property was originally purchased. The Purchasing Agent shall not sell him or herself surplus property of the District.

Section A-11

AVAILABILITY OF FUNDS.
Except in emergencies as determined by the HFPD General Manager, no notice of award of contract shall be issued, no contract shall be signed, and no open-market purchase order shall be issued until the HFPD General Manager or designee shall have certified that the unexpended balance in the appropriation or appropriations concerned is sufficient to defray the amount of the contract or purchase order.

Section A-12

UNLAWFUL PURCHASES.
If any employee or Director of the HFPD purchases or contracts for any supplies, materials, equipment or contractual services contrary to the provisions of this chapter, the purchase order or contract shall be void and of no effect. The employee or Director making the purchase shall be personally liable for the amount of the purchase or contract, and, if the amount has already been paid for out of HFPD funds, the amount thereof may be recovered in the name of the HFPD in an appropriate action.

Section A-13

INSPECTION.
The receiving office or employee shall inspect deliveries of supplies, materials and equipment or the furnishing of contractual services to insure their conformance with the specifications set forth in the purchase order or contract.

Section A-14

RETURN OF MERCHANDISE.
Except in emergencies as determined by the HFPD General Manager, no supplies, materials or equipment shall be returned to a vendor for trade, credit or repair, or for any other reason without approval of the Purchasing Agent or designee.

Section A-15

CHANGES TO SECTIONS A-1 THROUGH A-15 ONLY ON 4/5 VOTE OF THE BOARD, OR VOTER APPROVAL

Sections A-1 through A-15 of the Bylaws may only be altered by a minimum 4/5 vote of the total membership of the Board of Directors of the HFPD, or by an affirmative vote of the electors within the District at a regularly held general election.

Contract for Administrator Position (Resolution 15-012)

Hornbrook Fire Protection District
PO Box 48
Hornbrook, CA, 96044

Roger Gifford
15226 Hornbrook Rd.
Hornbrook, CA 96044

To All know this presents, I, Roger Gifford, agree to abide by the conditions of resolution 15-012 Administrator/General Manager to assist the District in its necessary direction of complying with long neglected compliance with obligations under the law, for the safe administration of property and necessary rules and guidelines.

I hereby, agree to continue to assist the district in its efforts to acquire the new location and facilities and seek compliance and institute all means of progressing into a functioning operation for the HFPD.

This contract hereby binds the parties in mutual respect and cooperation to achieve the necessary forward goal binding HFPD to the terms of resolution 15-012.

Roger Gifford

Dated: 11 /8/2015

Thomas Snider
President  HFPD

Dated: 11 /8/2015

## Hornbrook Fire Protection District
### Administrator Position

**MISSION:**

The Administrator will coordinate with the Board of Directors to provide information that will allow the governing board to make decisions that will safeguard the area's residents and to protect the Fire District's property and resources located in the unincorporated community of Hornbrook, California.

**Administrator:**

The Hornbrook Volunteer Fire Protection District's Administrator will have no voting authority whatsoever. The position of administrator established by the Hornbrook Fire Protection District's Board of Directors would be limited to completion of specific tasks voted on by the Board of Directors.

➢ **Support** by recommending and organizing resources within and outside of the District.

➢ **Inspection and Maintenance** recommendations for equipment, vehicles, and structures controlled and/or owned by the District.

➢ **Review and Recommendations** of policies and procedures with the Fire Chief.

➢ **Gather Information and Formulate Proposals** on specific projects.

➢ **Report** potential legal and operational problems that require discussion and action of the Board of Directors.

➢ **Develop Strategic Planning Proposals** based on in-depth reviews of service capabilities and delivery as viewed by Board of Directors.

The Administrator will report to the board in accordance with the rules and regulations as they are adopted.

HORNBROOK FIRE PROTECTION DISTRICT

Amendment to Bylaws #01 - 2014

Section A-1

(a) All persons or entities who are residents of the District, or who own property within the District boundaries, or who is an elector of the District, shall have a right of private action, concurrent with the rights of the District in all respects, to enforce any provision of the District bylaws, by writ petition and/or civil action, against any violator, including any Director, and/or the District itself, pursuant to the Private Attorney General Doctrine, and specifically incorporating the provisions and remedies of California Code of Civil Procedure section 1021.5. For purposes of this part, any enforcement of the District Bylaws by any person shall be deemed to constitute a "significant public benefit", while any violation of the Bylaws shall be deemed to constitute a "nuisance per se" for purposes of this section and the rights of action granted hereby.

