1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ROGER GIFFORD,                           No. 2:16-CV-0596-JAM-DMC

12              Plaintiff,

13       v.                                   FINDINGS AND RECOMMENDATIONS

14   HORNBROOK FIRE PROTECTION
     DISTRICT, et al.,
15
16              Defendants.

17              Plaintiff, who is proceeding pro se, brings this civil action. Before the Court is

18   Defendants' motion to dismiss. ECF No. 48. Plaintiff opposed the motion. ECF No. 54. Also before

19   the Court is Defendants' request for judicial notice of public documents. ECF No. 49. The

20   undersigned United States Magistrate Judge recommends granting the motion to dismiss in part

21   and denying it in part. The undersigned recommends granting leave to amend as set forth below.

22                              **I. BACKGROUND**

23       **A.  Procedural History:**

24              Plaintiff filed this suit on March 22, 2016.[1] ECF No. 1. He sued several defendants:

25   the Hornbrook Fire Protection District (HFPD), Woodrow Mattingly, Adria Buckley, Lee Buckley,

26   Sharon Morin; Joseph Hott, and twenty John Does. Id. at 1–2. The Court ordered Plaintiff's

27   complaint served on October 24, 2018. ECF No. 5. Plaintiff initially only served Defendant Hott,

28
     _____
     [1] This case was reassigned to the undersigned when the undersigned took the bench in 2018. ECF No. 4.

1  who returned a waiver of service. ECF No. 10. Hott did not submit any further response, and the

2  Clerk entered his default in February 2019. ECF No. 12. Plaintiff did not properly serve other

3  Defendants within the time that the Court identified in its order directing service. See ECF No. 13.

4  The Court thus issued an order to show cause why the case should not be dismissed for lack of

5  prosecution. Id. Plaintiff established good cause for the failure to serve the remaining defendants.

6  ECF No. 15. The Court discharged the show cause order. ECF No. 15.

7      Defendants HFPD, Kirk-Buckley, and Morin eventually filed answer to the

8  complaint. ECF No. 19. Plaintiff subsequently filed a first amended complaint. ECF No. 23.

9  Defendants HFPD, Kirk-Buckley, Morin, and Defendant Hott[2] also answered the first amended

10 complaint. ECF No. 24. Those Defendants later filed a motion for judgment on the pleadings. ECF

11 No. 31. The undersigned United States Magistrate recommended that the District Judge assigned

12 to this case grant and deny the motion in part. ECF No. 41. The District Judge adopted the findings

13 and recommendations in full. ECF No. 44.

14     The District Judge granted Plaintiff leave to file a second amended complaint. Id.

15 Plaintiff filed that complaint, which remains operative. ECF No. 47. Defendants HFPD, Kirk-

16 Buckley, Morin, and Hott filed then filed motion to dismiss currently before the Court. ECF No.

17 48. Defendant Lee Buckley does not appear to have filed any response at all since Plaintiff initiated

18 suit. Plaintiff, however, has not moved for entry of default.

19     **B. Plaintiff's Allegations:**

20     This case is but one in an ongoing saga of lawsuits that this Plaintiff has brought

21 against government entities and officials in Siskiyou County, California.[3] Plaintiff now brings suit

22 related to management of the Hornbook Fire Protection District. ECF No. 47. Plaintiff names most

23 of the same several defendants: HFPD, Adria Buckley, Lee Buckley, Sharon Morin; Joseph Hott;

24 and twenty John Does. Id. at 1. Plaintiff, broadly, contends that Defendants interfered with his

25 rights and retaliated against him after Plaintiff sought to address mismanagement at HFPD. See id.

26 ─────────────

27 [2] Because Defendant Hott timely answered the first amended complaint and responded to the second amended complaint, he is no longer in default.

28 [3] Plaintiff has been adjudged a vexatious litigant in California state court. Gifford v. Robert D., No. C086445, 2019 WL 2281259, at *1–3 (Cal. Ct. App. May 29, 2019); Olson v. Hornbrook Cmty. Servs. Dist., 33 Cal. App. 5th 502, 513 (Cal. Ct. App. 2019).

at 4–14. He brings suit under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Id. at 1. Plaintiff claims violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution, and several provisions of California law. See id. at 4–31.

Hornbrook, California, is a small community in Siskiyou County, near the Oregon border. See id. at 4. As HFPD's names suggests, HFPD offers fire prevention services for Hornbrook and surrounding unincorporated areas. See id. Plaintiff was a member of HFPD's Board of Directors (Board) until he resigned to become HFPD's Administrator/General Manager. Id. at 4–5. The individual defendants are each HFPD personnel of some kind. Id. at 2–5. Sharon Morin and Adria Kirk-Buckley are members of the Board. Id. at 2. Kirk-Buckley was a firefighter prior to joining the Board. Id. at 5. Lee Buckley is a firefighter and "Acting Chief. Id. at 2. Hott is a firefighter. Id. Plaintiff sues Defendants in both their official and personal capacities. Id.

During his tenure as a board member, Plaintiff and then-board members attempted to impose policies governing HFPD inventory, vehicles, and employee discipline. Id. at 4. Plaintiff and others sought to address unauthorized use of HFPD inventory for personal benefit. See id. Employees had apparently misused HFPD equipment and hired themselves out to other agencies but kept any income for themselves. Id. at 4 & n.14. Plaintiff and other Board members also tried to procure new land from the Bureau of Land Management in order to replace an unsafe fire station, which an engineer condemned. Id. at 4 & n.15.

Plaintiff and other board members investigated several incidents of misuse of HFPD equipment and falsification of records by Kirk-Buckley (who was then only a firefighter) and Lee Buckley. Id. at 4–5. Hott participated in the alleged misconduct, such as misuse of equipment. Id. at 5, 9 at n.27. The investigation was largely unofficial. Id. at 5. Plaintiff contends that he did not initiate the investigation as part of any official function. Id. Plaintiff unofficially referred reports of misconduct to the Siskiyou County Sheriff. Id. Kirk-Buckley and Lee Buckley surrendered a filing cabinet, public records, radios, and other HFPD equipment to the Sheriff's Office. Id.

The Board dismissed Kirk-Buckley and Lee Buckley. Id. The Board also found Hott responsible for misconduct but took no action against him. Id. As a result of the Buckleys' and Hott's misbehavior, the Board enacted numerous modifications of HFPD's bylaws to enhance

3

1  accountability and inventory control. Id. The Board also enacted voter approval requirements meant

2  to preclude self-serving changes to HFPD's bylaws. Id.

3        Plaintiff resigned as a Board member after the enactment of new bylaws. Id. He took

4  up the role of Administrator of HFPD. Id. HFPD's bylaws allegedly outline his duties,

5  compensation, and authority. Id. Shortly after Plaintiff's departure from the board, however,

6  Defendants themselves took office on the board and within HFPD. Id. Kirk-Buckley and Morin

7  (whom Plaintiff calls "the Board Defendants") became board members. See id. They named Lee

8  Buckley as Acting Chief once more but did so outside of any noticed hearing. See id. Kirk-Buckley

9  and Lee Buckley gave out radios and equipment to personal friends without logging anything as

10  required under the new bylaws. Id. at 5–6. Lee Buckley also allegedly drove uninsured, unlicensed,

11  and "uncertified" HFPD vehicles on public streets with the Board's permission. Id. at 6.

12        Plaintiff officially and unofficially complained of the repeated equipment-related

13  misconduct and driving of HFPD vehicles. Id. As Administrator/General Manager, he reported the

14  violations to the Board. Id. Other citizens[4] wrote Plaintiff letters complaining of Buckley's conduct.

15  Id. As a private citizen, he wrote letters to (and may have brought tort claims against) Buckley. Id.

16        Later, Morin and Kirk-Buckley thwarted the BLM land application. Id. They took

17  allegedly unlawful actions in violation of the bylaws, the Brown Act, and other state laws. Id. They

18  retaliated against Plaintiff by terminating him as Administrator/General manager. Id. Plaintiff

19  contends that they terminated him without due process and without adhering to the bylaws or

20  contract governing his employment. Id. Morin and Buckley attempted to revoke enactments

21  granting citizens voting power over HFPD. Id.

22        Plaintiff goes on to allege numerous instances of illegal meetings and actions on the

23  part of the Board Defendants. Id. at 6–8. From around December 2015, they denied him copies of

24  documents and access to board meetings. Id. at 7. The Board Defendants allegedly held meetings

25  in private, on gated property, without public notice, and outside HFPD boundaries. Id. Plaintiff

26  believes that Defendants held the meetings in secret for the purpose of disenfranchising local voters,

27

28  [4] By "other" citizens, Plaintiff presumably means Kimberly Olson and Peter Harrell, mentioned in his first complaints. See ECF Nos. 1 at 10; 23 at 10. Plaintiff, Olson, and Harrell are *prolific* pro se litigants in state and federal court alike.

including Plaintiff, and to cover up improper transfers of HFPD property and other misconduct. Id. He contends that the secret meetings were also meant to intimidate and coerce him into abandoning his contractual and constitutional rights. Id. The Board Defendants revoked new HFPD bylaws even though they required voter approval to do so. Id. 7–8. They also allegedly improperly considered items not on a public agenda. Id. Plaintiff attempted several times, both personally and officially, to place issues of misconduct on board meeting agendas, but to no avail. Id. at 8.

Since the December 2015 private meetings, and continuing into 2016 and beyond, all of the Defendants allegedly affirmatively conspired to violate Plaintiff's rights. Id. at 8. Plaintiff repeats, generally, his allegations. Id. at 8–9. Namely, that Defendants, for example, acted and conspired to revoke HFPD bylaws, without voter support, interfered with Plaintiff's duties as Administrator/General Manager, excluded Plaintiff's from meetings, misused HFPD property, placed the public at risk by driving unsafe vehicles, and diverted public funds to their benefit. Id. at 8–10. Plaintiff's only mention of Mattingly is in a footnote here, contending that Mattingly acted to remove him as Administrator. Id. at 9 n.26. Plaintiff also cursorily adds that Defendants retaliated against Plaintiff for his religious and political beliefs. Id. at 10.

Plaintiff contends that he notified Defendants of the illegality of their alleged conduct. Id. at 11. Yet, Defendants have violated a number of California laws, including sections of the Health and Safety Code. Id. 10–11. And Defendants assertedly acted arbitrarily but in furtherance of a policy, custom, or practice of committing the alleged misconduct. Id. Consequently, Plaintiff maintains that Defendants have established a *per se* public and private nuisance,[5] and that the Board Defendants' actions are void for being *ultra vires* and criminal.[6] Id. at 11–12. Defendants allegedly exceeded their lawful authority. Id. at 12. Plaintiff requests that the court enjoin the Defendants' from acting further and nullify their previous actions. See id. (citing Cal. Code. Civ. P. § 526 and Blair v. Pitches, 5 Cal. 3d 258, 268 (1971)).

Turning to his discrete claims, Plaintiff asserts four counts under the United States

---

[5] As support, Plaintiff cites California Government Code §§ 54959, 61061(a), 1090, 91003(b), and California Civil Code § 3369. ECF No. 47 at 11 & n.29.

[6] Plaintiff includes more citations as support, including to California Civil Code sections 3479, 3480, and 3491, and to In re Firearm Cases, 126 Cal. App. 4th 959, 988–89 (Cal. Ct. App. 2005), Nestle v. City of Santa Monica, 6 Cal. 3d 920 (1972), and other California statutes. ECF No. 47 at 11 & n.30.

1    Constitution. Id. at 14–21. In broad sum, Plaintiff first claims that Defendants unconstitutionally

2    retaliated against him, impeded his right to pursue redress of grievances, to generally to speak

3    freely. Id. at 14–16. Second, Plaintiff contends that Defendants violated his due process and equal

4    protection rights. Id. at 16–18. Defendants allegedly violated Plaintiff's due process rights by

5    failing to provide proper notice and process related to public meetings and adverse actions against

6    him (ostensibly including his termination). Id.

7            Third, Plaintiff asserts another free speech claim, and also asserts that Defendants

8    denied him his right to vote. Id. at 19–20. And they allegedly violated the Fourth Amendment

9    because they "seized" his constitutional rights without due process. Id. at 19. Fourth and similarly,

10   against Molin and Kirk-Buckley specifically,[7] Plaintiff asserts a collective violation of his

11   Fourteenth Amendment due process and equal protection rights, as well as his First Amendment

12   rights to petition the government and to free speech. Id. at 20–21.

13           Plaintiff then turns to claims under California state law. Id. at 22–31. Specifically,

14   Plaintiff fashions twelve state law claims against Defendants: (1) violation of HFPD bylaws; (2)

15   negligence; (3) violations of California Government Code sections 1090 and 87100; (4) retaliation

16   and termination in violation of public policy; (5) violation of Article I, section 2 of the California

17   Constitution; (6) negligence as to the Board Defendants; (7) civil conspiracy; (8) intentional

18   infliction of emotional distress; (9) nuisance; (10) violation of a covenant of good faith and fair

19   dealing; (11) unlawful official actions; and (12) violation of the Bane Act by Board Defendants and

20   Lee Buckley. Id. Plaintiff includes a request for exemplary damages as thirteenth count. Id. at 31.

21                                   **II. STANDARD OF REVIEW**

22           In considering a motion to dismiss, the Court must accept all allegations of material

23   fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). The Court must

24   also construe the alleged facts in the light most favorable to the plaintiff. See Benavidez v. County

25   of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021). Legally conclusory statements not supported

26   by actual factual allegations need not be accepted. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

27

28   [7] Plaintiff uses the term "Board Defendants," so the Court assumes he asserts the fourth count against Molin and Kirk-Buckley specifically. EF No. 47 at 20–21.

6

1  Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v.

2  Kerner, 404 U.S. 519, 520 (1972); Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014).

3          "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement

4  of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice

5  of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp v. Twombly, 550 U.S.

6  544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive

7  dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a

8  formulaic recitation of the elements of a cause of action." Id. at 555. It must contain factual

9  allegations sufficient "to raise a right to relief above the speculative level." Id. The complaint must

10  contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has

11  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

12  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

13  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

14  sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556).

15  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

16  short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly,

17  550 U.S. at 557) (internal quotation marks omitted).