(b) All persons or entities who are residents of the District, or who own property within the District boundaries, shall have a right of private action, concurrent with the rights of the District in all respects, to bring action against any person or entity that causes any injury or loss to the District. In the event that the District is unwilling, or unable to bring a legal action against an entity or individual causing loss or injury to the District, or any District property, any private citizen, Director, employee of the District, or other person, may assume the right to bring such an action in the public good, and on behalf of the District pursuant to the Private Attorney General Doctrine, and specifically incorporating the provisions and remedies of California Code of Civil Procedure section 1021.5. The District does hereby assign all right and interest in bringing legal action for damages or losses incurred by the District, or to any of its property, to any concerned individual meeting the above criteria, and provided that the procedures in subsection "c" below are followed. In return for this assignment of rights, any person or entity assuming the rights of the District to bring legal action as set forth herein, or acting as set forth herein to bring legal a action to the benefit of the District, shall disburse to the District treasure any award obtained via such legal action(s) (except in the case of personal injury), although such person or entity shall be entitled to retain any attorney fees and/or costs awarded as part of any judgment.

(c) In order to assert the right to assume the assignment of rights granted by this Section, a qualified person or entity must first petition the Board of Directors of the HFPD by letter stating the nature of the harm or loss identified, and asking if the District intends to act in the proposed action on its own behalf. The District shall hold a meeting as soon as is practical to consider the letter, as well as any possibility of pending legal action, and shall affirm or deny its intention to pursue legal action within 14 days of the receipt of the letter. Notification to the submitter of the letter shall issue in writing from the Board concerning the decision. If the District fails to respond to the submitted letter within 21 days, that failure shall constitute a statement that the District does not intend to, or is unable to, take any legal action in regards to the issues raised in the letter, and the person or entity submitting the letter shall be granted full authority to pursue legal action on behalf of, and/or in the stead of the District (as an assignment of all rights). Once the assignment of rights to the letter submitter has been made, either by declaring that no legal action will be taken by the District, or by a failure to respond, the Board may not thereafter attempt to withdraw the assignment of rights under this section, nor may it contest the assignment under this section once completed.

Once adopted, the provisions of this section may not be revoked or restricted by the District Board of Directors, and may only be restricted or repealed by the voters of the District at a regularly-held election on the question. The Board may, however, expand the rights and privileges granted herein.

## *Hornbrook Fire Protection District*
### *RESOLUTION #15-004*

WHEREAS, the HORNBROOK FIRE PROTECTION DISTRICT (HFPD) has since approved to accept the **Amendment to Bylaws #01-2014.**

WHEREAS, a copy of the **Amendments to the Bylaws #01-2014** is attached hereto as Exhibit A.

RESOLVED, that the Board of Directors accepts the **Amendment to Bylaws #01-2014.**

RESOLVED further, that the Directors of HFPD are, and each acting alone is, hereby authorized and directed to take such further action as may be necessary, appropriate or advisable to implement this resolution and amendment and any such prior actions are hereby ratified; and

We, the undersigned, hereby certify that HFPD is comprised of 5 members, of whom 3, constituting a quorum, were present at a meeting duly and regularly called, noticed, convened and held this 18th day of **May, 2015,** and that the foregoing Resolution was duly adopted at said meeting by the affirmative vote of ___4___ members, and opposed by ___0___ members, and that said Resolution has been duly recorded in the Minute Book and is in full force and effect.

Ratified by resolution passes _____5/18_____, 2015 with ___4___ Ayes, and ___0___ Nays

Certified: _____   5/18/2015
            President of the Board, HFPD         Date

Signatures of individual Board member(s):

Roger Gifford

Thomas Snider

William Snider

Gary Gysel

Pat Gifford

AMENDMENT TO BYLAWS
RESOLUTION  15-008

HFPD Bylaws, Article VIII District Property

a) No Individual, person or entity, including any member or officer of the Fire Department, and the Board of Directors, shall take personal possession of any property of the District without signing a receipt therefore in a form approved by the Board.  The receipt shall bind the person taking possession and/or custody of the property to full legal liability for the safekeeping and upkeep of the property, and the duty to maintain all care in its preservation.  The receipt shall, at a minimum, show: the full printed name and address of the person or entity taking possession or custody of any District property; the physical and mailing address of the entity or person taking possession or custody of any District property; the date of assumption of possession and custody as well as the estimated date the property will be returned; the location at which the property will be stored and/or used; the purpose for which the property is being taken; and if any earnings are expected to be realized by the use of the property, and, if so, how much earnings are anticipated. The receipt shall also contain contractual language indicating that if the District equipment or property is used in any way to earn any wages, or other funds of any sort, those funds shall become the property of the District. Any person taking possession or custody of any District property without the proper authorizations, and/or without signing a receipt as above, shall be liable to the District, or any interested party, for the full value of the property at issue.