18          In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

19  outside the complaint and pleadings. See United States v. Corinthian Colls., 655 F.3d 984, 998–99

20  (9th Cir. 2011). The Court may, however, consider materials submitted with and attached to a

21  complaint. Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill., 983

22  F.3d 435, 439 (9th Cir. 2020); Corinthian Colls., 655 F.3d at 999. Courts may also consider

23  "judicial notice of matters of public record." Beverly Oaks, 983 F.3d at 439. Finally, the Court may

24  consider evidence not attached to the complaint but on which the complaint relies if "(1) the

25  complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no

26  party questions the authenticity of the document." Corinthian Colls., 655 F.3d at 999 (quoting

27  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006))

28          Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

7

1    amendment can cure the defects." Lucas v. Dep't of Corrs., 66 F.3d 245, 248 (9th Cir. 1995); see

2    Lopez v. Smith, 203 F.3d 1122, 1126–27 (9th Cir. 2000).

3                                    **III. DISCUSSION**

4            Defendants move to dismiss Plaintiff's entire second amended complaint without

5    leave to amend. ECF No. 48-1 at 7, 27. They contend that he has failed to state any claim at all. Id.

6    at 7. The Court discusses the parties' arguments alongside each of the claims.

7        **A.  Defendants' Request for Judicial Notice:**

8            Before discussing the substance of Defendants' motion, the Court will address

9    Defendants' request for judicial notice submitted in support of the motion. ECF No. 49. Defendants

10   ask the Court to take judicial notice of public records from HFPD. Id. at 2. The documents, per

11   Defendants' characterization, include letters between Defendants and Plaintiff concerning alleged

12   Brown Act violations and the Board's promise to desist from any violations; minutes of HFPD

13   board meetings; and HFPD resolutions adopted by the Board rescinding previous resolutions that

14   the Board adopted at a January 22, 2016, meeting that Plaintiff complained of. Id. at 2, 4–20.

15           Plaintiff objects to the request for judicial notice. ECF No. 54 at 2–3. First, he

16   contends that Defendants' request does not identify the proposed documents as public records by

17   any "acceptable means." Id. at 2. Second, he posits that the documents do not represent the things

18   Defendants argue they represent. Id. In Plaintiff's view, the letter from HFPD (which Defendant

19   Mattingly, who was apparently President of the Board, wrote) does not promise to rescind illegal

20   actions. Id. (discussing ECF No. 49, Ex. B). Further, the alleged resolutions did not rescind *all* the

21   illegal actions from January 22, 2016, but only two. Id. at 2–3 (discussing ECF No. 49, Exs. C–D).

22           Defendants reply to Plaintiff's objection by argument that their submitted

23   documents are incorporated by reference into Plaintiff's complaint. ECF No. 55 at 2–3. They

24   contend that the documents are central to Plaintiff's Brown Act claims. Id.

25           As indicated in the Court's recitation of the standard of review governing motions

26   to dismiss, the Court typically cannot consider materials beyond the pleadings. Corinthian Colls.,

27   655 F.3d at 998. To do so would be to convert the motion from a 12(b)(6) motion to a motion for

28   summary judgment. Fed. R. Civ. P. 12(d); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.

1    2001). The Court, however, may take judicial notice of "matters of public record." <u>Corinthian</u>

2    <u>Colls.</u>, 655 F.3d at 999. The Court cannot take judicial notice of facts favorable to Defendants that

3    can be reasonably disputed. <u>Id.</u> The Court may consider evidence not attached to a complaint but

4    on which a complaint "necessarily relies" if "(1) the complaint refers to the document; (2) the

5    document is central to the plaintiff's claim; and (3) no party questions the authenticity of the

6    document." <u>Id.</u> (quoting <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006))

7            Although Plaintiff's objections are inarticulate, he does not appear to challenge that

8    the records are what is contended by Defendants. Absent objection, the Court takes judicial notice

9    of the records but does not take judicial notice of any disputed facts therein.

10   **B. Plaintiff's Federal Claims:**

11        **i.   Count I – First Amendment Retaliation:**

12           Defendants argue that Plaintiff fails to state a First Amendment claim irrespective

13   of whether he is alleging a deprivation as either a private citizen or as an HFPD employee. ECF

14   No. at 48-1 at 8–9. They make two broad arguments: (1) Defendants did not violate Plaintiff's

15   rights by holding closed meetings, and (2) Plaintiff does not state a retaliation claim under § 1983.

16   <u>Id.</u> at 9–12. Defendants contend that there is no constitutional right to be heard by public bodies

17   making policy decisions, and that a private meeting does not constitute viewpoint discrimination.

18   <u>Id.</u> at 9. Also, they assert that, although Plaintiff's second amended complaint alleges that he

19   engaged in expressive conduct as a private citizen, his complaint still claims that he was primarily

20   motivated by his duties as an HFPD official and his dissatisfaction with his employment situation.[8]

21   <u>Id.</u> at 9–10. Moreover, Defendants urge that none of Defendants' alleged conduct rose to a First

22   Amendment deprivation because Plaintiff has pled only *de minimis* harm and is not a "prototypical

23   plaintiff" in a retaliation case; rather, he worked in a volunteer position and was dismissed by those

24   who selected him. <u>Id.</u> at 11–12 (citing <u>Blair v. Bethel Sch. Dist.</u>, 608 F.3d 540, 544 (9th Cir. 2010).

25   Nor, in Defendants' view, has Plaintiff sufficiently pled that his speech was a substantial factor in

26   ───────────────

27   [8] In their motion for judgment on the pleadings, which Defendants filed in response to the first amended complaint, Defendants argued that the First Amendment does not protect public employees' speech when made in furtherance of employment responsibilities. ECF No. 31-1 at 3. The Court recommended denying the motion on that argument because Plaintiff's pleading was not conclusive as to his motivations; in other words, Plaintiff's complaint could be taken to allege motivations stemming from both public duty and interest as a private citizen. ECF No. 41 at 8.

28

1   Defendants' alleged actions against him. Id. at 12.

2        Plaintiff responds that the Court already upheld Plaintiff's first cause of action in

3   addressing the motion for judgment on the pleadings, and thus they cannot now attempt to dismiss

4   his claims via a motion to dismiss. ECF No. 54 at 5–6. He also theorizes, citing Garcetti v. Ceballos,

5   547 U.S. 410, 421 (2006), that determining the scope of employee's duties for free speech purposes

6   is a "practical one." Id. at 5. In Plaintiff's view, the Court must consider the duties that an employee

7   must perform, in addition to when, where, and with whom the speech was made. Id. Plaintiff, in

8   effect, argues that even if some of his speech overlapped with his duties as an HFPD official, his

9   speech was primarily that of a private citizen and voter. See id. at 9 & n.9.

10       The Court first notes that Defendants do not adequately address Plaintiff's discrete

11  argument that Defendants violated his right to petition the government for redress of grievances.

12  The Court expressly stated a similar conclusion in its prior findings and recommendations. ECF

13  No. 41 at 7–8. Defendants focus almost wholly on the allegations of retaliation in Plaintiff's claims.

14  The closest that they come is arguing that HFPD did not violate Plaintiff's First Amendment rights

15  or discriminate against his viewpoint by holding closed meetings. ECF No. 48-1 at 9. Although

16  inferentially relevant, they do not address the substance of Plaintiff's redress of grievances claim.

17       A First Amendment retaliation claim entails five factors. Greisen v. Hanken, 925

18  F.3d 1097, 1108 (9th Cir. 2019); Barone v. City of Springfield, 902 F.3d 1091, 1098 (9th Cir. 2018).

19  The inquiry examines  (1) whether a plaintiff spoke on a matter of public concern; (2) whether a

20  plaintiff spoke as a public employee or private citizen; (3) whether the plaintiff's protected speech

21  was a substantial or motivating factor in the adverse employment action; (4) whether the state had

22  an adequate justification for treating the employee differently from other members of the general

23  public; and (5) whether the state would have taken the adverse employment action even in the

24  absence of the protected speech. Greisen, 925 F.3d at 1008; Barone, 902 F.3d at 1098.

25       Plaintiffs bear the burden on the first three elements. Greisen, 925 F.3d at 1008;

26  Barone, 902 F.3d at 1098. If the plaintiff establishes a *prima facie* case via those elements, the

27  burden shifts to the government defendants to satisfy the latter two elements. Greisen, 925 F.3d at

28  1008; Barone, 902 F.3d at 1098. Failure on any of the elements is fatal to a plaintiff's claim. Barone,

1   902 F.3d at 1098.

2          Generally, speech involves "matters of public concern" when it can "fairly

3   considered" to relate to issues of "political, social, or other concern to the community." E.g.,

4   Connick v. Myers, 461 U.S. 138, 146 (1983); Moser v. Las Vegas Metro. Police Dep't, 984 F.3d

5   900, 905 (9th Cir. 2021); see Desrochers v. City of San Bernardino, 572 F.3d 703, 710 (9th Cir.

6   2009). Stated a little differently, speech involves issues of public concern if it is a subject of

7   "legitimate news interest; that is, a subject of general interest and of value and concern to the

8   public." Moser, 984 F.3d at 905. Otherwise still, speech of public concern may involve subjects

9   about which information is appropriate to enable the public to make informed decisions about their

10   government. See Desrochers, 572 F.3d at 710. Determining whether an employee's speech

11   addresses a matter of public concern entails examining the content, form, and context of the speech,

12   as illustrated by the record. Lane v. Franks, 573 U.S. 228, 241 (2014); Connick, 461 U.S. at 147–

13   48; Moser, 984 F.3d at 905; see Johnson v. Multnomah Cty., 48 F.3d 420, 422, 425 (9th Cir. 1995).

14   An employee's motivation is a relevant consideration, but motivation is *not* a litmus test.

15   Desrochers, 572 F.3d at 714–15; Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 925 (9th Cir.

16   2004); Johnson, 48 F.3d at 425; see Connick, 461 U.S. at 148. An employee's chosen audience is

17   also relevant. Greisen, 925 F.3d at 1109; Desrochers, 572 F.3d at 714; Johnson, 48 F.3d at 425.

18   Essentially, in reviewing form and context, the analysis questions whether an employee sought to

19   bring a legitimate concern to light, not simply to further private interests. Greisen, 925 F.3d at 1109.

20          Determination of whether a government employee spoke as a private citizen or

21   pursuant to their official duties is a practical, fact-specific inquiry.[9] See Garcetti, 547 U.S. at 421,

22   424; Barone, 902 F.3d at 1098–99; Dahlia v. Rodriguez, 735 F.3d 1060, 1070–71 (9th Cir. 2013).

23   The focus is not on formal job descriptions. Barone, 902 F.3d at 1099. The United States Supreme

24   Court emphasized that formal job descriptions commonly do not substantially mirror the duties an

25   employee is expected to undertake. Garcetti, 547 U.S. at 424–25; Brandon v. Maricopa Cty., 849

26

27   [9] Determination of whether a plaintiff's speech was spoken as a public employee or private citizen is a mixed question
of law and fact. Kennedy v. Bremerton Sch. Dist., 869 F.3d 813, 823–24 (9th Cir. 2017). Initially, there must be a
28   factual determination concerning the scope and substance of a plaintiff's job duties. Id. Then, the constitutional import
of those factual determinations should be determined as a matter of law. Id.

F.3d 837, 843 (9th Cir. 2017); see Barone, 902 F.3d at 1098–99. Consequently, formal job descriptions are not dispositive when determining, for First Amendment purposes, the scope of a public employee's duties. Garcetti, 547 U.S. at 424–25; Barone, 902 F.3d at 1099.

Usually, when a public employee makes comments as part of their official functions, the employee is not speaking as a private citizen for First Amendment purposes. See Garcetti, 547 U.S. at 421; Greisen, 925 F.3d at 1111. Speech is made in a plaintiff's capacity as a private citizen if the plaintiff had no official duty to make the statements at issue, or if the speech was not an extension of tasks the employee was paid to perform. Garcetti, 547 U.S. at 421; Moser, 984 F.3d at 905; Greisen, 925 F.3d at 1111. For example, drafting a memorandum, writing a report, or advising a supervisor might be indicative of the nature of the speech if an employee was paid for that function. E.g., Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1071 (2012). Still, the critical question is whether the relevant speech ordinarily falls with the scope of an employee's duties, not merely whether it concerns the employee's duties. Lane, 573 U.S. at 240; Moonin v. Tice, 868 F.3d 853, 862 (9th Cir. 2017). The "mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." Lane, 573 U.S. at 240; Moonin, 868 F.3d at 862.

As to the first element, the Court disagrees with the implication that Plaintiff's speech did not encompass concern beyond his private interests. Defendants passingly indicate that dissatisfaction with one's employment situation is not a matter of public concern. ECF No. 48-1 at 9–10. That much the Court agrees with. Speech animated by unhappiness with one's employment is, at least, indicative that speech did not rise to a level of public concern. See Desrochers, 572 F.3d at 713–17. But Defendants make too much of Plaintiff's employment-related comments.

Defendants focus heavily on Plaintiff's allegations of "retaliatory administrative and employment practices," "[interference] with Plaintiff's contract," and "retaliation against [Plaintiff] for complaints [that the Board was] violating his employment contract, and/or the HFPD bylaws." Id. at 10. Defendants are correct that Plaintiff's complaint contains numerous references to Defendants' actions against Plaintiff as Administrator and in violation of his contract, as well as to Plaintiff's concerns as an HFPD official. See, e.g., ECF No. 47 at 6–15. But Defendants isolate

Plaintiff's allegations on his employment and contract and excessively insulate them from his allegations concerning retaliation for complaints of misconduct and suppression of his rights in a private capacity. Indeed, in some of the statements Defendants cite, Plaintiff also claims Defendants interfered with, and retaliated against him for exercising, his rights to challenge ongoing violations and misconduct in his individual *and* official capacity. See, e.g., Id. at 14 & n.35.