b) No vehicles belonging to the District shall be parked, kept, or maintained at any private residence, or lot, and shall not be used for any personal or private endeavors whatsoever.  No District property shall be utilized by any member of the Fire Department, or by any Board member, until that property has received all necessary certifications of its safety, and suitability for any proposed use.  Damaged or unfit property and/or vehicles shall be disposed of or repaired as ordered by the Board, and/or as provided in the Bylaws, but shall under no circumstances be gifted to any individual or entity.

c) In the event any earnings are anticipated by the use of any District property or equipment, such use may only be authorized by a vote of the Board of Directors as to each instance thereof, and such grant of approval may not be made ongoing, but shall be for a definite time and place, not to exceed one (1) week between authorizations. All monies earned by any individual or entity while using District property or equipment shall be the property of the District, and surrendered thereto immediately upon receipt.

d) For purposes of this Section, the term "taking possession or custody" of any District property or equipment shall not include property and/or equipment used by firefighters during normal firefighting efforts, emergency service responses, or Board-approved training exercises.

e) All Individual persons, entitites, who are customers or residents of the District, or who own property within the District boundaries, are considered "interested parties" for purposes of this Section, and as otherwise provided by law relating to standing, and shall have a right of private action, concurrent with the rights of the District in all respects, to enforce the provisions of this section, including one based upon any person or entity's unauthorized removal of any property or

property or equipment, or in the case of a suit or other action against the District to enforce this provision, failing to require a receipt for the possession and/or use of District property and/or equipment, or for failing to act to collect any monies earned by any Fire Department or Third Party personnel who earn any funds while using any District property or equipment, by writ petition and/or civil action, against any violator, including any Director, and/or the District itself, pursuant to the Private Attorney General Doctrine.  This Section specifically incorporates the provisions and remedies of California Code of Civil Procedure section 1021.5.  For purposes of this part, <u>any</u> enforcement of this Section, and/or the District Bylaws by any person shall be deemed to constitute a "significant public benefit", while any violation of this Section, and/or of the Bylaws shall be deemed to constitute a "nuisance per se".  <u>Once adopted, the provisions of this section may not be revoked or modified by the District Board of Directors, and may only be modified or repealed by an affirmative vote of 55% the voters of the District voting at a regularly-held election on the question.</u>

*Hornbrook Fire Protection District*
*RESOLUTION 15-008*

WHEREAS, the HORNBROOK FIRE PROTECTION DISTRICT (HFPD) has since approved to accept the Amendment to Bylaws Resolution 15-008.

WHEREAS, a copy of the **Amendment to the Bylaws #15-008** is attached hereto as **HFPD Bylaws, Article VIII District Property.**

RESOLVED, that the Board of Directors accepts the **Amendment to Bylaws 15-008.**

RESOLVED further, that the Directors of HFPD are, and each acting alone is, hereby authorized and direct to take such further action as may be necessary, appropriate or advisable to implement this resolution and amendment and any such prior actions are hereby ratified; and

We, the undersigned, hereby certify that HFPD is comprised of 5 members, of whom 3, constituting a quorum, were present at a meeting duly and regularly called, noticed, convened and held this 21th day of **September, 2015,** and that the foregoing Resolution was duly adopted at said meeting by the affirmative vote of _____ members, and opposed by _____ members, and that said Resolution has been duly recorded in the Minute Book and is in full force and effect.

Ratified by resolution passes _September 21_, 20 _15_ with
_4_ Ayes
_0_ Noes

Certified _____   _Sq ar﹒S_
President of the Board

Signatures of Individual Board member(s):

Thomas Snider
William Snider
Gary Gysel
Pat Gifford

## **CERTIFICATION OF SERVICE**

I, Roger J. Gifford, the undersigned Plaintiff in this matter, do hereby affirm under penalty of perjury that I served the foregoing document by US Mail upon the parties via their attorneys at the address below, and on the date listed.

Patrick L. Deedon
PO Box 994607
Redding, CA 96099

April 15th, 2019

Dated this 15th day of April, 2019

_____
Roger J. Gifford, Plaintiff Pro Se