To the extent that Defendants argue that Plaintiff's complaint definitively indicates Plaintiff's focus was only on Defendants' alleged retaliation against him for exercising his duties as a public official, they are wrong. Plaintiff may well have been angry about his employment situation when Defendants allegedly disregarded reports of and countermanded his attempts to address misconduct that he made in his official capacity. See, e.g., id. at 6–9, 9 n.26; 14–15, 15 n.36. But just as often, Plaintiff takes issue with Defendants' misconduct as an independent and private citizen, voter, and property owner. He says so—repeatedly. See, e.g., id. at 5–10, 8 n.24; 14–15, 15 n.36. Thus, although Plaintiff's motivation is relevant to the determination of public concern, it is neither as dispositive nor as clear cut as Defendants contend. Even if Plaintiff's speech was, in contextual part, motivated by alleged interference with his employment and authority as Administrator/General Manager, he also forwards concerns as a private citizen. Interpreting Plaintiff's complaint liberally and taking his assertions as true, those allegations are sufficient.

In any event, seeking to reveal government misconduct and breach of public trust is quintessentially a matter of public concern. See Lane, 573 U.S. at 241; Connick, 461 U.S. at 148; Dahlia, 735 F.3d at 1067–68 (citing cases indicating government wrongdoing is a public concern); Desrochers, 572 F.3d at 715; see also Alpha Energy, 381 F.3d at 925–26. Plaintiff's entire complaint hinges on the alleged malfeasance that precipitated the alleged retaliation. It is that wrongdoing that he allegedly spoke out against, in both his individual and personal capacities. The Court concludes that Plaintiff spoke on a matter of public concern.[10]

---

[10] The Court notes that an employee's chosen audience for the speech in is relevant to the public concern analysis. See, e.g., Greisen, 925 F.3d at 1109. Speech dealing with internal disputes and grievances is generally not of public concern. Id. Although Plaintiff aimed a substantial portion of his speech at HFPD officials, he also discussed HFPD misconduct with other citizens and law enforcement. E.g., ECF No. 47 at 3 & n.10, 5–6, 14–15 & nn. 34 & 36, 19. Considering the relevance of the *point* of speech to the public concern question, the Court finds it persuasive that Plaintiff alleges that he discussed alleged wrongdoing with other citizens and law enforcement. See Greisen, 925 F.3d at 1109.

Next, insofar as Defendants argue that Plaintiff's complaint establishes that Plaintiff spoke only as an HFPD official, they are again wrong. Plaintiff alleges otherwise in his complaint. The Court must take those allegations as true. Even if some of Plaintiff's speech might fall within his prior official duties as HFPD Administrator/General Manager, much of his speech potentially does not. Plaintiff says as much. See ECF No. 47 at 15 at n.36. Plaintiff notes that he had a duty to HFPD and to the public good, which he fulfilled by reviewing citizen complaints, forwarding complaints to the Board, and attempting to place issues of misconduct on meeting agendas. Id. at 8, 15 n.36. But Plaintiff explicitly asserts that his various notices and complaints to HFPD concerning constitutional, bylaw, state law, *and* contractual violations (some against him personally) were not part of his official duties. Id. He also alleges that his reports to law enforcement were not part of his duties. Id. at 5, 15 n.36. Those actions were personal efforts on his part. See id. Plaintiff's allegation concerning the scope of his official duties corresponds to the rest of his complaint. He alleges internal, professional attempts to resolve misconduct, but also that he complained of and attempted to halt wrongdoing at HFPD independently and privately. See, e.g., id. at 3 & n.10, 5–6, 8, 10, 14–15 & nn. 34 & 36, 19.

The Ninth Circuit has observed that whether an employee confined their speech to the "chain of command" is a relevant (though not dispositive) consideration. Dahlia, 735 F.3d at 1074. It is less likely that an employee is acting only pursuant to official duties if the employee takes their concerns outside the workplace in addition to reporting them up the chain. Id. Similarly, if a public employee does something like follow standard employer procedure and prepares a routine report about some transgression, that kind of action is usually within official job duties. See Id. at 1074–75 (citing Garcetti, 547 U.S. at 421, which noted that district attorney's preparation of a case disposition memo was what the attorney "was employed to do"). On the other hand, though, if an employee raises concerns about systemic abuses, it is improbable that those complaints fall within the scope of the duties of a typical public employee unless the employee's regular duties involve investigating misconduct. Id. The point here is that, as described above, although it appears Plaintiff repeatedly attempted to act within HFPD itself, such as by reporting directly to the Board, he also appears to have discussed Defendants' alleged wrongdoing with other citizens and law

14

enforcement. See, e.g., ECF No. 47 at 3 & n.10, 5–6, 8, 10, 14–15 & nn. 34 & 36, 19. And it appears that Plaintiff's protests, other than where he has otherwise identified (e.g., forwarding complaints, placing some items on the agenda), were not routine functions of his position as Administrator/General Manager. E.g., id. at 6, 8, 10, 13–15 & nn. 34 & 36, 19. Viewing Plaintiff's complaint liberally and drawing reasonable inferences in his favor, the Court concludes that Plaintiff plausibly asserts he acted as a private citizen.[11] His complaint satisfies the second factor.

Lastly, the Court addresses Defendants' arguments that Plaintiff's assertions do not show they retaliated against him in a way violative of the First Amendment. The Court disagrees.

Defendants first rely on Blair v. Bethel. Blair served for years as a member of a school board, including as vice president. Blair, 608 F.3d at 542. The board selected its own officers. Id. During his tenure, he regularly and solitarily criticized the district superintendent, finally openly doing so to the media. Id. The other board members removed Blair as vice president in a valid vote that did not remove him from office. Id. at 543–44. The Ninth Circuit reasoned that Blair was not a "prototypical" plaintiff. Id. at 544. The Court identified prototypical plaintiffs as people like government workers who lose their job after speaking out against a government entity (e.g., a teacher dismissed for criticizing a school board) or citizens targeted by law enforcement because of their speech. Id. Blair, on the other hand, was removed only from a titular position by those who installed him, and he retained all the rights of elected office. Id. The "harm" was *de minimis*, which does not constitute a First Amendment violation. Id. For retaliatory action to offend the First Amendment, it must be of the kind that would prevent someone from speaking out. Id. That was not the circumstance in Blair's case. Id. at 544–45. The Court further advised that it expected some level of "retaliation" in the political arena, such as politicians voting against politicians who do not share their views. Id. To accept that the other board members violated the First Amendment in voting against Blair would be to hold the First Amendment prohibits them

---

[11] That Plaintiff may have learned of the misconduct by virtue of his public appoint does not mutate his expression of his misgivings into employee speech. Lane, 573 U.S. at 240; Moonin, 868 F.3d at 862. Additionally, as the Ninth Circuit has concluded, the fact that a public employee's superiors threatened or intimidated the employee for speaking out is itself evidence that some expression was not, practically speaking, within an employee's job duties contrary to what a formal job description might indicate. Dahlia, 735 F.3d at 1075. That Defendants allegedly retaliated against Plaintiff for revealing widespread abuses is indicative of the sufficiently private nature of his expression. See id.

from voting against opposing politicians. Id. There was little difference between what the members did and what the electorate could otherwise do. Id. at 545. And the Court also concluded that all members had a First Amendment interest in voting their conscience. Id. at 545–46. The Court concluded that the board had not violated the First Amendment.

Defendants' reliance on Blair is misplaced. Plaintiff's complaint facially posits that he was more than a mere causality of routine political acrobatics. Plaintiff essentially claims that Defendants froze him out officially and privately. See, e.g., ECF No. 47 at 7–10, 14–15. That is more the "minor indignity" at the center of Blair. Blair lost only a titular position and retained his core First Amendment right to vote his conscience. Blair, 608 F.3d at 544–46. Plaintiff alleges that Defendants violated his contract,[12] obstructed his functioning as Administrator, and inhibited his participatory rights as a private citizen. See, e.g., ECF No. 47 at 7–10, 14–15. Plaintiff allegedly could not carry out his duties or participate in HFPD meetings. See id.

The context here is much different than Blair. And it is well-established that to be an adverse employment action, a government retaliatory act need not be severe or of a particular kind. Dahlia, 735 F.3d at 1078. An adverse employment action is an act that is reasonably likely to prevent employees from engaging in constitutionally protected expression. See id.; see also Greisen, 925 F.3d 1113. The goal is to prevent government employers from acting to chill First Amendment rights. Dahlia, 735 F.3d at 1078. Defendants' alleged isolation of Plaintiff from HFDP and preclusion of his functioning as Administrator is, at this stage, sufficient to qualify was an adverse employment action. Plaintiff's complaint satisfied the third element of a retaliation claim. See, e.g., Coszalter v. City of Salem, 320 F.3d 968, 975 (9th Cir. 2003).

Defendants' position that Plaintiff fails to state facts supporting the inference that his expression was the substantial or motivating factor in adverse action against him is also weak. See ECF No. 48-1 at 12. Defendants rest their argument on a lack of specific dates. Id. They believe it is insufficient that Plaintiff only alleges that adverse actions followed his speech. Id.

There are a few ways that Plaintiff can show that retaliation was the substantial or

---

[12] The Court recognizes that Defendants alleged Plaintiff's was an unpaid position, but for the purposes of this motion to dismiss, that does not alter the Court's analysis, especially in the light of Plaintiff's repeated allegations that Defendants violated his contract. See EF No. 48-1 at 12.

1    motivating factor behind adverse employment actions. <u>E.g.</u>, <u>Howard v. City of Coos Bay</u>, 871 F.3d

2    1032, 1045 (9th Cir. 2017); <u>Anthoine v. N. Cent. Counties Consortium</u>, 605 F.3d 740, 750 (9th Cir.

3    2010). Plaintiff can show (1) that the speech and adverse action were proximate in time, giving rise

4    to the reasonable inference that the action was retaliatory; (2) that the employer expressed

5    opposition to the relevant expression; or (3) that the proffered explanations for the adverse action

6    were false and pretextual. <u>Anthoine</u>, 605 F.3d at 750. Here, although Plaintiff does not always give

7    specific dates, the clear allegation is that Defendants' alleged actions occurred shortly (if not

8    immediately) after Plaintiff began complaining of Defendants' apparent wrongdoing. Taking those

9    allegations as true and drawing reasonable inferences in Plaintiff's favor, Plaintiff adequately

10   alleges a temporal connection between his expression and Defendants' adverse actions.

11          The undersigned United States Magistrate judge, considering the above,

12   recommends that the District Court deny the motion to dismiss as to count one.

13          **ii.    Count II – Due Process and Equal Protection:**

14          As with much of Plaintiff's complaint, the nature of his due process and equal

15   protections claims is hazy. ECF No. 47 16–18. His claims are imprecise.[13] <u>See</u> <u>id.</u> In any event,

16   Plaintiff claims that Defendants Morin, Kirk-Buckley, and Lee Buckley censored him and nullified

17   his position as Administrator/General Manager. <u>Id.</u> at 16. In so doing, Defendants allegedly violated

18   California and constitutional law governing notice and due process, including by denying him a

19   <u>Skelly</u> hearing. <u>Id.</u> Defendants supposedly failed to give Plaintiff notice or process related to

20   "adverse actions" they took against him. <u>Id.</u> 16–17. Plaintiff claims a protected property interest in

21   his employment with HFPD.[14] <u>Id.</u> at 17. He also asserts that each illegal meeting Defendants held

22   violated his First Amendment rights to free speech and association. <u>Id.</u> at 18. Finally, without

23   expansion, Plaintiff alleges that Defendants denied him equal protection of the law. <u>Id.</u> at 16–18.

24          Defendants contend that Plaintiff has not amended count two to state facts

25

26   ----

     [13] Throughout his submissions, Plaintiff frequently crams an excessive number of clauses and parentheticals into single sentences. The Court is not here to critique Plaintiff's grammar, but the Court nevertheless notes the difficulty of following Plaintiff's allegations. It is often an uphill battle to determine which allegations are interconnected and which are distinct. The Court has done its best to accurately interpret Plaintiff's pleadings.

27

28   [14] Plaintiff also claims that his due process and equal protection rights were further impeded by Defendants' violation of nine California statutes. <u>See</u> ECF No. 47 at 18. He does not allege how the statutory violations are unconstitutional.

establishing deprivation of a property or liberty interest as necessary to articulate a due process claim. ECF No. 48-1 at 13. The Court, in its previous findings and recommendations, concluded that Plaintiff had not made out a due process claim. ECF No. 41 at 8–9. Plaintiff had not established a property interest in his position, or a claim related to reduced marketability of his property. Id.

Here, Plaintiff now replies that Defendants disregard that his due process claims concern "granted rights," the right to vote, and notice and process related to his employment. ECF No. 54 at 7. Plaintiff appears to believe that Defendants' alleged violations of HFPD bylaws and resolutions, alongside his contract, violated his due process rights. Id.

Although Plaintiff now claims a property interest in his employment, Plaintiff's allegations still do not rise above the conclusory level. To Plaintiff's credit, he alleges that Defendants invalidated his position by shutting him out of meetings and impeding his duties. E.g., ECF No. 47 at 16. But Plaintiff does not identify the source of his property interest—though, ostensibly, he relies on his contract. See ECF Nos. 47 at 16; 54 at 7 n.12; see Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005); Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); Nozzi v. Hous. Auth. of City of Los Angeles, 806 F.3d 1178, 1190 (9th Cir. 2015); Jadwin v. County of Kern, 610 F. Supp. 2d 1129, 1187–88 (E.D. Cal. 2009). Formulaically reciting the elements governing property interests does not state a claim. See Twombly, 550 U.S. at 555.

Moreover, on opposition, Plaintiff further frustrates his due process claims because he asserts the claim includes denials of granted rights, the right to vote, _in addition to_ unconstitutional denial of a property interest in his employment. ECF No. 54 at 7. It is not altogether clear for what purpose Plaintiff brings this due process claim. Defendants cannot reasonably be expected to respond to Plaintiff's due process claims when Plaintiff is not sufficiently clear.

Finally, Plaintiff does not make out an equal protection claim. The Fourteenth Amendment's Equal Protection Clause commands that no State "deny to any person within its jurisdiction the equal protection of the laws," which effectively directs that all similarly situated individuals must be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Sampson v. County of Los Angeles, 974 F.3d 1012, 1022 (9th Cir. 2020). Most generally, to state an equal protection claim under § 1983, plaintiffs must show that a defendant acted with

1  intent or purpose to discriminate against the plaintiff based upon the plaintiff's membership in a

2  protected class. Sampson, 974 F.3d at 1022; Hartmann v. Cal. Dep't Corrs. & Rehab., 707 F.3d

3  1114, 1123 (9th Cir. 2013). The United States Supreme Court has also recognized equal protection

4  claims brought by plaintiffs as a "class of one," where plaintiffs allege that they have been treated

5  differently from others similarly situated and without rational basis. E.g., Engquist v. Or. Dep't of

6  Agric., 553 U.S. 591, 601 (2008); N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir.

7  2008); Chappell v. Bess, No. 2:01-cv-01979 KJN P, 2012 WL 3276984, at *19 (E.D. Cal. Aug. 9,

8  2012). Plaintiff makes no such allegations other than the bald accusation that Defendants denied

9  him equal protection. E.g., ECF No. 47 at 7, 16–18, 20.

10        The undersigned recommends that the District Court grant the motion to dismiss on

11  count two. Because, however, Plaintiff may have a protected property interest as a public employee

12  and may possibly state sufficient facts to state a claim, the undersigned recommends dismissal be

13  with leave to amend.

14        **iii.    Count III – Right to Petition, Right to Vote, Fourth Amendment:**

15        In his third count, Plaintiff essentially restates First Amendment speech and petition

16  claims that Defendants substantively do not address. ECF Nos. 47 at 19–20; 48-1 at 13–15.

17  Defendants move to dismiss Plaintiff's claim that Defendants violated his right to vote.[15] ECF No.

18  48-1 at 13–15. Plaintiff charges that Defendants (namely, members of HFPD's board) wrongfully

19  revoked bylaws without voter approval with the intent to deprive Plaintiff and others of the right to

20  vote. ECF No. 47 at 19. As stated, Plaintiff alleges the bylaws contain voter approval requirements.

21  Id. at 5–9, 19.

22        Defendants argue that Plaintiff has not established a voting-related violation. ECF

23  No. 48-1 at 13–14. They posit that HFPD's bylaws do not implicate any federal right, and that

24  courts have not recognized a substantive due process right to vote under the Fourteenth

---

[15] Out of the of allegations Plaintiff includes in count three, Defendants pluck Plaintiff's statement that Defendants have "usurped" office and excluded lawful candidates. ECF No. 48-1 at 13–14. They argue that Plaintiff has no fundamental right to run for office or to have a specific person appear on a ballot. Id. (citing Lindsay v. Bowen, 750 F.3d 1061, 1063–64 (9th Cir. 2014)). But Plaintiff's concern seems to be more about Defendants acting without voter approval, rather than exclusion from office. He says so in opposition. ECF No. 54 at 7–8. Because Plaintiff's claim is about voting and not candidacy, the Court does not address that aspect of Defendants' motion.

1   Amendment. Id. at (citing Jennerjahn v. City of Los Angeles, No. 2:15-cv-263-JFW (GJS), 2016

2   WL 1358950, at *13 (C.D. Cal. Mar. 15, 2016)). Plaintiff does not allege a cognizable claim, such

3   as one for denial of the right to vote on an equal basis with other voters. Id. at 14. Thus, Defendants

4   suggest that Plaintiff cannot succeed on any § 1983 claim because, to do so, he must allege a right

5   unambiguously created by the Constitution or federal law. Id. (citing Crowley v. Nevada, 678 F.3d

6   730, 734 (9th Cir. 2012)).

7           The Court does not address Defendants' position that the Constitution does not

8   generally secure the right to vote. Defendants' broader argument, however, is well-taken. Other

9   than the conclusory claim that Defendants violated his "right to vote" by rescinding bylaws,

10  Plaintiff does not indicate how that action generates an issue of constitutional dimension. See ECF

11  No. 47 at 2 n.8, 7–9, 8 n.25, 19. That is to say, he does not clearly assert how rescission of the

12  bylaws is a constitutional violation, rather than merely a bylaw violation. Although inferentially a

13  due process claim, Plaintiff does not actually identify the constitutional provision allegedly violated

14  by Defendants' disregard of the bylaws' public vote requirements. See id. at 19.

15          Plaintiff's opposition to Defendants' motion affords him no help. He raises a

16  multitude of distinct subjects that do little to clarify his right to vote claim. Plaintiff contends that,

17  in rescinding bylaws without approval of the electorate, Defendants violated his due process rights

18  regarding notice and opportunity to heard. ECF No. 54 at 7 (citing Goldberg v. Kelly, 397 U.S. 254

19  (1970)). Then he spends three pages raising various voting-related concerns that his complaint does

20  not clearly implicate. Id. at 8–10. Indeed, Plaintiff hypothesizes for the first time that Defendants

21  ignored the Help America Vote Act.[16] Id. at 8. And then Plaintiff variously raises the right to vote

22  as fundamental, vote dilution, the right to have his vote counted, election administration, and

23  disenfranchisement. Id. at 8–9. He also contends that Defendants violated the Due Process Clause

24  because it was "fundamentally unfair" not to call a required election. Id. at 9. And, again for the

25  first time, Plaintiff also contends that Defendants have "impliedly" violated the Civil Rights Act of

26  1964. Id. at 10.

27  _____

28  [16] Plaintiff declares that he "strongly" implies an additional cause of action under the Help America Vote Act in his
    complaint. He does not.

1    Undoubtedly, the right to vote is fundamental. <u>Short v. Brown</u>, 893 F.3d 671, 676

2  (2018). But just the same as in his complaint, none of Plaintiff's assertions are anything more than

3  conclusory. Plaintiff's meandering opposition does not bring any clarity to the grounds on which

4  Plaintiff rests his right to vote claim. <u>Id.</u> at 8–10. That method of pleading does not give Defendants

5  the requisite notice of what Plaintiff's claims are and the grounds upon which they rest.

6    Plaintiff, as mentioned earlier, also alleges that Defendants "seized" his rights

7  without due process, thus violating the Fourth Amendment. ECF No. 47 at 19. The Fourth

8  Amendment safeguards the "right of the people to be secure in their persons, houses, papers, and

9  effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because Plaintiff is

10  not alleging something like an unreasonable search and seizure, the Fourth Amendment is irrelevant

11  here. <u>See, e.g.</u>, <u>Carpenter v. United States</u>, 138 S. Ct. 2206, 2213–14 (2018) (discussing the Fourth

12  Amendment's purpose).

13    The undersigned United States Magistrate Judge recommends granting the motion

14  to dismiss as to Plaintiff's voting-related and Fourth Amendment claims. Given the fundamental

15  nature of the right to vote, however, the undersigned recommends leave to amend on that claim.

16  **iv.    Count IV – Due Process, Equal Protection, Right to Free Speech and Petition**

17  **as to Morin and Kirk-Buckley and HFPD:**

18    Addressing Plaintiff's fourth federal claim, Defendants repeat their argument that

19  Plaintiff has not stated a First Amendment retaliation claim. ECF No. 48-1 at 15. The Court has

20  already found that Plaintiff has sufficiently made out a retaliation claim and thus recommends the

21  motion to dismiss be denied in that regard.

22    Defendants also argue that Plaintiff has not pled sufficient facts to state due process

23  or equal protection claims. The Court agrees. Other than cursorily repeating that Defendants denied

24  him notice and process and impeded his duties, Plaintiff does not plead anything making out a due

25  process or equal protection claim under count two. The Court concludes that Plaintiff's claims are

26  defective for the reasons discussed under count one. The undersigned recommends the motion to

27  dismiss be granted to that extent, again with leave to amend.

28  / / /

1    **C.  Plaintiff's State Law Claims:**

2        **i.    Count I – Violation of HFPD Bylaws:**

3            Plaintiff alleges that Defendants failed to adhere to HFPD's bylaws. ECF No. 47 at

4    22. Defendants allegedly acted without voter approval and to HFPD's general detriment. See id.

5    Plaintiff believes that Defendants are thus liable for damages. See id. He asserts that he brings

6    action under HFPD resolutions 15-004 and 15-008, which he attaches to the complaint. Id. at 22,

7    35–40. Resolution 15-004 amended HFPD's bylaws to provide a private right of action for HFPD

8    residents to enforce the bylaws. Id. at 36–37. Resolution 15-008 regulates HFPD's property and

9    also provides a right of action to enforce the bylaw. Id. at 38–39. Plaintiff also references

10   Government Code § 815.6 in a footnote. Id. at 22 n. 43. That section imposes liability on public

11   entities for failing to perform mandatory duties. Cal. Govt. Code § 815.6.

12           Defendants theorize that there is no basis for claiming HFPD's bylaws make

13   Defendants personally liable for damages. ECF No. 48-1 at 16. Plaintiff's claim, in their view, rests

14   on § 815.6, but that section only applies when the claimed damages are of the kind a mandatory

15   duty is designed to prevent. Id. The damages Plaintiff claims (e.g., psychological harm and loss of

16   enjoyment of property) are not the damages contemplated by any mandatory duty that the cited

17   bylaws impose. Id. Those bylaws govern things like HFPD's equipment. See id.

18           Plaintiff responds that he does not bring his claim under § 815.6, but the bylaws

19   amended under resolutions 15-004 and 15-008. ECF No. 54 at 12. Plaintiff's point is well-taken.

20   Whatever the merits of Defendants' arguments under § 815.6, that section is not the basis of

21   Plaintiff's action.[17] See id. And considering the resolutions, on which the complaint relies, they

22   appear to provide the action Plaintiff claims they do.

23           The Court expresses no opinion on the viability of an action under the bylaws. But

24   because Defendants did not brief that issue, the Court will not address it. The undersigned

25

26   _____

     [17] It is not clear Government Code § 815.6 is even applicable. As stated, § 815.6 imposes mandatory duties on public
     entities. Cal. Govt. Code § 815.6. Specifically, if a public entity is under a mandatory duty imposed by an "enactment"
27   designed to protect against an injury, the entity is liable for failure to discharge the duty. Id. An "enactment" is a
     "constitutional provision, statute, charter provision, ordinance, or regulation." Cal. Govt Code § 810.6. A regulation,
     in pertinent part, is a "rule, regulation, order or standard, having the force of law, adopted . . . as a regulation by an
28   agency of the state pursuant to the Administrative Procedure Act." Cal. Govt. Code § 811.6. The law here is a bylaw.

1    recommends that the District Court deny the motion to dismiss on Plaintiff's first state law count.

2            **ii.    Count II – Negligence/Willful Negligence:**

3            Defendants argue that Plaintiff fails to establish a claim for negligence because his

4    negligence complaints do not satisfy Rule 8, and because he has not established negligence under

5    any theory. ECF No. 48-1 at 16–19. Defendants contend that Plaintiff fails to satisfy Rule 8 because

6    he does not identify which of Defendants' actions are negligent, merely incorporating all of his

7    allegations and vaguely alluding to negligent "acts" and "wanton indifference" to duty." Id. at 18.

8    Plaintiff responds that his assertions give rise to the inference of negligence because HFPD's failure

9    to follow the law (including its own bylaws) is inherently negligent. ECF No. 54 at 12–13.

10           A negligence action under California law consists of four elements: (1) duty; (2)

11   breach; (3) causation; (4) and damages. See Mayall v. USA Water Polo, Inc., 909 F.3d 1055, 1060

12   (9th Cir. 2018); A.B. Concrete Coating, Inc. v. Wells Fargo Bank Nat'l Assoc., 491 F. Supp. 3d

13   727, 738 (E.D. Cal. 2020); Peredia v. HR Mobile Servs., Inc., 25 Cal. App. 5th 680, 687 (Cal. Ct.

14   App. 2018). In other words, plaintiffs in negligence suits must establish a duty to use care, breach

15   of that duty, and the breach's proximate causation of a resulting injury. Vasilenko v. Grace Family

16   Church, 3 Cal. 5th 1077, 1083 (2017).

17           Defendants' discrete point that Plaintiff has incorporated each of the proceeding

18   allegations in his complaint into his negligence cause of action is not convincing in itself

19   Incorporating preceding allegations into a cause of action is, in the Court's experience, a common

20   pleading practice. But when placed alongside the numerosity of Plaintiff's claims and particularly

21   general nature of Plaintiff's negligence count, it is persuasive.

22           Plaintiff broadly claims that Defendants Morin, Kirk-Buckley, Lee Buckley, and

23   Hott acted "negligently, recklessly, wantonly, and/or willfully to" violate the laws mentioned in

24   Plaintiff's complaint and to subject him to injuries like anxiety, distress, and humiliation. See ECF

25   No. 47 at 23. But other than the vague inference that Plaintiff believes Defendants violated a general

26   duty to follow the law, he does not concretely allege any duty or standard of care. See id. And while

27   Plaintiff contends that Defendants were negligent in "violat[ing] the relevant laws" in his

28   complaint, Plaintiff cites dozens of statutes (across dozens of pages and footnotes) in the complaint.

1    See id. at 5–13. In some places, Plaintiff merely alleges Defendants generally violated statutory

2    law, such as the California Government Code, state constitution, and other laws. See id.

3           Even construing Plaintiff's complaint liberally, the conclusory allegation that

4    Defendants negligently violated "relevant laws" does not satisfy Rule 8. See, e.g., Twombly, 550

5    U.S. at 555 & n.3; Benavidez, 993 F.3d at 1145. To withstand a motion to dismiss, a complaint

6    must contain sufficient factual matter, which the Court takes as true, to state a claim for relief that

7    is facially plausible. Iqbal, 556 U.S. at 678; Lacey v. Maricopa County, 693 F.3d 896, 911 (9th Cir.

8    2012). Rule 8 requires a short, plain statement of claim in order to give notice to defendants of what

9    the claim is and the grounds upon which it rests. Twombly, 550 U.S. at 555. Blanket assertions of

10    entitlement to relief or pleading of facts *merely consistent with* liability are insufficient. See

11    Twombly, 550 U.S. at 555 n.13, 557; see also Lacey, 693 F.3d at 911. For example, Plaintiff's

12    negligence claim, incorporating dozens of laws without at least some identification of a claimed

13    duty or governing standard of care, does not give Defendants fair notice of the grounds on which

14    the claim rests. A sweeping contention that Defendants negligently violated laws is unsatisfactory

15    and not a plain statement.[18] Plaintiff may not rely on conclusory allegations of law and unwarranted

16    inferences. Benavidez, 637 F.3d at 1145. As currently plead, Plaintiff's incorporation of numerous

17    laws gives rise to only unwarranted inferences.

18           The undersigned recommends that the District Court grant Defendants' motion to

19    dismiss with leave to amend as to Plaintiff's negligence claim.

20        **iii.**    **Count III – Violations of Government Code Sections 1090 and 87100:**

21           Plaintiff contends that the Board Defendants, Morin and Kirk-Buckley, engaged in

22    self-dealing by creating illegal contracts, diverting funds for themselves, and generally acted for

23    their own benefit. ECF No. 47 at 24. He asserts they violated California Government Code sections

24    1090 and 87100. Id. Defendants move to dismiss because related § 1092 does not create a private

25    right of action, and that Plaintiff has not met the requirements for bringing an action under § 87100

26    because he did not first file with the civil prosecutor the necessary process to commence a civil

27

28    [18] Plaintiff's negligence claim is additionally murky because, in the same sentence in which he alleges negligence, he simultaneously claims Defendants acted purposely and willfully. ECF No. 47 at 23.

1    action. ECF No. 48-1 at 19–20. Plaintiff responds that California law permits him to maintain an

2    action, and that the procedural requirements Defendants cite are inapplicable in federal court. ECF

3    No. 54 at 13.

4              Section 87100 prohibits government officials from using their official position to

5    influence decisions in which they have a financial interest. Cal. Govt. Code § 87100. The pre-suit

6    requirement that Defendants cite falls under Government Code § 91007, which requires litigants to

7    file a written request with the civil prosecutor asking the prosecutor to commence an action.[19] Cal.

8    Govt. Code § 91007(a). Section 91007 applies to civil actions brought under § 91005, which in turn

9    authorizes civil actions against officials who violate § 87100. Id.; § 91005(b). If the civil prosecutor

10   declines to file action, then the requesting individual may sue. § 91007(a)(2). Plaintiff is incorrect

11   that he is not beholden to that requirement. There is no indication that he followed it.

12             As for § 1090, that statute prohibits government officials from maintaining a

13   financial interest in any contract they make in their official capacity, or in any contract made by the

14   body of which they are a member. Cal. Govt. Code § 1090(a). Relevantly, § 1092 provides, in

15   pertinent part, that contracts "made in violation of any of the provisions of Section 1090 may be

16   avoided at the instance of any party except the officer interested therein." § 1092(a). Other than his

17   employment contract with HFPD, Plaintiff does not allege any contract to which he is a party. To

18   the extent he alleges Defendants entered into contracts in which they improperly maintained a

19   financial interest, Plaintiff has no general right of action, contrary to his suggestion on opposition.

20   "Any party" does not include nonparties to a contract, like Plaintiff. The Supreme Court of

21   California expressly reached that conclusion in San Diegans for Open Gov't v. Pub. Facilities Fin.

22   Auth. of City of San Diego, 8 Cal. 5th 733 (2019). The Court explicitly stated that § 1092 does not

23   provide a private right of actions for nonparties. Id. at 739–43. The case Plaintiff relies on for the

24   opposite conclusion was the lower court decision that the Supreme Court reversed on appeal. Id. at

25   739–43, 747; ECF No. 54 at 13.

26             The undersigned accordingly recommends that the District Court grant the motion

27

28   ------

[19] The "civil prosecutor" is variously the Attorney General of California, district attorney, or city attorney depending on the circumstances. See Cal. Govt. Code §§ 91001 to 91001.5.

1  to dismiss without leave to amend as to count three of Plaintiff's state law claims.[20]

2      **iv.**    **Count IV – Employment Retaliation/Termination in Violation of Public Policy:**

3      Plaintiff alleges Morin, Kirk-Buckley, and Lee Buckley denied him notice and

4  opportunity to be heard regarding allegations and charges related to his position as

5  Administrator/General Manager, including by denying the opportunity for a Skelly hearing. ECF

6  No. 47 at 25. He contends that they retaliated against him and conspired to hinder his employment.

7  Id. Plaintiff believes Defendants conspired to deny him notice and a chance to be heard regarding

8  his *de facto* termination. Id.

9      Defendants respond that Plaintiff failed to present his claim to the Labor

10  Commissioner as required under California's labor code. ECF No. 48-1 at 20. Plaintiff, on

11  opposition, replies that did not bring his claim under the labor code; rather, he brings a common

12  law termination against public policy claim.[21] ECF No. 54 at 13–14. Defendants reply that Plaintiff

13  was nevertheless required to exhaust administrative remedies, and that to the extent Plaintiff sues

14  Defendants in their official capacity, he was required to comply with the claims presentation

15  requirements under the California Tort Claims Act. ECF No. 55 at 5. Defendants apparently mean

16  to argue Plaintiff was still required to exhaust any internal grievance procedures. Id. (citing Terris

17  v. County of Santa Barbara, 20 Cal. App. 5th 551, 556–58 (Cal Ct. App. 2018)).

18      Wrongful termination against public policy is a common law cause of action in

19  California. See Ferretti v. Pfizer, Inc., 855 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012); Miklosy v.

20  Regents of Univ. of Cal., 44 Cal. 4th 876, 898 (2008); Nosal-Tabor v. Sharp Chula Vista Med. Ctr.,

---

[20] On opposition, Plaintiff cites Cal. Govt. Code § 91003, which in some circumstances permits injunctive relief to compel compliance with provisions governing public officials (e.g., § 87100). Cal. Govt. Code § 91003(a); ECF No. 54 at 13. But that is not the claim Plaintiff brings. See ECF No. 47 at 24.

[21] Throughout his submissions, Plaintiff includes dozens of footnotes containing asides of varying relevance. See generally ECF Nos. 47, 54. On opposition, in footnotes, he sometimes tries to state that his complaint makes out other claims other than those clearly pled in the complaint. See, e.g., ECF No. 54 at 13 n.22. For example, immediately after stating that he only brings his state retaliation claim under common law, he drops a footnote to argue he brings a valid claim under the labor code. Id. Plaintiff cannot have it both ways. His complaint is meandering, disjointed, and prolix enough as it is, with Plaintiff reasserting and repeating claims across multiple counts. The Court recognizes the relatedness of the employment claim, but Plaintiff's opposition is not an opportunity to add new claims. See Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Cearley v. Wells Fargo Bank, No. 2:15-cv-353-TLN-EFB PS, 2016 WL 446609, at *4 n.4 (E.D. Cal. Jan. 8, 2016); see also Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001) (stating that, as a general rule, courts cannot consider beyond the pleadings when ruling on as 12(b)(6) motion."). If Plaintiff wants to raise additional claims (namely, claims that he expressly says he does *not* raise) then he must do so in an amended complaint. The Court disregards any attempt to add claims.

239 Cal. App. 4th 1224, 1234–35 (Cal. Ct. App. 2015). There are four elements to a claim for wrongful termination in violation of public policy: (1) the defendant employed the plaintiff, (2) the defendant terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the harmed the plaintiff. Robles v. Agreserves, Inc., 158 F. Supp. 3d 952, 1009 (E.D. Cal. 2016); Nosal-Tabor, 239 Cal. App. 4th at 1234–35. An actionable discharge must violate policy that is: (1) defined in either constitutional or statutory provisions; (2) "public" in the sense that it works to the benefit of the public rather than serving the interests of the individual; (3) well-established at the time of the discharge; and (4) "substantial" and "fundamental. Stevenson v. Superior Court, 16 Cal. 4th 880, 894–95 (1997); Prue v. Brady Co./San Diego, Inc., 242 Cal. App. 4th 1367, 1377–78 (Cal. Ct. App. 2015). Viewing Plaintiff's complaint in the light favorable to him, Plaintiff does appear to indicate (if not artfully) that he brings a claim for wrongful discharge in violation of public policy, rather than a statutory claim. ECF No. 47 at 25–26.

Defendants are incorrect that Plaintiff had to exhaust remedies before the Labor Commissioner. In 2014, the Legislature amended the labor code to remove the requirement of exhausting remedies before the Commissioner. See Couch v. Morgan Stanley & Co., Inc., No. 1:14–cv–0010 LJO JLT, 2014 WL 1577463, at *5–7 (E.D. Cal. Apr. 18, 2014); Stone v. Walgreen Co., No. 13–cv–2838–W(DHB), 2014 WL 1289470, at *3 (S.D. Cal. Mar. 26, 2014); Terris, 20 Cal. App. 5th at 556–58; Satyadi v. W. Contra Costa Healthcare Dist., 232 Cal. App. 4th 1022, 1027, 1029–33 (Cal. Ct. App. 2014). Even if the Legislature had not amended the labor code, unlike a statutory claim, it appears likely that common law claims for wrongful termination in violation of public policy were not subject to the statutory exhaustion requirements outlined in California's labor code. See Ferretti, 855 F. Supp. 2d at 1024; Stevenson, 16 Cal. 4th at 904–05; Wade v. Ports of Am. Mgmt Corp., 28 Cal. App. 4th 648, 655–56 (Cal. Ct. App. 2013); Palmer v. Regents of the Univ. of Cal., 107 Cal. App. 4th 899, 903–04 (Cal. Ct. App. 2003).

Insofar as Defendants argue that Plaintiff was nevertheless required to exhaust administrative remedies, their exact argument is unclear. See ECF No. 55 at 5. They argue that the amendments did not "[eliminate] the exhaustion requirement entirely." Id. Thus, in their view, Plaintiff's claim cannot proceed because he does not allege exhaustion of any remedies at all. Id.

But Defendants do not state what remedies Plaintiff had to exhaust. <u>Terris v. County of Santa Barbara</u>, on which Defendants rely, held that although the Legislature amended the labor code to eliminate the exhaustion requirements (namely, under §§ 98.7 and 244), and the amendments did not extinguish exhaustion requirement for employees subject to internal administrative processes. <u>Id.</u> 555–58. <u>Terris</u> addressed a county employee who brought statutory claims and who was subject to civil service rules. <u>See id.</u> at 533–34. The Court of Appeal held that the employee had to exhaust the county's internal administrative process. <u>Id.</u> at 555–58. Assuming that Defendants mean to argue that Plaintiff failed to exhaust internal remedies, Defendants neglect to assert any internal process to which Plaintiff was beholden. Their cursory citation of a case without any explanation is insufficient. The Court will not undertake an effort to dismiss Plaintiff's complaint on grounds the Defendants did not properly raise and declines to address to the issue any further absent a full argument from Defendants. The Court expresses no opinion on exhaustion of internal remedies.

Defendants' claims presentation argument in their reply to Plaintiff's opposition brief is also incorrect. Plaintiff affirmatively pleads that he complied with the notice provisions of the Government Claims Act.[22] ECF No. 47 at 4. At this stage, the Court assumes that is true.

The undersigned United States Magistrate Judge recommends denying the motion to dismiss on count four, the wrongful termination claim.

**v.    Count V – Free Speech Under the California Constitution:**

Plaintiff brings a stand-alone tort claim under article I, section 2 of the California Constitution. ECF No 47 at 26. Plaintiff asserts that HFPD, Morin, Kirk-Buckley, Lee Buckley, and Hott violated Plaintiff's right to free expression in committing the personal wrongs he alleges. <u>Id.</u> Defendants move to dismiss on grounds that the Supreme Court of California has held that California's constitution does not create a right of action for damages free speech violations under article I, section 2. ECF No. 48-1 at 21. On opposition, Plaintiff argues that the California Court of Appeal recognized an action for damages under Article I, Section 2 in a case that the Supreme Court has not reversed. ECF No. 54 at 15–16.

Defendants rely on <u>Katzberg v. Regents of Univ. of Cal.</u> 29 Cal. 4th 300 (2002) and

---

[22] The Court makes no other finding as to liability under the Government Claims Act.

1    Degrassi v. Cook, 29 Cal. 4th 333 (2002) to argue no private action for damages exists under article

2    I, section 2. ECF No. 48-1 at 21. Neither case overruled the Court of Appeal case that Plaintiff

3    hinges his argument on, Laguna Publ'g Co. v. Golden Rain Found., 131 Cal. App. 3d 816 (1982).

4    In Laguna, a two-to-one decision, the Court of Appeal recognized an action for damages to remedy

5    an asserted free speech and free press rights violation. Laguna, 131 Cal. App. 3d at 851–54; see

6    Degrassi, 29 Cal. 4th at 341. Though it did not overrule Laguna, Degrassi held that article I, section

7    2(a) does not generally afford a right to seek damages. Degrassi, 29 Cal. 4th at 342.

8               The holding in Degrassi, however, comes with an important qualification. Though

9    declining to recognize a general right, the Supreme Court stopped short of holding that no cause of

10   action for damages could ever exist under article I, section 2. Degrassi, 29 Cal. 4th at 342, 344

11   ("This does not mean that the free speech clause, in general, never will support an action for money

12   damages."). The Court largely refused to recognize a constitutional tort action to remedy the facts

13   alleged in *that* cases. Id. at 342–44.

14              As for Katzberg, there the Court found no action for damages under article I, section

15   7(a) of the California Constitution. Katzberg, 29 Cal. 4th at 328. The Court similarly determined

16   no action existed on the facts before it, but did not wholly foreclose the potential for one. Id.

17   Katzberg in particular disagreed with the methodology that the Laguna court used to find an action

18   under article I, section 2. Id. at 317–29, 328 n.30. Katzberg employed a different method for

19   determining whether damages are available under a given constitutional provision in a particular

20   action. See Katzberg, 29 Cal. 4th at 317–28; see also Coronado v. Cal. Highway Patrol, No. CV

21   11–03560 DMG (JCx), 2011 WL 13189885, at *4 (C.D. Cal. Aug. 16, 2011); Creighton v. City of

22   Livingston, 628 F. Supp. 2d 1199, 1217–18 (E.D. Cal. 2009). The Katzberg framework, broadly

23   described as follows, examines several factors. See Katzberg, 29 Cal. 4th at 317–29. First, courts

24   must ask whether there is evidence, in the relevant constitutional provision, of intent to authorize

25   or foreclose a damages action Id. at 317–24 If there is no evidence of intent to permit or preclude

26   a damages action, courts must undertake the constitutional tort analysis outlined in Bivens v. Six

27   Unknown Named Agents of. Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Katzberg, 29 Cal. 4th

28   at 317, 324–28. Courts consider the adequacy of existing remedies, the extent to which a

                                                    29

1    constitutional tort would alter established tort law, the nature of the provision and the significance

2    of the purpose it seeks to effectuate, and whether any special factors advise hesitation in recognizing

3    an action for money damages. Id. at 317, 324–29.

4            Even with the possibilities left open in Degrassi and Katzberg, numerous federal

5    district courts (far more than the Court cites here) have recognized Degrassi's central holding that

6    article I, section 2 includes no general private right of action for money damages. See, e.g., Madrid

7    v. H. Anglea, No. 1:19-cv-01456-JLT (PC), 2020 WL 1689709, at *5 (E.D. Cal. Apr. 7, 2020);

8    Tate v. Nakashyan, No. 1:19-cv-01211-EPG (PC), 2019 WL 8333576, at *3 (E.D. Cal. Dec. 17,

9    2019); Cuviello v. City & Cty. of San Francisco, 940 F. Supp. 2d 1071, 1098–1101 (N.D. Cal.

10   2013); Creighton, 628 F. Supp. 2d at 1216–17. The Ninth Circuit has passingly recognized

11   Degrassi's central holding as well. Acosta v. City of Costa Mesa, 718 F.3d 800, 823 & n.12 (9th

12   Cir. 2013). And courts have recognized that no court since Degrassi came down has recognized

13   such a private right of action. See, e.g., Madrid, 2020 WL 1689709, at *5; Daniel v. City of Pleasant

14   Hill, No. 15-cv-02782-EDL, 2015 WL 13887334, at *2 (N.D. Cal. Sept. 30, 2015); So v. Bay Area

15   Rapid Transit, No. C–12–05671 DMR, 2013 WL 5663207, at *11 (N.D. Cal. Oct. 17, 2013).

16           The Court has considered the Katzberg factors, including the remedies Plaintiff has

17   at his disposal; district courts' frequent citing of Degrassi for its central rejection of a general

18   damages action under article I, section 2; and the lack of any court having recognized a general

19   damages action under article I, section 2. The Court thus finds that Plaintiff has no general right of

20   action for damages under article I, section 2. Other than emphasizing Degrassi's open-endedness

21   and stating his speech claims brought under the California Constitution rest on the same facts as

22   his federal claims, Plaintiff has offered the Court no reason why it should recognize such an action.

23           Lastly, although Degrassi held that no action for damages exists under article I,

24   section 2, the Supreme Court did not preclude actions for declaratory or injunctive relief. Degrassi,

25   29 Cal. 4th at 338, 342 n.8; see Cuviello, 940 F. Supp. 2d at 1101. The undersigned United States

26   Magistrate Judge thus recommends that the motion to dismiss be granted as to count five to the

27   extent Plaintiff seeks money damages under article I, section 2.

28

### vi.   Count VI – Negligence as to Morin and Kirk-Buckley:

Plaintiff brings a second negligence claim, labeling it "Negligence as to the Board Defendants." ECF No. 47 at 27. The Court concludes that it suffers from the same defects as the first negligence claim. The undersigned thus recommends that the District Court grant the motion to dismiss as to Plaintiff's sixth state law claim and grant leave to amend.

### vii.   Count VII – Civil Conspiracy:

According to Plaintiff, Defendants' actions were part of a planned, systematic pattern meant to violate the "HFPD Bylaws and Federal and State laws" and ultimately depose him as remove him as Administrator. ECF No. 47 at 28. Defendants move to dismiss on grounds that Plaintiff has not identified an underlying tort, as required to state a civil conspiracy claim. ECF No. 48-1 at 22. The replies merely dispute whether Plaintiff has been specific enough to make out a case for civil conspiracy. ECF Nos. 54 at 17; 55 at 6.

Civil conspiracy is not an independent tort. Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994); City of Industry v. City of Fillmore, 198 Cal. App. 4th 191, 211 (Cal. Ct. App. 2011). Conspiracy instead imposes liability on individuals who, although not committing a tort themselves, share with the actual tortfeasors a common plan in its perpetration. Mandel v. Hafermann, 503 F. Supp. 3d 946, 985 (N.D. Cal. 2020); Applied Equipment, 7 Cal. 4th at 510–11; Kenne v. Stennis, 230 Cal. App. 4th 953, 968 (Cal. Ct. App. 2014). Bare agreement amongst coconspirators to harm someone else cannot constitute an injury until the agreed upon wrongs have been committed. Applied Equipment, 7 Cal. 4th at 511; Kenne, 230 Cal. App. 4th at 968. Conspiracy does not result in tort liability unless an actual tort is committed. Applied Equipment, 7 Cal. 4th at 511; Kenne, 230 Cal. App. 4th at 968.

The elements of a conspiracy are (1) the formation of a group of two or more people who agreed to a common design to commit a tort, (2) a wrongful act committed under the agreement, and (3) resulting damages. Applied Equipment, 7 Cal. 4th at 511; City of Industry, 198 Cal. App. 4th at 211. The significance of a conspiracy is that it renders its perpetrators responsible for all the damages of the consequent wrong, irrespective of whether they directly committed a tort. Applied Equipment, 7 Cal. 4th at 511. Stated simply, those who do participate in a conspiracy

1  become liable for the torts of their coconspirators. <u>Kenne</u>, 230 Cal. App. 4th at 968. The alleged

2  damage must result from actions taken in furtherance of the conspiracy. <u>Rusheen v. Cohen</u>, 37 Cal.

3  4th 1048, 1062 (2006); <u>see</u> <u>Applied Equipment</u>, 7 Cal. 4th at 511

4  Plaintiffs must plead conspiracy with specificity. "[B]are legal conclusions,

5  inferences, generalities, presumptions, and conclusions are insufficient."[23] <u>Harrell v. Hornbrook</u>

6  <u>Cmty. Servs. Dist.</u>, No. 2:14–cv–01595–KJM–GGH, 2015 WL 5329779, at *13 (E.D. Cal. Sept.

7  10, 2015); <u>State of California ex rel. Metz v. CCC Information Services, Inc.</u>, 149 Cal. App. 4th

8  402, 419 (2007).

9  A civil conspiracy, however appalling in nature, does not by itself give rise to a

10  cause of action. <u>Applied Equipment</u>, 7 Cal. 4th at 511; <u>Kenne</u>, 230 Cal. App. 4th at 968. But

11  Plaintiff's civil conspiracy is evidently an attempt to state a self-contained cause rather than impose

12  vicarious liability on Defendants. <u>See</u> ECF No. 47 at 28. To Plaintiff's credit, he tried to plead

13  tangible underlying misconduct; for example, that Defendants conspired to unseat him as

14  Administrator/General Manager. <u>See</u> <u>id.</u> Nevertheless, even considering the conclusory allegations

15  that Defendants conspired to commit actual wrong, Plaintiff does not passably allege anything other

16  than that Defendants agreed to injure him. <u>See</u> <u>id.</u> A conspiracy, however, requires commission of

17  an actual tort. <u>Applied Equipment</u>, 7 Cal. 4th at 511; <u>Kenne</u>, 230 Cal. App. 4th at 968. Although

18  inferentially merging his other claims (e.g., negligence), Plaintiff does not specifically identify any

19  actionable tort that was the subject of Defendants' alleged collusion.[24] <u>See</u> 47 at 28. Bare

20  conclusions of a conspiracy do not state a claim. <u>Harrell</u>, 2015 WL 5329779, at *13; <u>Metz</u>, 149 Cal.

21  App. 4th at 419. It is acts done, not the agreement to do them, that is the essence of conspiracy

22  action. <u>Applied Equipment</u>, 7 Cal. 4th at 511; <u>Kenne</u>, 230 Cal. App. 4th at 968

23  The undersigned recommends that the District Court grant the motion to dismiss

24  with leave to amend on Plaintiff's conspiracy count.

25  / / /

26

27  [23] The Court of Appeal has repeated this admonition in unpublished decisions. <u>E.g.</u>, <u>Altraide v. Pfizer, Inc.</u>, No. C091318, 2021 WL 2102688, at *10 (Cal. Ct. App. May 25, 2021).

28  [24] Plaintiff does vaguely allege conspiracy to hold illegal meetings and violate his rights in a few other places in the complaint. <u>See, e.g.</u>, ECF No. 47 at 7–10.

1       **viii.    Count VIII – Intentional Infliction of Emotional Distress:**

2               Plaintiff's eighth state law count is a claim for intentional infliction of emotional

3       distress. ECF No. 47 at 29. He claims that Defendants, "in performing the acts complained of,"

4       acted negligently, recklessly, willfully, and wantonly to harass him and subject him to extreme

5       emotional distress. Id. Plaintiff alleges that he has actually suffered extreme distress. Id. Defendants

6       argue that Plaintiff's claim must be dismissed because he relies on the Broad's "complained of"

7       language rather than identifying specific actions so outrageous they can be expected to cause

8       Plaintiff's distress. ECF No. 48-1 at 23. Plaintiff replies that he has established a claim because the

9       injuries he alleges are severe. ECF No. 54 at 17.

10              In California, there are three elements required of a prima facie case of intentional

11      infliction of emotional distress (IIED): (1) extreme and outrageous conduct by a defendant with the

12      intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

13      plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation

14      of the emotional distress by the defendant's outrageous conduct." See, e.g., Doe v. Gangland Prods.,

15      Inc., 730 F.3d 946, 960 (9th Cir. 2013); Wynes v. Kaiser Permanent Hosps., 936 F. Supp. 2d 1171,

16      1194 (E.D. Cal. 2013); Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009).

17              There is no bright line standard of outrageous conduct, which instead entails an

18      intuitive, case-specific approach. See So v. Shin, 212 Cal. App. 4th 652, 671 (Cal. Ct. App. 2013).

19      Still, liability for IIED does not extend to mere threats, insults, annoyances, indignities, petty

20      oppressions, or other trivialities. Hughes, 46 Cal. 4th at 1051; Crouch v. Trinity Christian Ctr. of

21      Santa Ana, Inc., 39 Cal. App. 995, 1007 (Cal. Ct. App. 2019). It insufficient that a defendant acted

22      with tortious or even criminal intent, or intended to inflict emotional distress, even if the

23      defendant's conduct reflects malice or aggravation supporting punitive damages for another tort.

24      Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 852 (2004); Jackson v. Mayweather, 10 Cal. App. 5th

25      1240, 1266 (Cal. Ct. App. 2017). A defendant's conduct must be so outrageous in character and

26      extreme in degree that it goes beyond all decency and exceeds the bounds of behavior tolerated in

27      a civilized community. Hughes, 46 Cal. 4th at 1050–51; Crouch, 39 Cal. App. 5th at 1007.

28              The defendants' conduct must be purposeful, with the intention and realization that

33

1    injury will result. Hughes, 46 Cal. 4th at 1051. The conduct must be directed at a plaintiff or done

2    in the presence of a plaintiff whose presence the defendant is aware of. Christensen v. Superior

3    Court, 54 Cal. 3d 868, 903 (1991); McMahon v. Craig, 176 Cal. App. 4th 1502, 1516 (Cal. Ct. App.

4    2009). Malicious purpose, however, is not required. Crouch, 39 Cal. App. 5th at 1007.

5          Severe emotional distress is a similarly high bar. Hughes, 46 Cal. 4th at 1051. Severe

6    emotional distress entails emotion distress of such significant or enduring quality that no reasonable

7    individual in civilized society should be expected to endure it. Id.

8          Plaintiff's argument that he has established an IIED claim because his alleged

9    injuries are severe is unconvincing. Severe emotional distress is only one of three elements of an

10   IEED claim. See Hughes, 46 Cal. 4th at 1051. While Plaintiff maintains that Defendants caused his

11   extreme distress, the Court concludes that conduct he complains of does not qualify as "outrageous"

12   for the purposes of an IIED claim. Plaintiff has not established the first element required of IIED

13   claims.

14         Taking Plaintiff's claims as true, Defendants' actions were unreasonable, in some

15   cases tortious, and possibly criminal. But in the Court's view, the conduct Plaintiff contends

16   Defendants actually directed at him—for example, retaliating against him by excluding him from

17   meetings and freezing him out as Administrator—falls far short of behavior so extreme that it

18   transcends the limits of human decency. It is insufficient that Defendants acted with tortious or

19   even criminal intent, even if they intended to cause Plaintiff distress. See Pardi, 389 F.3d at 852;

20   Jackson, 10 Cal. App. 5th at 1266. Even accepting that Defendants unlawfully retaliated against

21   Plaintiff or unjustly interfered with his position as Administrator, that conduct is not in itself

22   necessarily outrageous behavior for the purposes of an IIED action but rather within the "rough

23   edges" of society and not outside of its boundaries.[25] See Pardi, 389 F.3d at 851–52; see also Barr

---

[25] Although not exactly on point, the Court believes that improper personnel decisions are reasonably analogous here. Generally, personnel management decisions like terminations and exclusion from meetings are not sufficiently outrageous such that they give rise to claims for intentional infliction of emotional distress, even if made for improper, retaliatory, or discriminatory reasons. Barr, 2021 WL 3856487, at *10–11; Verduzco v. Conagra Foods Packaged Foods, LLC, No. 1:18-cv-01681-DAD-SKO, 2021 WL 2322522, at *9 (E.D. Cal. June 7, 2021); Ortiz v. Alvarez, 341 F. Supp. 3d 1087, 1099 (E.D. Cal. 2018); Light v. Dep't of Parks & Recreation, 14 Cal. App. 5th 75, 101–02 (Cal. Ct. App. 2017); Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 80 (Cal. Ct. App. 1996). Plaintiff does not allege mere personnel decisions, so the Court again recognizes that rule is not controlling. Nevertheless, the rule counsels that actions like shutting Plaintiff out of decisions or effectively terminating him err more towards improper personnel

34

v. Lab. Corp. of Am. Holdings, No.: 19-cv-1887-MMA (MDD), 2021 WL 3856487, at *10–11 (S.D. Cal. Aug. 30, 2021) (finding that illegal motivations for termination and a cover up of misconduct did not establish an IIED claim); Helgeson v. Am. Int'l Grp., Inc., 44 F. Supp. 2d 1091, 1094–97 (S.D. Cal. 1999).

Moreover, Plaintiff has not actually sufficiently pled (or identified on opposition) the conduct directed at him that he believes is outrageous. See ECF Nos. 47 at 29; 54 at 17–18.

The Court is skeptical that Plaintiff can amend complaint to state an IIED claim. Nevertheless, in the interests of justice, the undersigned recommends that the District Court grant motion to dismiss as to the IIED claim with leave to amend.

### ix.     Count IX – Nuisance:

Plaintiff complains that Defendants created a nuisance by violating HFPD bylaws and by allowing unsafe and annoying operation of HFPD vehicles without registration and insurance. ECF No. 47 at 29–30. Plaintiff alleges that Defendants' failure to follow state and local law when managing HFPD and its equipment was nuisance *per se* to him and the public. Id. at 30.

Defendants, of course, move to dismiss. ECF No. 48-1 at 23–24. They propose that Plaintiff has not stated any nuisance claim because private nuisance relates to enjoyment of property, and public nuisance affects an entire community. Id. They also argue that even if Plaintiff can show that they violated the law, courts will not enjoin violations of the penal code. Id. at 24. Nor, Defendants posit, will courts enjoin violations of local ordinances or bylaws unless the violation is itself nuisance *per se*, for which Plaintiff has not stated a claim. Id.

Plaintiff replies that HFPD's bylaws (attached as exhibits) to his complaint expressly state that any violation thereof is nuisance *per se*, and that injunctive and mandamus relief are available to him under California's Code of Civil Procedure. ECF No. 54 at 18. Defendants retort that Plaintiff has not provided authority showing a fire district like HFPD can declare nuisance *per se*. See ECF No. 55 at 6.

Under California law, a nuisance is "[a]nything which is injurious to health . . . or is

---

decisions that are not actionable as IIED claims but rather as other causes of action, such as one for discrimination. See Janken, 46 Cal. App. 4th at 80

1  indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere

2  with the comfortable enjoyment of life or property . . . ." Cal. Civ. Code § 3479. California requires

3  a disturbance of rights in land before plaintiffs may sustain an action for private nuisance. Martinez

4  v. Welk Grp., Inc., 907 F. Supp. 2d 1123, 1134 (S.D. Cal. 2012); San Diego Gas & Elec. Co. v.

5  Superior Court, 13 Cal. 4th 893, 937 (1996); Mendez v. Rancho Valencia Resort Partners, LLC, 3

6  Cal. App. 5th 248, 262 (Cal. Ct. App. 2016). There are three elements required of a private nuisance

7  action. Mendez, 3 Cal. App. 5th at 262–63. Plaintiffs must show (1) interference with their use and

8  enjoyment of their property, (2) that the invasion of their interest in the use and enjoyment of their

9  property is substantial, and (3) that the interference in their protected interest is not only substantial,

10 but also unreasonable. Id. at 262. To be substantial, the invasion must cause actual damage. Id. And

11 to be unreasonable, the interference must be of a nature, duration, or degree constituting

12 unreasonable interference with the use and enjoyment of the land. Id. at 262–63.

13      Plaintiff just barely cobbles together a private nuisance claim. Plaintiff does not, as

14 would be clear and helpful, specifically plead interference in his use and enjoyment of property

15 under his nuisance count. ECF No. 47 at 29–30. But, in the context of other claims, Plaintiff does

16 sporadically or inferentially allege devaluation of the value his property, as well as some

17 interference in the use and enjoyment of various property interests. See ECF No. 47 at 11 n. 30,

18 21–23, 27–29. Although his claims may not withstand a motion requiring Plaintiff to meet a higher

19 burden of proof, there is enough in Plaintiff's complaint to draw the reasonable inference that he

20 alleges breaking of HFPD bylaws (thereby creating some unsafe condition) and improper driving

21 of HFPD's vehicles interfered with the use and enjoyment of his property.

22      As for public nuisance, whereas private nuisance vindicates individual property

23 interests, public nuisance doctrine protects community interests. Citizens for Odor Nuisance

24 Abatement v. City of San Diego, 8 Cal. App. 5th 350, 358 (Cal. Ct. App. 2017) [hereinafter

25 Citizens]. A public nuisance interferes with the rights of the community at large. See Cal. Civ. Code

26 § 3480; People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1103–05 (1997); Citizens, 8 Cal. App. 5th

27 at 358. California defines a public nuisance as "one which affects at the same time an entire

28 community or neighborhood, or any considerable number of persons, although the extent of the

annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. Early common law categories of public nuisance, codified in 1872, remain applicable. <u>Acuna</u>, 14 Cal. 4th at 1104; <u>Citizens</u>, 8 Cal. App. 5th at 358. Public nuisances at common law are interference with rights common to the public, like health, safety, and convenience. <u>See</u> <u>Acuna</u>, 14 Cal. 4th at 1103–04; <u>Citizens</u>, 8 Cal. App. 5th at 358. Public nuisance requires a showing that the alleged interference is both unreasonable and substantial. <u>San Diego Unified Port Dist. v. Monsanto Co.</u>, 445 F. Supp. 3d 1098, 1106 (S.D. Cal. 2020); <u>Acuna</u>, 14 Cal. 4th at 1105.

The Court need not undertake any extensive analysis regarding public nuisance. Unlike Plaintiff's allegations of private interests, which lend themselves to reasonable inferences of intrusion into his own use and enjoyment of property, he only ever makes conclusory allegations regarding the public. <u>See, e.g.</u>, ECF No. 47 at 8 & n.24, 9, 30. He has not remotely indicated how violation of HFPD bylaws affected rights common to the public. Plaintiff's accusations of unsafe conditions due to driving of improperly registered and insured vehicles are closer to the mark. <u>See</u> <u>id.</u> But the allegations of an interference with public interests are tenuous and do not plausibly indicate substantial and unreasonable interference with the rights of the community at large.

California also recognizes nuisance *per se*. <u>City of Monterey v. Carrnshimba</u>, 215 Cal. App. 4th 1068, 1086 (Cal. Ct. App. 2013). A nuisance *per se* arises when a legislative body with lawful jurisdiction, in the exercise of police power, expressly and legislatively declares a particular substance, object, activity, or other circumstance to be a nuisance. <u>See</u> <u>id.</u>; <u>City of Claremont v. Kruse</u>, 177 Cal. App. 4th 1153, 1163 (Cal. Ct. App. 2009). Cities are constitutionally authorized to pass local, sanitary, police, and other ordinances. <u>Carrnshimba</u>, 215 Cal. App. 4th at 1086. Cities may, by ordinance, declare what conditions constitute a nuisance. <u>Id.</u>; <u>see</u> Cal. Govt. Code § 38771. Because some applicable law must declare a condition to be a nuisance, the only issues for courts' resolution in nuisance *per se* proceedings are whether the statutory nuisance occurred, and whether the statute is constitutional. <u>Carrnshimba</u>, 215 Cal. App. 4th at 1086–87.

Plaintiff includes with his complaint two bylaws that the HFPD Board adopted when he was still a board member. ECF No. 47 at 36–40. Both bylaws state that violations of their provisions constitute nuisance *per se*. <u>Id.</u> at 36, 39. Plaintiff thus contends that the bylaws establish

37

nuisance *per se* because Defendants violated them. See ECF No. 54 at 18. But the Court is not convinced that those provisions save Plaintiff's claims from dismissal.

California gives cities the power to declare conditions that constitute nuisances by ordinance. Cal. Govt. Code § 38771. Fire protection districts may adopt ordinances. Cal. Health & Safety Code § 13861(h). But even if HFPD has the authority to declare what constitutes a nuisance, HFPD's bylaws are not ordinances. Moreover, fire protection districts must adopt ordinances in compliance with procedures outlined in specified provisions of the Government Code. See id. (referencing Cal. Govt. Code §§ 25120–32). There is no allegation that HFPD did so. See ECF No. 47 at 29–30, 36–39. No case appears to state that violation of a special services district bylaw is nuisance *per se*.[26] Plaintiff has not stated a cognizable nuisance *per se* claim.

The undersigned recommends denying the motion to dismiss as to private nuisance and granting it with respect to nuisance *per se* and public nuisance. The undersigned also recommends granting leave to amend as to public nuisance.[27]

### x.    Count X – Covenant of Good Faith and Fair Dealing:

Plaintiff alleges that Morin and Kirk-Buckley acted dishonestly and in bad faith in their exchanges with him, including interactions concerning his employment contract. ECF No. 47 at 30. Defendants argue that the claim is superfluous because Plaintiff does not bring a claim for breach of contract or describe the terms of the employment contract. ECF No. 48-1 at 24–25.

---

[26] The Court notes that courts have sometimes used relatively open-ended language when describing nuisance per se. See, e.g., Carrnshimba, 215 Cal. App. 4th at 1086. Courts have stated that to be a nuisance *per se*, "the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." Id.; see Kruse, 177 Cal. App. 4th at 1163; People ex rel. Trutanich v. Joseph, 204 Cal. App. 4th 1512, 1524 (Cal. Ct. App. 2012); Beck Dev. Co. v. S. Pac. Transp. Co., 44 Cal. App. 4th 1160, 1206–07 (Cal. Ct. App. 1996). "Applicable law" is linguistically broad enough to include bylaws. However, every nuisance *per se* case from California that the Court has reviewed has involved state-mandated nuisances or nuisances defined by local governments under municipal law, rather than special districts' bylaws. E.g., City of Dana Point v. New Method Wellness, Inc., 39 Cal. App. 5th 985, 989–90 (Cal. Ct. App. 2019); Urgent Care Med. Servs. v. City of Pasadena, 21 Cal. App. 5th 1086, 1093–94 (Cal. Ct. App. 2018); Carrnshimba, 215 Cal. App. 4th at 1086–88, 1095–96; Trutanich, 204 Cal. App. 4th at 1524; Kruse, 177 Cal. App. 4th at 1163–66 While not dispositive, that consideration is relevant to the conclusion that Plaintiff has not established a nuisance *per se* claim by way of bylaws. So is the fact that courts have discussed nuisance *per se* in the context of statutes and ordinances. See, e.g., Urgent Care Med. Servs., 21 Cal. App. 5th at 1093–94; Carrnshimba, 215 Cal. App. 4th at 1086–88; Trutanich, 204 Cal. App. 4th at 1524; Kruse, 177 Cal. App. 4th at 1163–66.

[27] Because the Court recommends granting leave to amend, the Court does not address Defendants' arguments on the relief available to Plaintiff. See 48-1 at 24. The available relief will necessarily depend on the facts pled in any amended complaint that Plaintiff elects to submit.

1   Plaintiff replies that he has pled the existence of a contract, in part because he attaches the contract

2   (and bylaws establishing the scope of his position) to his complaint. ECF No. 54 at 20.

3          The covenant of good faith and fair dealing is an implied covenant that supplements

4   express contractual covenants. Cobb v. Ironwood Country Club, 233 Cal. App. 4th 960, 965–66

5   (Cal. Ct. App. 2015). It is implied by law into every contract. Thrifty Payless, Inc. v. The Americana

6   at Brand, LLC, 218 Cal. App. 4th 1230, 1244 (Cal. Ct. App. 2013). The covenant acts to prevent a

7   contracting party from engaging in conduct that, while not technically violating express covenants,

8   frustrates the other party's rights to the benefits of the contract. Id.; see Kransco v. Am. Empire

9   Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000). It imposes an obligation on parties to do

10   everything the contract assumes they will do to accomplish the contract's purpose. Thrifty Payless,

11   218 Cal. App. 4th at 1244.

12          The precise nature and extent of the duty depends upon the contract's purpose. Daly

13   v. Healthcare Ins. Co., No. 10–CV–03032–LHK, 2010 WL 4510911, at *3 (N.D. Cal. Nov. 1,

14   2010); The McCaffrey Grp., Inc. v. Superior Court, 224 Cal. App. 4th 1330, 1352 (Cal. Ct. App.

15   2014). That is, the covenant is confined to assuring compliance with a contract's written terms and

16   cannot be extended to create obligations that the contract did not contemplate. Deerpoint Group,

17   Inc. v. Agrigenix, LLC, 393 F. Supp. 3d 968, 983 (E.D. Cal. 2019); Golden Eagle Land Inv., LP v.

18   Rancho Santa Fe Ass'n, 19 Cal. App. 5th 399, 426 (Cal. Ct. App. 2018); Pasadena Live v. City of

19   Pasadena, 114 Cal. App. 4th 1089, 1093 (Cal. Ct. App. 2004). If "an implied covenant claim alleges

20   a breach of obligation beyond the agreement's actual terms, it is invalid." Guz v. Bechtel Nat'l,

21   Inc., 24 Cal. 4th 317, 327 (2000); see Deerpoint, 393 F. Supp. 3d at 983; Daly, 2010 WL 4510911,

22   at *4. The covenant cannot impose additional substantive duties on contracting parties beyond those

23   identified in the specific terms of their contract. Guz, 24 Cal. 4th at 349–50; see Deerpoint, 393 F.

24   Supp. 3d at 983.

25          Breach of the implied covenant of good faith and fair dealing is breach of the

26   contract. Thrifty Payless, 218 Cal. App. 4th at 1244. Breach of a particular contractual provision is

27   not integral to a claim for breach of the covenant. Id. If a plaintiff alleges breach of a contractual

28   term, however, a separate implied covenant claim based on the *same* breach is superfluous. Guz,

24 Cal. 4th at 327; see Daly, 2010 WL 4510911, at *4. Breach of the implied covenant of good faith and fair dealing involves something beyond breach of a contractual duty itself. Daly, 2010 WL 4510911, at *4; Aljabban v. Fontana Indoor Swap Meet, Inc., 54 Cal. App. 5th 482, 509 (Cal. Ct. App. 2020); Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990).

Based on the above framework, the Court reaches two conclusions. First, Plaintiff's claim that Morin and Kirk-Buckley violated the covenant of good faith and fair dealing in their general dealings with him is a nonstarter. The covenant inheres in contracts, not interpersonal interactions. See Golden Eagle, 19 Cal. App. 5th at 426; Thrifty Payless, 218 Cal. App. 4th at 1244.

Second, based on the framework above, at this motion to dismiss stage, Plaintiff states a plausible claim for breach of the covenant of good faith and fair dealing. Plaintiff alleges (and attaches) a written contract. The identification of a written contract means Defendants had a duty to execute the contract in good faith. See Deerpoint, 393 F. Supp. 3d at 982–83; Daly, 2010 WL 4510911, at *4; Thrifty Payless, 218 Cal. App. 4th at 1244. The scope of that duty is a factual inquiry dependent on the contract's terms and purpose. See Daly, 2010 WL 4510911, at *4; McCaffrey Grp., 224 Cal. App. 4th at 1352. Evidence might well eventually show that Defendants did not breach any duty. But construed in the required liberal fashion, Plaintiff's complaint satisfactorily alleges that Plaintiff had a written employment contract with Defendants and that he pursued his employment duties, but Defendants dishonored the contract and denied him its benefits. Plaintiff's complaint forwards enough facts to state a claim. See Daly, 2010 WL 4510911, at *4; Thrifty Payless, 218 Cal. App. 4th at 1244 (describing the covenant of good faith and fair dealing and identifying the elements of a cause of action for breach of contract).

The undersigned recommends that the District Court grant the motion to dismiss to the extent Plaintiff alleges Defendants violated the covenant of good faith and fair dealing in regard to general interactions but deny the motion insofar as Plaintiff alleges contractual breach.

### xi.   Count XI – Brown Act:

Defendants allegedly violated California's Brown Act. ECF No. 47 at 30–31. For that reason (among others) Plaintiff alleges that Defendants' official actions are void. See id. Defendants argue that Plaintiff's Brown Act claims must be dismissed under Government Code §

54960.1(e) because they responded to "cure and correct" notices that Plaintiff sent them, and rescinded any resolutions adopted at allegedly unlawful meetings. ECF No. 48-1 at 25. Plaintiff responds that not "all" the unlawful actions were cured. ECF No. 54 at 20. Defendants rely on the position that they substantially complied with the Brown Act and argue Plaintiff has not identified what conduct remains to be cured. ECF No. 55 at 7. They also attach the documents of which the Court has taken judicial notice. See ECF No. 49.

Plaintiff's Brown Act claims stem from HFPD meetings on December 4, 2015; December 21, 2015; January 22, 2016; February 16, 2016; and February 29, 2016. ECF No. 47 at 7. Plaintiff contends that Defendants provided deficient notice, unsatisfactorily noticed and described items on the agenda for consideration, and improperly held meetings in private and outside of HFPD boundaries. Id. Plaintiff sent HFPD at least one "cure and correct" letter on around January 28, 2016. Id. at 4 n.13, 8.

Relying on the judicially noticed documents, Defendants contend that they received a letter from Plaintiff around January 25, 2016, expressing his conclusion that the board meeting on January 22, 2016 violated the Brown Act. ECF Nos. 48-1 at 25; 49 at 2, 5–6. Then-president of the board, Woodrow Mattingly, responded in writing that HFPD would cease all Brown Act violations. ECF Nos. 48-1 at 25; 49 at 2, 8. Then, on February 16, 2016, the board took corrective measures and rescinded each of the resolutions adopted on January 22, 2016. ECF Nos. 48-1 at 25; 49 at 2, 18–19. Defendants also attach meeting minutes from the January 22, 2016, and February 16, 2016, meetings. ECF No. 49 at 2, 10–16. The minutes reflect that the Board rescinded resolutions adopted at the ostensibly unlawful January 22 meeting. See id. at 13. Defendants further attach the February resolutions rescinding the January resolutions. Id. at 18–19.

In Defendants' view, their response to Plaintiff's January 2016 letter, as well as their subsequent rescission of unlawful resolution, is a complete defense to Plaintiff's Brown Act claims. ECF Nos. 48-1 at 25. Plaintiff, as stated, disagrees because Defendants allegedly did not cure all the challenged actions or maintain any corrections they did make. ECF No. 54 at 20.

The Brown Act mandates that most local agency meetings must be open to the public. Cal. Govt Code § 54953; Fowler v. City of Lafayette, 46 Cal. App. 5th 360, 366 (Cal. Ct.

41

App. 2020). The act safeguards the public's right to attend public agencies' meetings and curbs abuse of the democratic process through covert legislation. See Fowler, 46 Cal. App. 5th at 366. Among other things, the act requires public posting of agendas seventy-two hours prior to a meeting and proscribes consideration of items not on that agenda. Cal. Govt Code § 54954.2(a)(1), (3); Fowler, 46 Cal. App. 5th at 366.

The California Court of Appeal explained remedies for certain Brown Act violations in yet another case involving Plaintiff. Olson, 33 Cal. App. 5th at 517. Under § 54960.1(a), interested parties may sue the legislative body of a local agency to ascertain whether action by the body violated the Act and is void. Id. Suit is by mandamus or injunction. Id. California limits that remedy to actions violating the Act's various open meeting and agenda posting mandates. Id. To state a claim under 54960.1, plaintiffs must allege: (1) that a local agency's legislative body violated an enumerated Brown Act provision; (2) that the body took some action in connection with the violation; and (3) that before commencing a lawsuit, the plaintiff timely[28] demanded that the legislative body cure or correct the allegedly violative action, and the legislative body did not cure or correct the challenged action. Id.; see Julian Volunteer Fire. Co. Ass'n. v. Julian-Cuyamaca Fire Prot. Dist., 62 Cal. App. 5th 583, 601 (Cal. Ct. App. 2021).

Under § 54960.1, actions purported to have violated a provision of the Brown Act shall not be void if the action was taken in substantial compliance with the relevant section. Olson, 33 Cal. App. 5th at 517. see Cal. Govt. Code § 54960.1(d)(1). Finally, even if a plaintiff has made a threshold case to set aside an agency's action, the Brown Act violations will not necessarily invalidate a decision. Olson, 33 Cal. App. 5th at 517. Plaintiffs must show prejudice. Id.

Here, Plaintiff has not stated a claim as to the December 4, 2015; December 21, 2015; February 16, 2016; and February 29, 2016, meetings. Plaintiff does not definitively allege that he sent cure and correct letters in regard to any improper actions taken at those meetings. See, e.g., ECF No. 47 at 4 n.13, 8, 11, 13. Plaintiff does allege that he properly sent the January 2016 letter. Id. at 4 n.13. However, the closest he gets to asserting he sent cure or correct letters for the

---

[28] Plaintiffs must bring actions for Brown Act violations within a statutory time period after a body either notifies the plaintiff of attempts to cure or correction violations, or after the body does not cure or correct a violation. See Cal. Govt. Code § 54960.1(c)(3), (4); Bell v. Vista Unified Sch. Dist., 82 Cal. App. 4th 672, 684 (Cal. Ct. App. 2000).

other meetings is alleging he sent "multiple" notices regarding Brown Act violations and a host of other misconduct. See, e.g., ECF No. 47 at 8, 11, 13. The Court concludes Plaintiff's does not plausibly indicate that properly mailed notices for the above meetings. Timely demand that HFPD cure or correct improper actions is a prerequisite to challenging them. Olson, 33 Cal. App. 5th at 517. It is not readily apparent Plaintiff made those demands.

Second, as for the January 22, 2016, meeting, although he has objected to their significance, Plaintiff has not objected to the accuracy of the documents from that meeting or the February 16, 2016, meeting. ECF No. 54 at 2–3. The meeting minutes and February resolutions indicate that Defendants cured the unlawful resolutions about which Plaintiff complained. See ECF No. 49 at 10, 12–13, 18–19. But Plaintiff, on opposition, continues to flimsily assert that Defendants did not cure "all" the unlawful actions and continued unlawful conduct. ECF No. 54 at 20–21. He does not identify the remaining violations that Defendant allegedly did not cure. See, e.g., id.

Although the Court takes Plaintiff's allegations as true, because he does not *plausibly* allege that he mailed cure and correct letters for any meeting other than the one on January 22, 2016, he has not established a threshold Brown Act claim for alleged violations at those meetings. See Julian, 62 Cal. App. 5th at 601; Olson, 33 Cal. App. 5th at 517. Further, because he has not forwarded anything but vague allegations that Defendants did not correct all violations from January 22, he has not established a claim for that meeting either. See Julian, 62 Cal. App. 5th at 601; Olson, 33 Cal. App. 5th at 517.

The undersigned United States Magistrate Judge recommends that the motion to dismiss be granted on Plaintiff's Brown Act claims, with leave to amend.

    **xii.**    **County XII – Bane Act:**

Plaintiff claims that Morin, Kirk-Buckley, and Lee Buckley violated California's Bane Act. ECF No. 47 at 31. He alleges they interfered with his contractual, statutory, and constitutional rights, and threatened and intimidated him to pressure him to forfeit those rights. Id. Defendants move to dismiss because Plaintiff vaguely alleges threats and intimidation and does not identify specific threats or intimidation. ECF No. 48-1 at 26. Plaintiff responds that he need only show specific intent to violate his rights, not actual threats or intimidation. ECF No. 54 at 21–22.

California's Bane Act creates a private cause of action against individuals who interfere "by threat, intimidation, or coercion, or attempt[] to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(b)–(c). Plaintiffs bringing claims under the Bane Act must show two things: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was done through threats, intimidation, or coercion. Scalia v. County of Kern, 308 F. Supp. 3d 1064, 1080 (E.D. Cal. 2018); Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (Cal. Ct. App. 2015). The thrust of a claim is that a defendant, by improper means (i.e., threats, intimidation, or coercion), attempted or did prevent a plaintiff from doing something the plaintiff had the legal right to do or to coerce the plaintiff to do something they were not required to do under the law. Scalia, 308 F. Supp. 3d at 1079; Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (Cal. Ct. App. 2007).

The threat, intimidation, or coercion required of a Bane Act claim need not be independent of the alleged constitutional violation. Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018); Scalia, 308 F. Supp. 3d at 1080–84; Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 799–800 (Cal. Ct. App. 2017). However, speech alone does not satisfy the threat, intimidation, or coercion requirement unless the speech threatened violence. Cal. Civ. Code § 52.1(k); Ctr. for Bio-Ethical Reform, Inc. v. Irvine Co., LLC, 37 Cal. App. 5th 97, 115 (Cal. Ct. App. 2019).

Here, the Court concludes that Plaintiff has stated a Bane Act claim. Drawing reasonable inferences in his favor, Plaintiff sufficiently alleges that Defendants retaliated against him to attempt to intimidate and coerce him, for example, to forfeit his First Amendments rights to publicize misconduct within HFPD.[29] See, e.g., ECF No. 47 at 1–2, 6–7, 19–20, 23, 25.

---

[29] It is apparently unsettled whether the Bane Act, under Civil Code § 52.1, requires violence or threats of violence to state a claim. See, e.g., Black Lives Matter-Stockton Chapter v. San Joaquin Cty. Sheriff's Office, 398 F. Supp. 3d 660, 680 (E.D. Cal. 2019). Some courts, including in published decisions, expressly note that violence or intimidation by threat of violence is required. See, e.g., Julian v. Mission Cmty. Hosp., 11 Cal. App. 5th 360, 395 (Cal. App. Ct. 2017); Gabrielle A. v. County of Orange, 10 Cal. App. 5th 1268, 1290 (Cal. Ct. App. 2017); Doe v. State, 8 Cal. App. 5th 832, 842 (Cal. Ct. App. 2017). Other courts have implied or determined that threats, intimidation, and coercion do not *necessitate* violence. See, e.g., Moreno v. Town of Los Gatos, 267 F. App'x 665, 666–67 (9th Cir. 2008); Feiger

44

1    **xiii.    Count XIII – Punitive Damages:**

2    Because the Court recommends granting leave to amend on several of Plaintiff's

3    claims, the Court does not address punitive damages. Entitlement to punitive damages will

4    necessarily turn on the information pled in any amended complaint.

5

6    ### IV. CONCLUSION

7    Based on the foregoing, the undersigned United States Magistrate Judge

8    recommends that Defendants' motion to dismiss (ECF No. 48) be **GRANTED IN PART** and

9    **DENIED IN PART**.

10    These findings and recommendations are submitted to the United States District

11    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after

12    being served with these findings and recommendations, any party may file written objections with

13    the Court. Responses to objections shall be filed within 14 days after service of objections. Failure

14    to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951

15    F.2d 1153 (9th Cir. 1991).

16

17    Dated:  September 14, 2021

18    _____
      DENNIS M. COTA

19    UNITED STATES MAGISTRATE JUDGE

20

21

22

23    _____

24    v. Smith, No. 1:14-cv-01920-DAD-EPG, 2017 WL 431352, at *1 (E.D. Cal. Jan. 31, 2017); Doe v. City of San Diego, 198 F. Supp. 3d 1153, 1167–68 (S.D. Cal. 2016); Trigueros v. Southwest Airlines, No. O5-CV-2256-L(AJB), 2007 WL 2502151, at *9–10 (S.D. Cal. Aug. 30, 2007); Shoyoye v. County of Los Angeles, 203 Cal. App. 4th 947, 958–59 (Cal. Ct. App. 2012). Violence is not mentioned in the sections of § 52.1 authorizing a cause of action. See Cal. Civ. Code § 52.1(b)–(c). The Legislature used the language "by threat, intimidation, or coercion" and only specified threat of violence as necessary to a claim based on speech. Cal. Civ. Code § 52.1(b)–(c), (k). Relevantly, although not explicitly addressing the violence question, the Supreme Court of California also permitted claims under § 52.1 based on assertedly unlawful searches and arrests by law enforcement officers, even though the plaintiffs did not use violence or threats of violence against them. Venegas v. County of Los Angeles, 32 Cal. 4th 820, 827–28, 841–43 (2004); see Moreno, 267 F. App'x at 666–67. The Court does not believe violence is a necessary element of a Bane Act claim, which (at least facially) requires only threats, intimidation, or coercion.